JUDGE KARAS DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DENNIS C. KELLY,

     Plaintiff,

     - vs -

HANDY & HARMAN, WHX CORPORATION, HANDY
& HARMAN SUPPLEMENTAL EXECUTIVE
RETIREMENT PLAN, HANDY & HARMAN
EXECUTIVE POST-RETIREMENT LIFE INSURANCE
PROGRAM, HANDY & HARMAN PENSION
PLAN/WHX PENSION PLAN, HANDY & HARMAN
MANAGEMENT INCENTIVE PLAN, HANDY &
HARMAN LONG-TERM INCENTIVE PLAN,
INCENTIVE AND NON-QUALIFIED STOCK OPTION
PLAN, AND THE HANDY & HARMAN POST-
RETIREMENT MEDICAL PLAN,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. _____

**COMPLAINT**

**JURY TRIAL
DEMANDED**

08 CV 00163



RECEIVED
JAN 08 2008
U.S.D.C. S.D.N.Y.

Plaintiff Dennis C. Kelly ("Kelly"), by his attorneys Greenberg Traurig, LLP, as and for

his Complaint against defendants Handy & Harman ("H&H"), WHX Corporation ("WHX"), the

August 1, 1998 Handy & Harman Supplemental Executive Retirement (the "August 1998

SERP") or in the alternative any other Supplemental Executive Retirement Plan in existence with

respect to H&H, the Handy & Harman Executive Post-Retirement Life Insurance Program

("H&H Life Insurance Program"), the Handy & Harman Pension Plan, now known as the WHX

Pension Plan ("H&H/WHX Pension Plan"), the H&H Management Incentive Plan (the "Bonus

Plan"), the H&H Long-Term Incentive Plan (the "Incentive Plan"), the 1991 Incentive and Non-

Qualified Stock Option Plan (the "Option Plan"), and the H&H Post-Retirement Medical Plan (the "Medical Plan") (collectively, "Defendants")[1], alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings the present Complaint to recover termination benefits due to him under his Employment Agreement, to recover payments under the ERISA Plans pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) which were wrongfully withheld by Defendants, to recover payments under the Benefit Plans which were wrongfully withheld by Defendants, to recover for interference with protected rights in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") §510, 29 U.S.C. 1140, for attorneys' fees, costs, and indemnification, and for a declaratory judgment.

2.    Until Plaintiff's Termination Date of September 15, 2005, he was employed by H&H, an industrial manufacturer and parent company of materials engineering and specialty manufacturing companies for twenty years.  During the course of that time, Plaintiff was promoted several times, and at the time of Termination Date, Kelly was H&H's Vice President and Chief Financial Officer.

3.    In April 1998, H&H was acquired by WHX, (the "WHX Acquisition").  After the WHX Acquisition, Plaintiff, along with the then-General Counsel Paul Dixon ("Dixon"), was asked by the then-president of H&H, Robert LeBlanc, to draft certain Amendments to the then-existent SERP dated January 1, 1998,[2] which resulted in the August 1998 SERP.  This August 1998 SERP was used consistently by the Company over the course of several years, including in the payout after termination of two H&H executives and was publicly disclosed in the

---

[1]    Collectively, the SERP, H&H Life Insurance Program, H&H/WHX Pension Plan and Medical Plan are referred to herein as the "ERISA Plans" and the Bonus Plan, Incentive Plan and Option Plan are referred to herein as the "Benefit Plans."  Collectively, WHX and H&H are referred to as the "Company."

[2]    As defined below, the SERP dated January 1, 1998 is referred to as the "January 1998 SERP".

Company's SEC filings. However, the Company now argues that the August 1998 SERP was somehow wrongfully drafted or implemented by Plaintiff without the Company's knowledge or the knowledge of its Boards and Plan Fiduciaries.

4.    The reason for the Company's sudden turnaround resulting in the Company's abrupt, causeless termination of Plaintiff and disavowal of the August 1998 SERP (and refusal to make additional payouts under that SERP) was a direct result of the parent, WHX's financial difficulties. In late 2004/early 2005, WHX became a distressed company, and in March 2005 WHX filed for relief under Chapter 11 of the U.S. Bankruptcy Code. Subsequently, in or about August, 2005, the controlling interest of WHX, was acquired by Steel Partners II, L.P. ("Steel Partners"), a private investment partnership which, on information and belief, buys at a discount and invests in under-followed and undervalued securities, including debt (senior and subordinated) and equities of small-cap public and private companies.

5.    Prior to the acquisition by Steel Partners, while Steel Partners was in negotiations to acquire WHX's controlling interest in the spring of 2005, on information and belief, WHX realized that, under the change-in-control provisions of the "August 1998 SERP", which was an unfunded plan, an acquisition by Steel Partners would trigger change-in-control payments to be made by H&H (and therefore, WHX) to any covered parties under the plan. Significantly, WHX and H&H would be forced to disclose its liability to make such change in control payments (anticipated to be $14,559,743 million) to a future acquirer. Here, such a liability ran the risk of being very unattractive to Steel Partners, the acquiror.

6.    To avoid this liability, the Special Investigation Committee of H&H engaged the Law Firm of Olshan Grundman Frome Rozenweig & Wolosky LLP ("Olshan") to examine the August 1998 SERP.

7.     The report rendered by Olshan in approximately May 2005 (the "Olshan Report") concluded that the August 1998 SERP was never properly adopted, even though Olshan conceded that it had been openly in use and relied upon from 1998 through 2005.

8.     Almost immediately after Steel Partners' acquisition of WHX's controlling interest in August 2005, Steel Partners began to put into effect its business strategy of seeking to increase its profit by, among other things, cutting operating, overhead and administrative costs, and generally reducing corporate expenditures, including attempting to reduce or eliminate certain payments to be made to employees. Relying on the Olshan Report, and in furtherance of Steel Partners' cost reduction plans, the Company terminated Plaintiff in September 2005, without prior notice, purportedly "for cause" thereby also seeking to avoid making severance payments required by Plaintiff's Employment Agreement. The supposed "cause" was that Plaintiff had allegedly wrongfully drafted the August 1998 SERP's amendments to the January 1998 SERP, that the August 1998 SERP was never adopted by the H&H Board and the Company had at all times been ignorant of the existence of the August 1998 SERP.

9.     As explained in detail below, however, the Company's wrongful conduct including manufacturing a "for cause" termination of Plaintiff, an employee with twenty years of service, is in violation of ERISA and a breach of contract and should not be countenanced.

## PARTIES

10.     Plaintiff Kelly is an individual residing in Garden City, New York.

11.     Defendant H&H is a corporation existing pursuant to the laws of the State of New York, with its principal place of business located at 1133 Westchester Avenue, Suite 10-222, White Plains, New York 10604.

12.    Defendant WHX is a corporation existing pursuant to the laws of the State of Delaware, with its principal place of business located at 1133 Westchester Avenue, Suite 10-222, White Plains, New York 10604.

13.    Defendant the August 1998 SERP (or in the alternative any other SERP in existence with respect to H&H) is an unfunded benefits plan that is maintained by the employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, as defined in the ERISA Sections 201, 301, and 401, 29 USC §§1051, 1081 and 1101. At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the SERP, participated in the SERP and had a vested and nonforfeitable benefit under the SERP.

14.    Defendant H&H Life Insurance Program is designed to benefit the Company and its stockholders by providing incentive to eligible key employees of the Company to remain employed with the Company until retirement by providing life insurance benefits at the Company's expense. In addition, H&H itself was also a beneficiary which benefited if an employee died while being employed by H&H. Defendant H&H Life Insurance Program is an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. §1002(1). However, because Defendant H&H Life Insurance Program provides benefits to a select group of key employees, the Defendant H&H Life Insurance Program is also a benefits plan as defined in ERISA §§201, 301, and 401, 29 U.S.C. §§1051, 1081 and 1101. At all times relevant herein, the Plaintiff met the requirements of the eligibility provisions of the H & H Life Insurance Program, participated in the H&H Life Insurance Program and had a nonforfeitable benefit under the H&H Life Insurance Program.

15.    Defendant H&H/WHX Pension Plan is a pension plan as defined in ERISA §3(2)(A), 29 USC § 1002(2)(A) and is duly organized to meet the requirements of the Internal Revenue Code ("the Code") §401, 26 U.S.C. §401. At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the H&H/WHX Pension Plan, participated in the H&H/WHX Pension Plan and had a vested and nonforfeitable benefit under the H&H/WHX Pension Plan.

16.    Defendant Bonus Plan, an annual incentive program that rewards selected officers and other key employees of the Company, is a nonqualified plan which is not subject to the requirements of Code §401, 26 USC §401. At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the Bonus Plan, participated in the Bonus Plan and had a vested and nonforfeitable benefit under the Bonus Plan.

17.    Defendant Incentive Plan is an incentive plan that provides for the payment of Incentive Plan benefits for the purpose of benefiting H&H by providing incentive to eligible key employees of H&H to remain employed with H&H. The Incentive Plan is a nonqualified plan which is not subject to the requirements of Code §401, 26 USC §401. At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the Incentive Plan, participated in the Incentive Plan and had a vested and nonforfeitable benefit under the Incentive Plan.

18.    Defendant Option Plan is an incentive plan that was established to assist WHX in securing and retaining key employees by allowing them to participate in the ownership and growth of WHX through the grant of incentive and nonqualified options to employees of WHX and its subsidiaries. Incentive stock options granted under the Option Plan are intended to be "Incentive Stock Options" as defined by 26 U.S.C. §422. At all times relevant herein, Plaintiff

met the requirements of the eligibility provisions of the Option Plan, participated in the Option Plan and had a vested and nonforfeitable benefit under the Option Plan. Kelly was a participant in the H&H Option Plan until H&H was acquired by WHX, at which time Kelly became a participant in the WHX Option Plan.

19.     Defendant Medical Plan is an employee welfare benefit plan as defined under ERISA §3(1), 29 USC §1002(1)  At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the Medical Plan and had a  nonforfeitable benefit under the Medical Plan.

## JURISDICTION, VENUE AND JURY DEMAND

20.     The Court has subject matter jurisdiction pursuant to ERISA §502(e)(1), 29 U.S.C. §1132 with respect to the ERISA claims asserted in the Complaint and pursuant to 28 U.S.C. §1367 for the state law claims asserted in the Complaint.

21.     Venue is proper in this Court in accordance with ERISA §502(e)(2), 29 U.S.C. §1132 and 28 U.S.C. §1391 because Defendants have their principal place of business and have committed the wrongful acts giving rise to the Complaint in this district.

22.     Plaintiff demands a trial by jury on all issues so triable.

## FACTUAL BACKGROUND

23.     Defendant H&H is an industrial manufacturer and a parent company of materials engineering and specialty manufacturing companies. H&H's products include electronic components, specialty fasteners, engineered materials, stainless steel tubing, specialty tubing and fabricated precious metals.

24.     Plaintiff Kelly was employed by H&H for a total of twenty years.  From December 1985 to 1989, Kelly served as the Director of Internal Audits. From 1989 to 1993,

Kelly served as Assistant Controller. From 1993 to 1998, Kelly served as Controller. From 1998 to 2001, Kelly served as Vice President and Controller. From 2001 to September 2005, Kelly served as Vice President and Chief Financial Officer.

## I.   Plaintiff's Employment Agreement

25.    Plaintiff had a written Employment Agreement with H&H, a true and correct copy of which is attached hereto as Exhibit 1.

26.    Paragraph 7 of Plaintiff's Employment Agreement, regarding termination, provided that:

> 7.    (a) The Company may terminate your employment at any time, without prior notice, for any of the following reasons: (i) your engaging in conduct which is materially injurious to the Company or the Parent Company, their subsidiaries or affiliates, or any of their respective customer or supplier relationships, monetarily or otherwise; (ii) your engaging in any act of fraud, misappropriation or embezzlement or any act which would constitute a felony (other than minor traffic violations); or (iii) your material breach of this Agreement.
>
> (b) If, as a result of your incapacity due to physical or mental illness, you shall have been absent from the full-time performance of your duties hereunder for at least 120 days within any twelve (12) consecutive months, excluding vacation time actually used in accordance with the Company's policies thereon, your employment may be terminated by the Company, upon written notice in accordance with paragraph 8 hereof without further notice.
>
> (c) The Company, in its sole discretion, may terminate your employment at any time for any reason other than those stated in paragraphs 7(a) or 7(b) upon thirty (30) days prior written notice.

27.    Paragraph 8 of the Employment Agreement laid out the structure of the severance payments that H&H was obliged to make to terminated employees, depending on whether they were terminated for cause pursuant to Paragraph 7(a), or without cause pursuant to Paragraph 7(c). Paragraph 8 of the Employment Agreement provided:

8.    (a) If your employment is terminated by the Company pursuant to paragraph 7(a), you shall receive your base salary through the date of termination and the company shall have no further obligations to you under this Agreement.

(b) If your employment is terminated by the Company pursuant to paragraph 7(b) or 7(c) or by your death, you or your personal representative, guardian, or the representative of your estate shall be entitled to the following severance and benefits:

(i) The Company shall pay you a severance payment (the 'Severance Payment') equal to one (1) year's full base salary at your highest rate in effect during the 12 months preceding the date on which the Notice of Termination is given plus any Bonus Plan compensation you have accrued;

(ii) The Company shall pay you the Severance Payment starting no later than the thirtieth (30th) day following the date of termination.    The Company shall pay the Severance Payment in equal installments over the course of the twelve (12) months following the date of termination.

(iii) The Company or the Parent Company shall continue to provide you or your family with life insurance (other than in the event of termination of employment as a result of your death) medical and dental insurance benefits, financial planning and a company-owned automobile, substantially similar to those benefits which you are receiving or entitled to receive prior to your termination of employment, for twelve (12) months following the date of termination.

(iv) During the period you are receiving any payments or benefits under paragraph 8(b), you agree to promptly notify the Company and the Parent Company upon your acceptance of any other employment and upon your eligibility for any medical benefits, insurance, financial planning or use of a company-owned vehicle by your new employer, you shall no longer be eligible to participate in the corresponding aspects of the Company's and the Parent Company's benefit plan and arrangements.

## II.    The Open and Knowing Adoption of the August 1998 SERP by H&H

### A.    Plaintiff Was Specifically Asked to and Did Draft Amendments to The Existing January 1998 SERP, Resulting in the August 1998 SERP

28.    H&H first adopted a Supplemental Executive Retirement Plan ("SERP") on or about September 1989. It was thereafter amended several times, on January 1, 1995, January 1, 1998,[3] and August 1, 1998.

29.    Both the August 1998 SERP and the previous versions, including the January 1998 SERP, were "unfunded plans". That is, H&H did not maintain any reserves or funds specifically to cover any benefits to be paid pursuant to either SERP, but rather any such payments would be made from the Company's own general funds. Therefore, the Company and the SERP, had an inherent conflict in that payments pursuant to the SERP would result in a direct cost for the Company. The Trusts would be funded before a payment needed to be made from them.

30.    In or around April 1998 H&H was acquired by WHX Corp. ("WHX", the "WHX Merger"). After the acquisition, the H&H Board, by Unanimous Written Consent, appointed Plaintiff to serve on H&H's Administrative Committee, which was the Committee authorized to administer the Company's various pension plans. Soon after the WHX Merger, H&H and WHX both expressed their clear intention to amend the January 1998 SERP. Therefore H&H's then President, Robert LeBlanc ("LeBlanc"), who was also subsequently a Member of the WHX Board, instructed Plaintiff and Paul Dixon, (Senior Vice President, Secretary and General Counsel) to update certain benefit and compensation plans (including the January 1998 SERP) to reflect changes resulting from the acquisition.

---

[3]    The "January 1998 SERP" refers to the Supplemental Executive Retirement Plan As Amended and Restated as of January 1, 1998, [Klein Binder I, Exhibit F].

31.    Plaintiff's work with respect to the August 1998 SERP, which was requested by the Company leadership, falls under the protective aegis of Article X, Section 2 (d) of the H&H Amended and Restated Bylaws which provides, in relevant part, that:

> For the purpose of this Section 2, the Corporation shall be deemed to have requested a person to serve an employee benefit plan where the performance by such person of his duties to the Corporation also imposes duties on, or otherwise involves beneficiaries of the plan; . . . <u>action taken or omitted by a person with respect to an employee benefit plan in the performance of such person's duties for a purpose reasonably believed by such person to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the Corporation.</u>[4]

**B.    H&H and WHX Fully Appreciated the Terms Of the August 1998 SERP, Intended Beneficiaries, the Effects of the August 1998 SERP, and H&H Approved and Adopted the August 1, 1998 SERP**

32.    Plaintiff, Dixon and LeBlanc worked with outside counsel, Alfred Wheeler, Esq. of Jacobs, Persinger & Parker, to draft the Amendment which resulted in the August 1998 SERP. Soon after a draft was completed, the August 1998 SERP Amendment began to be presented, both formally and informally, to the Board Members and Committees of WHX and H&H.

33.    Minutes of an August 5, 1998 meeting of the WHX Compensation Committee reflect that Mr. LeBlanc made a presentation to that Committee regarding various H&H employee benefit plans, including the Incentive Plan and the SERP, and that Mr. LeBlanc "agree[d] to report back to the Compensation Committee on further proposals regarding the SERP."[5] In attendance at that meeting were Messrs. Davidow, Olshan, LaBow, LeBlanc, Dixon, Tabin, and Finerman *inter alia*. Plaintiff was not present at that meeting. Notably, certain handwritten notes (whose author was not identified) demonstrate that the Committee understood

---

[4]    *See* 2704 - 2718 at 2716.

[5]    *See* Klein Binder V Exh. A; 2526-29; 2565-68, 2575.

and discussed "Rebuilding [the] SERP."[6]  Significantly, the notes show that the Committee understood that "Rebuilding SERP – impacts 6 people – Sr. officers."  Thus, there was full disclosure both of the meaning and impact of the SERP, as well as disclosure that it would specifically affect six Senior Officers, including Plaintiff.

34.    Minutes of an October 30, 1998 H&H Board meeting reflect that LeBlanc and Dixon reviewed with the H&H Board various employee benefit plans, including the August 1998 SERP.  According to the minutes, the H&H Board "agree[d] in concept" with the proposed amendments to the SERP.  The minutes state, "After discussion and agreement in concept with respect to these proposed Plans, it was agreed that the Management Incentive Plan, the Long-Term Incentive Plan and the SERP, including a bonus at the 100% level, would be referred for discussion and approval to the WHX Board of Directors."[7]  The entire H&H Board (inclusive of the H&H Compensation Committee) was present at this meeting, as was Dixon.  Plaintiff was not a part of this meeting.[8]

35.    Significantly, the January 1998 and the August 1998 SERPs provide that it is the H&H Compensation Committee and the H&H Board of Directors, respectively, which are vested with the authority to make, amend, interpret and enforce the SERP, and the decision or action of the Compensation Committee or Board in this regard "shall be final and conclusive and binding upon all persons having any interest therein."[9]

---

[6]    *See* Klein Binder V Exh. C.

[7]    See Klein Binder V Exh. D, 2516-18

[8]    *Id.*

[9]    *See* January 1998 SERP at Klein Binder I Exh. F at ¶ 6 (Compensation Committee); August 1998 SERP at Klein Binder I Exh. G at ¶ 14 (Board of Directors).

36.    Therefore, under either SERP, an action of H&H approving the SERP revisions was final and conclusive, and H&H had absolutely no obligation to send the SERP for approval to WHX. Defendants have never suggested that the H&H/WHX corporate veil be pierced.

37.    The SERP and all of its terms were also disclosed to WHX. Minutes of a WHX Compensation Committee Meeting held on November 5, 1998, reflect that Messrs. LeBlanc and Dixon reviewed H&H "compensation and incentive plans" with the WHX Compensation Committee and that Dixon described proposed changes to existing incentive and compensation plans and new plans "which the management of H&H believed to be in the best interests of H&H."[10] After questioning from the WHX Compensation Committee, LeBlanc and Dixon "agreed to finalize the proposed plans for final approval at the next Compensation Committee Meeting." Again, there is no rule requiring WHX to also approve the SERP. Plaintiff was not a part of this meeting.

38.    Similarly, the handwritten notes of the November 5, 1998 WHX Compensation Committee meeting show that the discussion concerned "rebuilding comp plan at H+H" with three steps, including "SERP" with the goal of "building LT continuity."[11] A change in the plan for the purposes of addressing a change in control was contemplated and discussed during the timeframe of this November 1998 meeting (which was clearly after the April 1998 Merger). The amendments resulting in the August 1998 SERP were discussed. The meeting notes state, "Rebuild SERP," and state that the initial SERP participants include Messrs. Arnold Nance (another covered Executive of H&H and WHX), Dixon, Kelly and LeBlanc.

---

[10]    *See* Klein Binder V Exh. E, 2519-24, 2569-71.

[11]    *See* Klein Binder V Exh. G.

C.    **The August 1998 SERP Was Also Adopted by Acquiescence, Custom and Usage**

39.    The August 1998 SERP was also properly adopted, with the full knowledge, understanding and consideration of both the H&H and the WHX Boards, by the repeated acquiescence, custom and usage of the H&H and the WHX Boards. The August 1998 SERP was repeatedly used and referred to by the two Boards including the payout after termination of two Executives, and was publicly disclosed in annual Financial Reports. None of the payouts that were made by the Company pursuant to the August 1998 SERP benefited Plaintiff in any way, but rather were payouts made to other previously terminated executives. Given this record, Defendants' present attempt to deny Plaintiff his benefits after Plaintiff's twenty years of service to H&H is wrongful.

40.    Because of its intent to amend the then-existent January 1998 SERP and to create the provisions of the August 1998 SERP, H&H and its Board began giving effect to the provisions ultimately made by the August 1998 SERP even before the August 1998 SERP was ever drafted. This was done at the leadership and Board level and with the knowledge of H&H's Board and leadership, and <u>without</u> the involvement of Plaintiff.[12]

41.    For example, the March 26, 1998 Minutes of the H&H Compensation Committee reflect the intent to make lump sum payments to certain Executives, and attached as exhibits thereto calculations of those payments. Tellingly, those calculations use 100% of the amounts awarded under the H & H Management Incentive Plan ("MIP"), as provided for in the August 1998 SERP, rather than using the calculations from the January 1998 SERP. Thus, even as early

---

[12]    Nor has H&H argued that Plaintiff was involved in this early process.

as March 1998, the Company was making certain payments as though they were calculated under the new provisions.[13]

42.     Accordingly, the Settlement and Release Agreements of the H&H Executives, which were dated as of April 3, 1998, and were attendant to the Merger Agreement between H&H and WHX, note that lump sum payments were made to certain Executives.[14]  As the exhibits thereto demonstrate, the calculations for the payment of the Executives use 100% MIP, as provided for in the August 1998 SERP, rather than the calculations from the January 1998 SERP.

43.     H&H also entered into a Second Amended and Restated Trust Agreement (the "Trust Agreement") effective August 1, 1998 (which was also the effective date of the August 1998 SERP).  The Trust Agreement was signed by Dixon, as well as by Jay Katz, Irving Needleman, and Alfred Wheeler, who were the three Outside Trustees of the Trust.[15] Significantly, the Trust Agreement, stated, "WHEREAS, the SERP was Amended and Restated as of August 1, 1998 . . . and the Insurance Program was amended effective August 1, 1998," the Trustees desired to further amend the first Trust Agreement, "to reflect certain changes which have been agreed between them." 0050-51 (emphasis added).  The Company's knowledge, use and approval of the August 1998 SERP is evidenced from the face of the Trust Agreement.

44.     A November 4, 1998 report from Watson Wyatt & Company, a human capital and financial management consulting firm ("Watson Wyatt") sent a letter analyzing statistics on various SERP Plans' use of 100% bonuses in SERP calculations and concluded that the use of 100% bonuses in SERP calculations was customary and appropriate.  This report was requested

---

[13]   *See* 2595-2603.

[14]   *See* Klein Binder I Exhs. B and C (Dixon and Kelly Settlement and Release Agreements).

[15]   *See* 0049-70.

by LeBlanc (at the time, President of H&H) to present to the WHX Compensation Committee. There is a handwritten notation by LeBlanc on the letter, which states: "WHX Board Meeting 11/5/98", and the fax cover sheet of the document indicates it was shown to LeBlanc.[16]

45.    The August 1998 SERP was also used by the H&H Board in the 2003 payout of LeBlanc, following his termination from the Company. The Unanimous Written Consent of the H&H Board of Directors, dated April 3, 2003, regarding the termination of LeBlanc, indicates the Board's knowledge and acceptance of the August 1998 SERP Plan, and states, in relevant part, that "the Company has in place the Supplemental Executive Retirement Plan as Amended and Restated as of August 1, 1998."[17]    The May 7, 2003 Minutes of a meeting of the Compensation Committee of the WHX Board reflect that Tabin represented to the Compensation Committee that Leblanc was duly paid pursuant to the formula set out in his Employment Agreement and the "H&H SERP." Thus, both Boards recognized that the use of the August 1998 SERP was valid.[18]

46.    The August 1998 SERP had also been used in 2001 to calculate termination benefits in connection with the termination of Arnold Nance, another covered Executive of H&H and WHX who was, in fact, one of the six Executives who the Company contemplated would be covered by the August 1998 SERP.[19] The calculations with respect to Nance were performed by Watson Wyatt.[20]

---

[16]    *See* November 4, 1998 letter from Watson Wyatt to Dennis Kelly, with handwritten note stating that a copy was given to Robert LeBlanc, HH 1960-62.

[17]    *See* Klein Binder IV Exh. 3; 2535, 2572-74.

[18]    *See* 2328-30.

[19]    *See* Klein Binder IV Exh. 2.

[20]    *See* Klein Binder II Exh. 5.

47.    On or about August 28, 2003, Dixon distributed a copy of the August 1998 SERP, the Post-Retirement Life Insurance Program, and a SERP Benefit Election Form, together, to Executives, including Dan Murphy, Mario Arena, Tom Brouillard, Pete Marciniak[21] and Bob Hynes. Thus, each and every one of these executives had full and fair opportunity to read and review this document which was presented in its final form to them, and each had full and fair opportunity to either discuss it in a H&H or WHX Board meeting, or with Alfred Wheeler, Esq.[22] Each of these executives, as well as Plaintiff, Dixon and LeBlanc, signed a SERP Election Form.[23]

48.    The August 1998 SERP was also used with knowledge of the H&H and WHX Boards in that it was publicly reported in the WHX Proxy Statements in 2000, 2001, 2002, 2003 and 2004, describing SERP benefits as inclusive of 100% of MIP bonus.[24] Although no similar disclosure was included in the 1999 WHX Proxy Statement, an analysis had been performed by Watson Wyatt in anticipation of the 1999 statement, but was not included in the Proxy Statement.

49.    Further, the assumptions under the August 1998 SERP were reported in the Financial Reports and Statements of H&H and WHX annually. The Executives and Boards of the two Companies all reviewed those reports annually, and thus the existence and terms of the August 1998 SERP should have come as no surprise.[25]

---

[21]    These four Executives became participants in the SERP after 2000. Therefore, the only relevant Plan would be the August 1998 SERP which was the most recent.

[22]    *See* Klein Binder II Exh 19. HH 000865-89.

[23]    *See* Klein Binder II Exh. 20; 0008-48; HH 781-88.

[24]    *See* Klein Binder IV Exh. 1.

[25]    Notably, the Reports were not produced as requested by Plaintiff; thus, all Financial Reports should be produced as they will set forth the reporting of the August 1998 SERP. *See. e.g.*, March 11, 1999 Letter from Eugene Sullivan of Watson Wyatt to Dennis Kelly and exhibit thereto, HH 1957-59.

50.    Notably all of the above SEC filings were reviewed and signed off by the Companies, who have duties to make accurate disclosures.

51.    In the 2005 Acknowledgement and Release executed by each H&H Executive relating to the Bankruptcy filing of WHX Corp, H&H and WHX agreed to pay the Executives in consideration of releasing their claims under the August 1998 SERP and the H&H Executive Post Retirement Life Insurance Program.26   H&H now claims that it entered into these agreements as a result of Dixon's misconduct—but, the Company was represented by outside counsel, accountants, actuaries, and experts, and especially in light of the Company's knowledge, cannot now claim the Company was somehow unaware of the August 1998 SERP.

52.    All of the above actions -- which demonstrate the repeated acquiescence, custom and usage of the H&H and the WHX Boards of the August 1998 SERP, coupled with the numerous disclosures of the August 1998 SERP in the Proxy Statements, Financial Reports and Statements of H&H and WHX annually, distribution of the SERP as detailed in paragraph 45 and other disclosures mentioned above -- effectively amended the January 1998 SERP and replaced it with the August 1998 SERP.

### D.    The August 1998 SERP Provisions Were Reasonable and in the Best Interests of the Company

53.    As set forth above, Article X Section 2(D) of the H&H Amended Bylaws protects actions taken by Plaintiff with respect to the SERP which were reasonably believed by Plaintiff to be in the best interests of the participants and beneficiaries of the plan.  Here, any actions taken by Plaintiff were in the best interests of the Plan participants and beneficiaries.

---

[26]  *See* PA 5079-83 and PA 5097-101 (Robert Hynes); PA 5084-86 (Daniel Murphy); PA 5087-91 (Peter Marciniak); PA 5092-96 (Thomas Brouillard).

54.    The SERP's use of 100% MIP, as the basis for its calculations is an entirely reasonable approach and in the interests of the Company and the SERP participants and beneficiaries.[27] As advised by Watson Wyatt, many SERPs use that figure.[28] Indeed, Watson Wyatt advised that its Associates had indicated their experiences with SERPs of companies that they work with, and "In all cases, the SERPs reflect 100% of bonus, although in one case the total pay recognized, including the bonus, was limited to $400,000. This is similar to my experience. I work with about six SERPs in addition to the H&H SERP, and the H&H SERP is the only one that does not include 100% of bonus." *Id.* Notably, the fax cover page of this letter contains a contemporaneous handwritten note indicating that a copy of this was provided to Robert LeBlanc, H&H's then President. Clearly, a SERP including 100% of bonus was disclosed and contemplated by the Company.

55.    It was also reasonable that new change in control provisions needed to be reloaded into the SERP once the change in control payout under the WHX Merger had been made. Change in control payments are retention tools for top Executives – without those provisions, none of the Executives who stayed on at H&H after the WHX merger would have had incentive to stay on, if their company could be acquired by another leaving them with possibly no job.[29]

---

[27]    The Company has noted that the reasonableness is a decision for the Board of Directors to make, and it is for the Board to accept the SERP. As explained herein, the Board made that decision and adopted the SERP by its acquiescence, custom and usage.

[28]    *See* November 4, 1998 letter from Watson Wyatt to Dennis Kelly, with handwritten note stating that a copy was given to Robert Leblanc. HH 1960-62.

[29]    *See* ("Chrysler Has Bold New Idea-In Parachutes," Wall Street Journal, July 12, 1995, HH 2005 ("What drives companies to embrace such policies is that the threat of a protracted, hostile takeover fight often leaves top executives anxious to jump ship because they fear they'll lose their jobs. With this parachute, executives have an incentive to stay because even if they're eventually fired – before or after the actual takeover – they will get the payoff.")

56.     For example, the H&H Executives, including Plaintiff, held significant stock options in H&H, which became worthless prior to the WHX bankruptcy filing, because the stock of the Company plummeted below the strike price. Because there is such great uncertainty regarding whether Executives will be forced to leave their jobs, and whether the options that have been given to them will have any value, SERP Plans are thus effective as retention incentives and therefore include change-in-control provisions. The WHX Compensation Committee in fact realized this retention goal, and handwritten notes of the November 5, 1998 WHX Compensation Committee meeting show that the Committee discussed rebuilding the SERP with the goal of "building LT continuity."[30]

### E.     The August 1998 SERP Was Duly Approved To The Same Extent that Any Other Decision of the H&H Board Was Approved

57.     It was not out of the ordinary that many significant decisions would be made by H&H, and significant corporate action taken, without ever committing the Board's or the Company's decision or agreement to writing, and with no reflection in Board or Committee Minutes. Just as there is no dispute that those actions were properly approved and taken, there also should be no dispute:  the August 1998 SERP was properly discussed, approved, and, as demonstrated above, repeatedly implemented, to the same extent as those other decisions. Indeed, reporting of decision making was by no means consistent. A few examples are set forth below.

58.     In the 2004-2005 timeframe, H&H shut down its subsidiary, Maryland Specialty Wire and its division, Strandflex, which had approximately 200 employees, and approximately $40 million of annual revenue. On information and belief, the decision to exit this business resulted in charges in excess of $7 million. On information and belief, there are no Board

---

[30]     *See* Klein Binder V Exh. G.

minutes reflecting the decisions to close down operations, to sell its assets at a certain price, address its reserves, compensation or severance, or to fire its numerous employees.

59.　　In approximately 2002-2003, H&H shut down certain of its Precious Metal Operations in Fairfield, Connecticut and East Providence, Rhode Island, which had approximately 300 employees, and approximately $100 million of annual revenue.　On information and belief, there are no Board minutes reflecting the decisions to shut down the company, to close down operations, to sell its assets at a certain price, address its reserves, compensation or severance, or to fire its numerous employees. On information and belief, the decision to exit this business resulted in charges in excess of $15 million. The only Board Minutes reflect the approval, after all of this was done, of the decision to sell the land and buildings where the Fairfield Operation was housed,[31] minutes reflecting the sale of machinery and equipment, and an approval of the press release announcing the "exit."[32]

60.　　Similarly, H&H's disclosure of "Financial Statements and Supplementary Data," Item 8 of the Annual 10K Report for Year 2002, states that "In September 2002, the Company decided to exit certain of its stainless steel wire activities. The affected operations were at H&H's facilities in Liversedge, England and Willingboro, N.J, which had approximately 120 employees. On information and belief, the decision to exit these operating activities resulted in charges of $10.9 million, including restructuring charges of $8.0 million.[33]　No Minutes have been produced, nor are any believed to exist, reflecting these decisions or votes taken with respect to these decisions.

---

[31]　*See* 2254-55.

[32]　*See* 2233-34.

[33]　*See* Year 2002 10K filing of WHX Corp, filed April 15, 2003, page 49; Year 2003 10K filing of WHX Corp, filed April 14, 2004, page 40.

61.    Nor, on information and belief, are there any Minutes reflecting the July 2005 meeting which was characterized as a meeting of the H&H Board, which was apparently for the purpose of interrogating Plaintiff and Dixon in order to formulate a plan to terminate them.[34] Yet WHX's Chairman, Neil Arnold, the President, Stewart Tabin, the CEO, Neale Trangucci, and the H&H President, Daniel Murphy, were all in attendance.

III.    **Corporate Documents Are Frequently and Properly Created and Given a Retroactive Effectiveness Date, and Indeed, both H&H and WHX Repeatedly Did That Themselves**

62.    Defendants have made much of the fact that written changes to the SERP plan were made through 2003, but deemed effective as of August 1998 and, that somehow this was improper. Further, Defendants have argued that it is somehow significant that revisions to the Bonus Plan and Incentive Plan were specifically approved in Board Minutes, but that the SERP was not. Not so. The SERP was not an annualized plan, such as the Bonus Plan and Incentive Plan, which might need to have annualized benefits re-approved each year. The practice of setting an effective date prior to the signature date of a document is common corporate practice and was indeed common practice for H&H and WHX as well

63.    By way of example only:

a.    The WHX SERP, which states that it is effective on February 1, 2004, was signed and dated on March 4, 2005, conveniently three days before the WHX Bankruptcy filing. Notably, the provisions of the WHX SERP are similar to those of the August 1998 SERP.

b.    The December 29, 2005 Minutes of a meeting of the WHX Pension Administration Committee reflect that the Committee adopted two amendments,

---

[34]    *See*, e.g., 0367-68; *See* 11/6/06 Fleming Letter, Response to Request No. 11.

including "small benefit cash out" and "retroactive annuity start dates."[35]  The Amendment which was adopted, dated December 30, 2005, notes that the small benefit cash out would be effective nine months earlier – March 28, 2005, and the retroactive annuity start dates would be effective a full two years earlier – January 1, 2004.[36]

c.  Similarly, another example of H&H's pattern and practice of failing to document decisions that had been reached, the December 11, 1997 letter of Eugene Sullivan of Watson Wyatt to Robert Burlinson, then the Vice President and Treasurer of H&H, notes that the creation of a SERP Plan Election Form was discussed in 1997.[37]  However, no such Election Form was finalized until 2003, when Mr. LeBlanc was paid under the August 1998 SERP.  Plaintiff was directed by Tabin of WHX to document the SERP Election Forms for LeBlanc to sign.  The SERP Election Forms were all subsequently signed by the participants in the August 1998 SERP.[38]

d.  Notably, in each of the Acknowledgements and Releases executed by the H&H Executives, after Plaintiff was no longer with the Company, relating to the bankruptcy filing of WHX Corp section 2(c) grants the Employees Options to purchase WHX stock "pursuant to the draft 2005 WHX Corporation Incentive Stock Plan."[39]  Thus the practice of the Company was to award benefits to its

---

[35]  HH 1768-70.

[36]  *See* HH 1769.

[37]  *See* HH 615-619.

[38]  *See* Klein Binder II Exhs. 19- 20; 0008-48.

[39]  *See* PA 5079-83 and PA 5097-101 (Robert Hynes); PA 5084-86 (Daniel Murphy); PA 5087-91 (Peter Marciniak); PA 5092-96 (Thomas Brouillard).

employees according to plans which may have been in "draft" form but which were final and being used, for all intents and purposes.

e.   Similarly, Minutes of the May 7, 2003 meeting of the WHX Compensation Committee reflects that on that date the Committee ex post facto approved bonus payments to H&H executives, that had already been awarded and subsequently paid to the Executives, for year 2002, on April 4, 2003.[40]

## IV.   The H&H Leadership, including its Executives and Board Members, Cannot Now Claim Ignorance of their Own Approval and their Own Actions, Simply as a Matter of Convenience

64.   The Members of the WHX and H&H Board and Executives cannot now conveniently claim that they were unaware and misled as to all of the actions that they themselves were approving, instructing, and taking over the course of many years, or as to any changes to the SERP or actions by Plaintiff, all of which were openly disclosed to all of them.

65.   Significantly, the H&H Board Members, as Plan Management Fiduciaries, had obligations to, and did in fact understand, the actions they were approving in the Company's behalf. As reflected in both the January 1998 and the August 1998 SERPs, H&H maintains and sponsors the SERPs for a select group of management or highly compensated individuals (Sections 5 and 13, respectively). In the August 1998 SERP, H&H in Section 14 is designated the Administrator of the Plan, with the ability to delegate such duties to its agents. The Board of H&H appointed Dixon and Plaintiff to serve on the H&H Administrative Committee. Based on the above, H&H and the Board of H&H are plan management fiduciaries as defined under ERISA section 3(21)(A)(i), 29 U.S.C. §§1002(21)(A)(i) since H&H sponsors and maintains the

---

[40]   *See* (2328-29).

SERPs. Also, the Board of H&H is the Plan Administrator and as such is an ERISA fiduciary under Section 3(21)(A)(iii) of ERISA, 29 U.S.C. §§1002(21)(A)(iii).

66.     Because the Board of H&H has plan management responsibility, the H&H Board is an ERISA fiduciary with respect to the Plan. Since H&H is a wholly owned subsidiary of WHX and WHX was involved in all aspects of the plan management as reflected by the reporting aspects to the WHX Board, WHX is also an ERISA fiduciary and as such was responsible for knowing the provisions of the SERP when, for instance, approving the LeBlanc payout under the August 1998 SERP. To claim that the Boards of WHX and H&H, which had some overlapping members, merely signed board resolutions approving payouts, proxy disclosures, financial reports, and other documents, without having the underlying knowledge of the August 1998 SERP and what the SERP payout meant exactly is a breach of fiduciary duty by the WHX and the H&H Boards.

## V.     The March 2005 Bankruptcy of WHX, August 2005 Acquisition by Steel Partners

67.     In or about August, 2005, the controlling interest of WHX, which had filed under Chapter 11 in March 2005, was acquired by Steel Partners. Steel Partners is a private investment partnership which, on information and belief, buys at a discount and invests in under-followed and undervalued securities, including debt (senior and subordinated) and equities of small-cap public and private companies.

68.     Prior to the acquisition by Steel Partners, but while Steel Partners was in negotiations to acquire WHX's controlling interest, on information and belief, WHX realized that, under the change-in-control provisions of the August 1998 SERP Plan, the company would have to make change-in-control payments to any covered parties under the plan.

69.     As Plaintiff has argued previously, the timing of these calculations is significant – around the time that Steel Partners was in discussions to acquire WHX (and therefore H&H)

which was a troubled Corporation in Bankruptcy, WHX did not want to disclose to its potential acquirer, Steel Partners yet another source of liability – the SERP payment totaling up to approximately $14.6 million, with required payments to Plaintiff alone totaling up to approximately $3.7 million – as it would potentially change the valuation of the Company.

70.    The Company attempted to reduce the amount of that liability, by its wrongful conduct, including the termination of Plaintiff and its continuing efforts to deny Plaintiff his rightful benefits.

71.    Thus, the March 7, 2005 e-mail from Richard Michaels of Towers Perrin to Neale Trangucci, Stewart Tabin and Neil Arnold, copied to Bill Daniels, reflects that Towers Perrin had been requested by the Company to perform calculations to determine what the Executives could be paid under various scenarios under the August 1998 SERP. Notably, although as of March 2, 2005, Watson Wyatt, working with Plaintiff, had arrived at a total of $1.242 million that would be due to Plaintiff from the Company under the August 1998 SERP,[41] Towers Perrin, performing its own calculations at the request of H&H at the same time, in fact, reached a calculation of lump-sums under the August 1998 SERP of $1.351 million due to Plaintiff, which was higher than the number reached by Plaintiff in his calculation.[42]

72.    Similarly, Plaintiff had been asked to and did explain the SERP calculations. In the March 2, May 20, and May 25, 2005 emails of Plaintiff to WHX and H&H Executives, Plaintiff attached extensive spreadsheets demonstrating the calculations that would result from

---

[41]  *See* 0353-55.

[42]  This $1.241 million figure excludes a gross up for taxes and life insurance payments which would drive the figure up to approximately $3.7 million.

application of the SERP.[43]  Plaintiff candidly explained these calculations at length because he had nothing to hide.

73.     Critically, nowhere in the either email discussion is there any mention that the August 1998 SERP was improper or otherwise invalid.[44]  Evidently, the Company was waiting to see how much it would have to pay out before deciding whether it wanted to denounce the August 1998 SERP.  Indeed, this is nothing more than the Company's attempt to benefit at the expense of Plaintiff, an Executive who had served the Company faithfully for twenty years.

74.     In addition, in a further attempt to avoid payment of such SERP Plan benefits, the Special Investigation Committee of H&H engaged the Olshan law firm to determine whether the Company could avoid making payments under the August 1998 SERP Amendment, by evaluating whether the SERP Plan had been ratified through all the proper channels by the appropriate corporate Boards.

75.     Not surprisingly, the report rendered by Olshan in approximately May 2005 incorrectly concluded that the August 1998 Amendment had not been appropriately adopted or implemented as described above, even though it had been in use and relied upon from 1998 through 2005, specifically in paying termination benefits to two previous H&H employees, one being a member of the parent, WHX's board and the other also an officer of WHX.  Notably the Olshan Report concluded that the WHX and H&H boards had knowledge of the August 1998

---

[43]   *See* Klein Binder III, Tabs A, C and D.

[44]   In fact, the first note that the Company had decided to rely on the January 1998 SERP came in the April 7, 2005 email from Richard Michaels of Towers Perrin.  0363.  There, Mr. Michaels noted that the prior SERP forwarded to him by the Company used 100% MIP (i.e., the August 1998 SERP).  Subsequently, on June 28, 2005 H&H purported to amend the January 1998 SERP to which it had decided to revert.  HH 1780-81.  The supposed amendment to the prior, January 1998 SERP was signed on June 28, 2005 but its date of effectiveness was backdated to June 3, 2005 in order to deceptively bring the effective date to a few days prior to the second filing with the Bankruptcy Court, which was made on or about June 6, 2005.  *Id.*

amendment – the substance of it was discussed more than once, and the actual written document was used by the H&H board as described above.

76.     Almost immediately after Steel Partners' acquisition of WHX's controlling interest, Steel Partners began to put into effect its strategy of seeking to increase its profit by, among other things, cutting operating, overhead and administrative costs, and generally reducing corporate expenditures, including attempting to reduce or eliminate certain payments to be made to employees.  In furtherance of their plan to impose cost reductions, Steel Partners reviewed Olshan's Report, and relied on this report as a basis for determining that the August 1998 SERP Amendment had not been ratified through all the proper channels by the appropriate corporate Boards.

77.     In September 2005, Plaintiff, was terminated without prior notice.  Even though Plaintiff had at all times acted in good faith, and with the full knowledge and approval of his supervisors, and the H&H and WHX Boards, Plaintiff's termination letter purported to terminate him "for cause," for purported violations relating to implementation of the August 1998 Amendment.

78.     Although it is not disputed here that H&H could terminate Plaintiff at its discretion pursuant to Plaintiff's Employment Agreement, the Employment Agreement provides that, if Plaintiff were terminated by H&H in its discretion, Plaintiff would be entitled to certain severance payments and benefits.

79.     In furtherance of the strategy relating to the acquisition by Steel Partners, and for the purpose of avoiding making payments to which Plaintiff is entitled under the various ERISA Plans and Benefit Plans, including the August 1998 SERP (or, in the alternative the January 1998 SERP which was amended through custom, practice and usage as set forth above), H&H

provided Plaintiff with a termination letter purporting to terminate Plaintiff for supposed misconduct relating to the August 1998 SERP claiming that it was used without being formally ratified by the Board, and that H&H suddenly disclaimed knowledge of the August 1998 Amendment.

80.    H&H's accusations are baseless, and are transparently and simply an attempt, following acquisition of the company by a new parent, Steel Partners, to avoid paying to Plaintiff the severance payments and  benefits under the ERISA Plans and Benefit Plans to which he is entitled.

## VI.    **Termination of Plaintiff**

81.    By letter dated September 15, 2005, Kelly was terminated, purportedly under Paragraph 7(a) of his Employment Agreement.  In that letter, H&H stated that Kelly violated the Paragraph by:

> attempting to amend and put in place various benefit plans to personally benefit yourself, without notice to, or approval of, the Board of Directors; for further failing to disclose the existence of the relevant plan documents and other information to the Board; for failing to cooperate in the Company's investigation of these important issues; for material losses to the Company in connection with your actions; and for various other acts, constituting a pattern and practice of behavior that materially has breached your employment obligations.

82.    Purporting to terminate Plaintiff under Paragraph 7(a), H&H declined to give to Plaintiff severance and termination payments to which he is entitled.  However, the facts here reveal that none of H&H's claims in the Termination Letters are grounded in fact.  H&H's attempt to terminate Plaintiff pursuant to Paragraph  7(a) is a transparent attempt to simply deprive him of benefits to which he is entitled, under his Employment Agreement, under the SERP, and under the ERISA Plans and Benefit Plans in the event of a termination without cause.

83.    In particular, the specific accusations in the Termination Letters are wholly baseless:

<u>First</u>, the only plan at issue here is the August 1998 SERP, which was the subject of the Olshan investigation and letter.

<u>Second</u>, Plaintiff did not put a SERP in place with the intention to wrongfully cause a personal benefit to himself. Plaintiff was not intending to resign from the Company (nor ever gave such notice) or to collect under any ERISA Plan or Benefit Plan, but rather stayed with the Company even through the bankruptcy and acquisition of WHX by Steel Partners. Further, there were seven initial participants to the SERP, two of which stood to receive monies far exceeding Plaintiff in a short period of time. Further, Article X, Section 2(d) of the Amended and Restated Bylaws of H&H provides, in relevant part that:

> For the purpose of this Section 2, the Corporation shall be deemed to have requested a person to serve an employee benefit plan where the performance by such person of his duties to the Corporation also imposes duties on, or otherwise involves beneficiaries of the plan; . . . action taken or omitted by a person with respect to an employee benefit plan in the performance of such person's duties for a purpose reasonably believed by such person to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the Corporation.

<u>Third</u>, both the WHX and H&H Boards had actual notice of the August 1998 SERP – as indicated above.

<u>Fourth</u>, Plaintiff used his best efforts to cooperate with the Company's investigation of the issues, both formally and informally, and to this end gave interviews and documents to Olshan when it was conducting its inquiry, including offering additional information at the July 2005 meeting, attended by Arnold, Trangucci, Tabin and Murphy, in order to help the Company. This additional information was collected by Plaintiff after a thorough search of Plaintiff's two offices, hallway files, and basement of the Company offices in May and June 2005, and maintained in a storage box near Plaintiff's desk, which was ready for the Company to review.

<u>Fifth</u>, Plaintiff's actions caused H&H no losses, let alone material losses.

84.    Far from constituting conduct that even approached the level of section 7(a) of the Employment Agreements, Plaintiff's conduct was in good faith, and Plaintiff's activities were approved by the Board of Directors of both WHX and H&H. Regardless of whether Board Minutes reflect the ratification of the August 1998 SERP, it was ratified by action of the WHX and H&H Boards, by their acquiescence, custom and usage.

85.     In face of the Boards' public and open use of the August 1998 SERP for many years, their termination of the Plaintiff for alleged misconduct, was wrongful. H&H was simply trying to avoid paying out termination benefits and benefits under the ERISA Plans and Benefit Plans by casting the termination, which was in fact without cause pursuant to Section 7(c) of the Employment Agreement, as one for cause.

## VII.     The SERP is Fully Vested and Cannot be Forfeited, And Benefits Thereunder Cannot Be Curtailed

86.     H&H is incorrect in its attempt to wrongfully deny Plaintiff payment of monies to which he is entitled under the August 1998 SERP or, in the alternative, the January 1998 SERP which was amended through custom, practice and usage as set forth above.

87.     The August 1998 SERP has no provision requiring forfeiture of benefits in the event of termination for cause, or termination for any other reason. The January 1998 SERP also had no such provision.   Section 15 of the August 1998 SERP specifically states that the Company cannot curtail vested benefits.  According to the terms of the August 1998 SERP, all benefits due Plaintiff were and are vested and non-forfeitable.    See August 1998 SERP at Section 1(ix).  This is also true under the January 1998 SERP.  See January 1998 SERP Section 2.

88.     In fact, section 13(b) of the Second Amended and Restated Trust Agreement, dated as of August 1, 1998, contains an anti-alienation provision which prohibits forfeitures of vested benefits.[45]  Such an anti-alienation provision was also present in the previous versions of the Trust Agreement.

---

[45]   *See* 0049-70 at 0069.

## VIII.  <u>Plaintiff's Claims for Benefits</u>

89.    On or about April 26, 2006, Plaintiff submitted his claim for benefits under the August 1998 SERP or any alternative existing SERP, the H&H Life Insurance Program, the H&H/WHX Pension Plan, and the Medical (which have been collectively referred to herein as the ERISA Plans) and the Bonus Plan, the Incentive Plan, and the Option Plan,  (which have been collectively referred to herein as the Benefit Plans) along with Dixon who is not a Plaintiff herein.

90.    By letter dated May 26, 2006, Ms. Donna Rizzo Byrnes, H&H's Corporate Director of Benefits for the Pension Program Administrative Committee, forwarded certain Pension Plan documents, inter alia.  Ms. Byrnes also enclosed a Deferred Pension Application for Plaintiff.[46]

91.    Also by letter dated May 26, 2006, Counsel for H&H notified Plaintiff's counsel, inter alia, that H&H: (i) denied Plaintiff's claims under the Bonus Plan on the basis that Plaintiff was allegedly terminated "for cause", (ii) denied Plaintiff's claims under the Incentive Plan on the basis that there was allegedly no Incentive Plan in place at the time of Plaintiff's termination and also on the basis that Plaintiff would have lost any benefits by virtue of his "for cause" termination, (iii) forwarded documents for application to the Post-Retirement Medical Plan, and (iv) denied Plaintiff's requests for reimbursement, of expenses and also denied Plaintiff eligibility for a company-owned vehicle, again based on Plaintiff's alleged "for cause" termination.[47]

92.    Plaintiff appealed the May 26, 2006 denial of benefits under the Bonus Plan, the Incentive Plan, the Medical Plan and the reimbursements and company-owned car, by letter

---

[46]    *See* May 26, 2006 letter from H&H Corporate Director of Benefits.

[47]    *See* May 26, 2006 letter from Counsel for H&H.

dated July 10, 2006 on the basis that he was not properly terminated "for cause," but rather without cause.[48] Further, although it appeared that H&H had not denied Plaintiff's claims for benefits under the Medical Plan, no Plan documents were forwarded, and Plaintiff requested such documents.

93.      On or about September 27, 2006, Defendants denied Plaintiff's claims for benefits pursuant to the SERP and the Life Insurance Program.[49] The denial of the benefits claims appeared to be based entirely on H&H's claims of concerted wrongdoing by Dixon and Plaintiff, that the August 1998 SERP was the result of amendments that were made and put into effect without the knowledge of H&H, and that the August 1998 SERP therefore was the product of some misconduct. H&H also appeared to object to payments authorized and made by H&H and its Board of Directors pursuant to the provisions of the August 1998 SERP which, H&H only subsequently, during the course of Plaintiff's claim and appeal process, claimed, the Company made unconsciously. All of those assertions were incorrect.

94.      In connection with the denial of benefits, Defendants submitted a letter from Mr. Louis Klein, who was identified then, for the first time, as the Claim Administrator for both the SERP and the Life Insurance Program. Notably, Louis Klein has been a director of WHX since 2002[50] and as such has dual loyalties to the Benefit Plans and WHX. Moreover, Louis Klein is a Member of the WHX Compensation Committee, and therefore has a conflict in acting as a Claim Administrator of the Benefit Plans, particularly the SERP which is an Unfunded Plan as described above.[51]

---

[48]   *See* July 10, 2006 letter from Plaintiff's Counsel.

[49]   *See* September 27, 2006 letter from Defendants' Counsel denying SERP and Life Insurance Program Claims.

[50]   See *Year* 2003 DEF 14 A Proxy Filing of WHX Corp. filed May 5, 2003, page 8.

[51]   *See* PA 5060-61.

  
95.    Louis Klein was also conflicted since he was a Member of the H&H Compensation Committee[52]. Klein, in his role as a member of the Compensation Committee, was influenced by his actual conflict of interest in rendering the decision to grant or deny benefits to the Plaintiff as specifically detailed above in the paragraphs 69 through 80.  Since the SERP is an unfunded benefit plan and assets paid thereunder are paid from the general reserves of the Company as detailed in the above paragraph 29, Klein was conflicted in his role as Plan Administrator and did not act solely on behalf of the SERP participants and beneficiaries.  His determination that Plaintiff was not entitled to benefits was unreasonable.  As such, this court must determine the Plaintiff's right to benefits under the SERP using the de novo standard of review.  In the alternative, if the court determines that de novo review does not apply, the above-mentioned decision denying Plaintiff the rights and benefits due Plaintiff under the SERP was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith, and violates ERISA §502(a)(1)(B), 29 U.S.C. §113(a)(1)(B).  The decision is not supported by substantial evidence.

96.    Further, by letter dated October 20, 2006, Plaintiff requested that Defendants produce certain documents relating to the claims.[53]  Defendants objected to those requests by letter dated November 6, 2006, but produced certain documents, as indicated in that letter.[54]

97.    On December 11, 2006, Plaintiff appealed the Company's denial of benefits to them under the SERP  and the Life Insurance Program.

---

[52]  PA 6036-6038 Minutes of a Special Meeting of the Compensation Committee of the Board of Directors of Handy and Harman dated July 12, 2006.

[53]  *See* October 20, 2006 letter from Plaintiff's Counsel requesting certain documents.

[54]  *See* November 6, 2006 letter from Defendants' Counsel objecting to document request and providing certain documents.

98.    By letter dated January 9, 2007, counsel for Defendants advised counsel for Plaintiff that H&H would offer to Mr. Kelly both the pre- and post-retirement Life Insurance Policies, in exchange for the cash surrender value of those policies.[55]

99.    By letter dated February 8, 2007, Garen W. Smith, identified as the Plan Administrator of the SERP and the Life Insurance Program denied the appeal as to the SERP.

100.    Notably, Plaintiff never received any response with respect to their claim pursuant to the Option Plan made on April 26, 2006.

101.    In connection with the denial of benefits, Defendants submitted a letter from Mr. Garen W. Smith, who was identified then, for the first time, as the Claim Administrator for both the SERP and the Life Insurance Program.  Notably, Garen W. Smith has been a director of WHX since 2002 [56] and as such has dual loyalties to the Benefit Plans and WHX.  Moreover, Garen W. Smith is a Member of the WHX Compensation Committee,[57] and therefore has a conflict in acting as a Claim Administrator of the Benefit Plans, particularly the SERP which is an Unfunded Plan as described above.

102.    Garen W. Smith was also conflicted since he was a Member of the H&H Compensation Committee[58].  Garen **W.** Smith, in his role as a member of the Compensation Committee, was influenced by his actual conflict of interest in rendering the decision to grant or deny benefits to the Plaintiff as specifically detailed above in the paragraphs 69 through 80.  Since the SERP is an unfunded benefit plan and assets paid thereunder are paid from the general reserves of the Company as detailed in the above paragraph 29, Smith was conflicted in his role

---

[55]  *See* January 9, 2007 letter from Defendants' Counsel concerning Life Insurance Program Policies.

[56]  See DEF 14 A Proxy Filing of WHX Corp. filed May 5, 2007.

[57]  Id.

[58]  PA 6036-6038 - Minutes of  A Special Meeting of the Compensation Committee of the Board of Directors of Handy & Harman dated July 12, 2006.

as Plan Administrator and did not act solely on behalf of the SERP participants and beneficiaries. His determination that Plaintiff was not entitled to benefits was unreasonable. As such, this court must determine the Plaintiff's right to benefits under the SERP using the de novo standard of review. In the alternative, if the court determines that de novo review does not apply, the above-mentioned decision denying Plaintiff the rights and benefits due Plaintiff under the SERP was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith, and violates ERISA §502(a)(1)(B), 29 U.S.C. §113(a)(1)(B). The decision is not supported by substantial evidence.

## Plaintiff Is Entitled to Indemnification of his Legal Fees and Expenses

103.    Plaintiff is entitled to receive his fees and expenses in defending against H&H's rejection of his rightful claims for benefits. Article X, Section 2 (c) of the H&H Amended and Restated Bylaws provides, in relevant part, that:

> The Corporation shall indemnify any person made, or threatened to be made, a party to an action or proceeding by or in the right of the Corporation to procure a judgment in its favor . . . by reason of the fact that he . . . was a director or officer of the Corporation . . . against amounts paid in settlement and reasonable expenses, including attorney's fees, actually and necessarily incurred by him in connection with the defense or settlement of such action, or in connection with an appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in, . . . the best interests of the corporation, except that no indemnification under this paragraph shall be made in respect of (1) a threatened action, or a pending action which is settled or otherwise disposed of, or (2) any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation, unless and only to the extent that the court . . . determines upon application that, in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such portion of the settlement amount and expenses as the court deems proper.

104.    Article X, Section 2(d) provides, in relevant part, that:

> For the purpose of this Section 2, the Corporation shall be deemed to have requested a person to serve an employee benefit plan where the performance by such person of his duties to the Corporation also imposes

duties on, or otherwise involves beneficiaries of the plan; . . . <u>action taken or omitted by a person with respect to an employee benefit plan in the performance of such person's duties for a purpose reasonably believed by such person to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the Corporation.</u>

(Emphasis added.)

105.    Further, under Article X, Section 3 of the H&H Amended and Restated Bylaws,

Expenses incurred in defending a civil or criminal action or proceeding may be paid by the Corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount, unless the officer or director is found not to be entitled to indemnification under Section 4.

106.    Plaintiff is also entitled to advancement and reimbursement for legal and other expenses pursuant to Section 5.12 of the Merger Agreement, providing for mandatory expenses with an undertaking.  Section 5.12 provides, in relevant part:

Section 5.12 DIRECTORS' AND OFFICERS' INSURANCE AND INDEMNIFICATION.

(a) . . .  Parent shall, and shall cause the Surviving Corporation to, indemnify, defend and hold harmless any person who is now, or has been at any time prior to the date hereof, or who becomes prior to the Effective Time, an officer or director (the "Indemnified Party") of the Company and its Subsidiaries against all losses, claims, damages, liabilities, costs and expenses (including attorneys' fees and expenses), judgments, fines, losses, and amounts paid in settlement in connection with any actual or threatened action, suit, claim, proceeding or investigation (each a "Claim") to the extent that any such Claim is based on, or arises out of, (i) the fact that such person is or was a director, officer, employee or agent of the Company or any Subsidiaries or is or was serving at the request of the Company or any of its Subsidiaries as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or (ii) this Agreement, or any of the transactions contemplated hereby, in each case to the extent that any such Claim pertains to any matter or fact arising, existing, or occurring prior to or at the Effective Time, regardless of whether such Claim is asserted or claimed prior to, at or after the Effective Time, to the full extent permitted under New York law or the Company's Certificate of Incorporation, By-laws or indemnification agreements in effect at the date hereof, including provisions relating to advancement of expenses incurred in the defense of

any action or suit. Without limiting the foregoing, in the event any Indemnified Party becomes involved in any capacity in any Claim, then from and after consummation of the Offer Parent shall, or shall cause the Company (or the Surviving Corporation if after the Effective Time) to, periodically advance to such Indemnified Party its legal and other expenses (including the cost of any investigation and preparation incurred in connection therewith), subject to the provision by such Indemnified Party of an undertaking to reimburse the amounts so advanced in the event of a final non-appealable determination by a court of competent jurisdiction that such Indemnified Party is not entitled thereto. (b) Parent and the Company agree that all rights to indemnification and all limitations or liability existing in favor of the Indemnified Party as provided in the Company's Certificate of Incorporation and By-laws as in effect as of the date hereof shall survive the Merger and shall continue in full force and effect, with out any amendment thereto, for a period of six years from the Effective Time to the extent such rights are consistent with the NYBCL.

107.    Plaintiff is an "Indemnified Party" under the Merger Agreement. This matter is based on and arises out of Plaintiff's duties as an Officer or Director of H&H. Plaintiff acted in good faith in his capacity as an Officer of H&H, and reasonably believed his actions to be in the best interests of H&H and WHX. This matter is a "Claim" under the Merger Agreement. This Claim is based on, or arises out of, the fact that Plaintiff was a Director, Officer, Employee or Agent of H&H or WHX.   In this matter, Plaintiff has been made, and threatened to be made party to an action by H&H or WHX to procure a decision in its favor by reason of the fact that he was an Officer or Director of H&H or WHX. Plaintiff is willing to provide an undertaking as required by the Merger Agreement. Therefore, WHX and/or H&H is required to advance legal and other expenses under this mandatory provision.

108.    Article X, Section 2 (c) of the H&H Amended and Restated Bylaws provides, in relevant part, that:

> The Corporation shall indemnify any person made, or threatened to be made, a party to an action or proceeding by or in the right of the Corporation to procure a judgment in its favor . . . by reason of the fact that he . . . was a director or officer of the Corporation . . . against amounts paid in settlement and reasonable expenses, including attorney's fees,

actually and necessarily incurred by him in connection with the defense or settlement of such action, or in connection with an appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in, . . . the best interests of the corporation, except that no indemnification under this paragraph shall be made in respect of (1) a threatened action, or a pending action which is settled or otherwise disposed of, or (2) any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation, unless and only to the extent that the court . . . determines upon application that, in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for such portion of the settlement amount and expenses as the court deems proper.

109.    Article X, Section 2(d) provides, in relevant part, that:

For the purpose of this Section 2, the Corporation shall be deemed to have requested a person to serve an employee benefit plan where the performance by such person of his duties to the Corporation also imposes duties on, or otherwise involves beneficiaries of the plan; . . . <u>action taken or omitted by a person with respect to an employee benefit plan in the performance of such person's duties for a purpose reasonably believed by such person to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the Corporation.</u>

(Emphasis added.)

110.    Further, under Article X, Section 3 of the H&H Amended and Restated Bylaws,

Expenses incurred in defending a civil or criminal action or proceeding may be paid by the Corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount, unless the officer or director is found not to be entitled to indemnification under Section 4.

### AS AND FOR A FIRST CAUSE OF ACTION

### (Breach Of Contract - Employment Agreements, against H&H)

111.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 110, as if fully set forth herein.

112.    The Employment Agreement is a valid and enforceable contract between Plaintiff and H&H.

113.    Plaintiff has fully performed his obligations under the Employment Agreement.

114.    H&H has materially breached the Employment Agreement.

115.    Despite demand being made by Plaintiff for performance by H&H, H&H has breached and continues to breach the terms of the Employment Agreement, by withholding payments due to Plaintiff under Section 8(a) of the Employment Agreement, as due for termination without cause pursuant to Section 7(c) of the Employment Agreement.

116.    Plaintiff has been injured as a result of H&H's conduct as set forth in detail above in an amount to be determined at trial, but believed to be not less than $4,001,621.87 in addition to interest, costs and reasonable attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Declaratory Judgment)

117.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 116, as if fully set forth herein.

118.    At all times up to and including the Termination Date, Plaintiff was an employee of H&H a participant who met the eligibility provisions in the ERISA Plans and Benefit Plans. All of the benefits due Plaintiff in accordance with the ERISA Plans and Benefit Plans were and are vested and nonforfeitable and Plaintiff has complied with all the conditions in order to receive such benefits.

119.    The decision denying Plaintiff the rights and benefits due him under the ERISA Plans must be determined using the de novo standard of review.  In the alternative, if the court determines that de novo review does not apply, the above-mentioned decision denying Plaintiff the rights and benefits under the ERISA Plans was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith, and violates ERISA §502(a)(1)(B), 29 U.S.C.

§113(a)(1)(B). The decision is not supported by substantial evidence arose from an erroneous misapplication of law.

120.    The decision denying Plaintiff the rights and benefits due Plaintiff under the Benefit Plans was arbitrary and not made in good faith. The decision is not supported by substantial evidence and arose from an erroneous misapplication of law.

121.    Based on the allegations herein, Plaintiff seeks a Judgment against Defendants:

    a.  Declaring that the August 1998 SERP is valid.

    b.  Ordering Defendants to pay to Plaintiff all benefits due Plaintiff under the ERISA and Benefit Plans retroactive to the Termination Date;

    c.  Declaring that all rights and benefits due Plaintiff under the ERISA Plans and Benefit Plans are vested and non-forfeitable, or in the alternative, to award Plaintiff a money judgment for all sums due and owing; and

    d.  Declaring that no good cause existed to terminate Plaintiff's employment.

## AS AND FOR A THIRD CAUSE OF ACTION

**(Claim for Benefits under ERISA §502, 29 U.S.C. 1132 Against
Defendant SERP Due to Wrongful Denial of Benefits)**

122.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 121, as if fully set forth herein.

123.    At all times relevant herein, Defendant August 1998 SERP was an unfunded benefits plan that is maintained by the employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, as defined in ERISA sections 201, 301 and 401, 29 USC §§ 1051, 1081 and 1101.

124.    At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the SERP, participated in the SERP and had a vested and nonforfeitable benefit under the SERP.

125.    Plaintiff is a covered party in that he is an Eligible Executive and/or Corporate Officer as defined by Paragraph 1 of the August 1998 SERP and is further a Participant in the August 1998 SERP Plan as defined by the SERP Plan.  In the alternative, Plaintiff is a covered party under any other SERP Plan in existence with respect to H&H.

126.    All of the benefits due Plaintiff in accordance with the SERP were and are vested and nonforfeitable, and Plaintiff has duly complied with all the conditions in order to receive such benefits.

127.    Pursuant to the terms of the SERP Plan, Plaintiff is entitled to elect to receive a lump sum payment, as provided by Section 18 of the August 1998 SERP or in the alternative any other SERP Plan.  A change in control occurred, as defined in the August 1998 SERP Plan, by the acquisition of a controlling interest in WHX by Steel Partners, as set forth in paragraph 4 hereof, entitling Plaintiff to receive an acceleration of benefits in the form of a lump sum payment.

128.    Further, and in any event, neither the August 1998 SERP Plan nor any other alternative SERP Plan, has any prohibition or exclusion on payment of benefits under the Plans based on whether the eligible employee was terminated for cause, or without cause.  Thus, irrespective of whether Plaintiff was terminated for cause or without cause, he is entitled to payment of benefits under the Plan.

129.    Further, to the extent H&H's refusal to honor the terms of the SERP Plan results in any cancellation by H&H of any insurance policies, such as life insurance policies, pursuant to

which Plaintiff is covered, such cancellation will result in great harm to Plaintiff in that, reinstating such policies will be necessarily at a premium, and will result in harm to the extent Plaintiff is not able to obtain the same coverage at their current price.

130.    On or about April 26, 2006, Plaintiff timely requested payment of all benefits accrued in accordance with the SERP.

131.    On or about September 27, 2006, Plaintiff's claims for benefits were denied.

132.    On or about December 11, 2006, Plaintiff filed a timely request for a review of the decision denying Plaintiff benefits in accordance with the SERP.

133.    On or about February 8, 2007, Plaintiff received a decision denying Plaintiff rights and benefits due Plaintiff in accordance with the SERP.

134.    Since Klein and Smith are conflicted as detailed above, this Court must determine the Plaintiff's right to benefits under the SERP using the de novo standard of review.    In the alternative, if the court determines that de novo review does not apply, the above-mentioned decision denying Plaintiff the rights and benefits due Plaintiff under the SERP was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith, and violates ERISA §502(a)(1)(B), 29 U.S.C. §1132 (a)(1)(B).    The decision is not supported by substantial evidence.

135.    Plaintiff seeks to recover payments under the SERP pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which were wrongfully withheld by Defendants.

136.    As a direct and proximate result of the above actions, Plaintiff has been caused to incur attorneys' fees in an amount not now known to Plaintiff.

137.    As a direct and proximate result of the actions, Plaintiff has sustained damages in an amount not now known to Plaintiff, but on information and belief, such damages will

approximate the amount of benefits due Plaintiff in accordance with the SERP for each month since the Date of Termination; and Plaintiff will continue to sustain similar damages each month until the benefits are paid.

### AS AND FOR A FOURTH CAUSE OF ACTION

**(Declaration and Claim for Benefits Under ERISA § 502, 29 U.S.C. § 1132, Against Defendant H&H/WHX Pension Plan, H&H Life Insurance Program and the Medical Plan Due to Wrongful Denial of Benefits)**

138.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 137, as if fully set forth herein.

139.    At all times relevant herein, Defendant H&H/WHX Pension Plan is a pension plan as defined in ERISA §3(2), 29 USC §1002(2)(A) and is duly organized to meet the requirements of 26 USC §401.

140.    At all times relevant herein, the H&H Life Insurance Program is an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. §1002(1).

141.    At all times relevant herein,  Defendant Medical Plan is a employee welfare benefit plan as defined in ERISA §3(1),  29 USC §1002(1).

142.    At all times relevant herein, Plaintiff met the requirements of the eligibility provisions of the H&H/WHX Pension Plan , H&H Life Insurance Program and the Medical Plan, participated in the H&H/WHX Pension Plan, H&H Life Insurance Program and the Medical Plan and had a vested and nonforfeitable benefit under the H&H/WHX Pension Plan, H&H Life Insurance Program and the Medical Plan.

143.    All of the benefits due Plaintiff in accordance with the H&H/WHX Pension Plan, H&H Life Insurance Program and the Medical Plan were and are vested and nonforfeitable, and Plaintiff has duly complied with all the conditions in order to receive such benefits.

144.    On or about April 26, 2006, Plaintiff timely requested payment of all benefits accrued in accordance with the H&H/WHX Pension Plan, H&H Life Insurance Program and Medical Plan.

145.    On or about May 26, 2006, a Deferred Pension Application was sent to Plaintiff.

146.    A Group Insurance Enrollment Form and plan information for benefits was supposed to have accompanied the letter dated May 26, 2006.  No Medical plan information or Group Insurance Enrollment Form was ever provided.

147.    On or about September 27, 2006, Plaintiff received a letter from the Claims Administrator for the H&H Life Insurance Program.  Benefits under the Life Insurance Program were not denied but instead they provided the Plaintiff with the ability to transfer the policies to the Plaintiff after payment of the cash surrender value.

148.    Plaintiff is entitled to a judgment that he is entitled to benefits under the H&H/WHX Pension Plan, the Life Insurance Program and the Medical Plan.

149.    Plaintiff seeks to recover payments under the H&H/WHX Pension Plan, the Life Insurance Program and the Medical Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which were wrongfully withheld by Defendants.

150.    As a direct and proximate result of the actions, Plaintiff has been caused to incur attorneys' fees in an amount not now known to Plaintiff.

151.    As a direct and proximate result of the actions, Plaintiff has sustained damages in an amount not now known to Plaintiff, but on information and belief, such damages will approximate the amount of benefits due Plaintiff in accordance with the H&H/WHX Pension Plan, the Life Insurance Program and the Medical Plan for each month since the Date of

Termination; and Plaintiff will continue to sustain similar damages each month until the benefits are paid.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Breach of Contract Claim Against Defendants Bonus Plan, Incentive Plan and Option Plan Due to Wrongful Denial of Benefits)

152.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 151, as if fully set forth herein.

153.    At all times relevant herein, Defendants Bonus Plan, Incentive Plan, and Option Plan were nonqualified incentive plans that are not subject to the requirements 26 U.S.C. §401.

154.    At all times relevant herein, Plaintiff was a participant in the Bonus Plan, Incentive Plan and Option Plan and met the requirements of the eligibility provisions in the Bonus Plan, Incentive Plan and Option Plan.

155.    All of the benefits due Plaintiff in accordance with the Bonus Plan, Incentive Plan, and Option Plan  were and are nonforfeitable, and Plaintiff has duly complied with all the conditions in order to receive such benefits.

156.    On or about April 26, 2006, Plaintiff timely requested payment of all benefits accrued in accordance with the Bonus Plan, Incentive Plan and Option Plan.

157.    On or about May 26, 2006, Plaintiff was notified by counsel to the Bonus Plan, Incentive Plan, and Option Plan that the rights and benefits due Plaintiff under the Bonus Plan and Incentive Plan had been forfeited.

158.    On or about July 10, 2006, Plaintiff filed a timely request for a review of the decision denying them benefits in accordance with the Bonus Plan, Incentive Plan and Option Plan.

159.    On or about September 27, 2006, Plaintiff received a decision denying his rights and benefits due Plaintiff in accordance with the SERP.

160.    Notably, Plaintiff never received any response with respect to his claim pursuant to the Option Plan made on April 26, 2006, nor did Plaintiff receive any documents related to the Option Plan as requested.

161.    The above-mentioned decision denying Plaintiff the rights and benefits due him under the Bonus Plan, Incentive Plan, and Option Plan was arbitrary and not made in good faith, The decision is not supported by substantial evidence.

162.    As a direct and proximate result of the actions, Plaintiff has been caused to incur attorneys' fees in an amount not now known to Plaintiff.

163.    As a direct and proximate result of the actions, Plaintiff has sustained damages in an amount not now known to Plaintiff, but on information and belief, such damages will approximate the amount of benefits due Plaintiff in accordance with the Bonus Plan, Incentive Plan, and Option Plan for each month since the Date of Termination; and Plaintiff will continue to sustain similar damages each month until the benefits are paid.

164.    The Bonus Plan, Incentive Plan, and Option Plan (the "Plan Agreements") are valid and enforceable contracts between Plaintiff and H&H.

165.    Plaintiff has fully performed his obligations under the Plan Agreements.

166.    The Company has materially breached the Plan Agreements.

167.    Despite demand being made by Plaintiff for performance by the Company, the Company has breached and continues to breach the terms of the Plan Agreements, as set forth in detail above.

168.    Plaintiff has been injured as a result of the Company's conduct as set forth in detail above in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION

**(Interference With Protected Rights in Violation of ERISA §510, 29 U.S.C. 1140, Against   Defendants H&H, WHX, and the ERISA Plans)**

169.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 168, as if fully set forth herein.

170.    On or about the Termination Date, Defendants H&H and WHX, wrongfully and intentionally caused employment loss, economic damages, and loss of benefits by discharging Plaintiff from his employment.

171.    At all times relevant herein, Plaintiff had a business and/or employment relationship or expectancy with Defendants, whereby he was legally entitled to receive and was receiving benefits in the form of salary, health insurance, pension, vacation days, sick leave, and holiday pay, inter alia.  In addition, Plaintiff had a legitimate expectation of advancement and long-term continued employment with Defendant H&H.

172.    At all times relevant herein, Defendants H&H, WHX and the ERISA Plans had knowledge of Plaintiff's employment relationship and expectancy.

173.    At some time prior to the Termination Date, Defendants H&H, WHX and the ERISA Plans, in violation of ERISA §510, 29 U.S.C. § 1140, agreed and conspired to intentionally interfere with Plaintiff's employment relationship and legitimate expectancy of continued employment for the express purpose of depriving Plaintiff of most, if not all, of the substantial, ERISA-protected benefits of his employment with H&H, as alleged above.

174.    In particular, Defendant H&H terminated Plaintiff under pretenses of termination "for cause" so as to avoid having an outstanding obligation to pay the Change In Control

Benefits to Plaintiff, and so that Defendant WHX would not be forced to represent to its then-potential acquirer, Steel Partners, the existence of those outstanding obligations to Plaintiff, and therefore conspired to terminate Plaintiff, all without any legal justification.

175.    As a direct and proximate result of Defendants H&H, WHX and the ERISA Plans aforesaid actions in violation of ERISA §510, 29 U.S.C.§ 1140, Plaintiff suffered the losses complained of herein by reason of which he is entitled to recover of the Defendant consequential and liquidated damages with respect to the ERISA Plans.

176.    The actions of Defendants H&H, WHX and the Benefit Plans were willful, wanton, intentional, oppressive, discriminatory and outrageous, justifying the imposition of punitive damages in an amount sufficient to deter defendants and others from like conduct in the future.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (For an award of Attorney's Fees and Costs, Pursuant To ERISA §502(g)(1), 29 U.S.C. §1132(g)(1))

177.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 176, as if fully set forth herein.

178.    ERISA 502(g)(1), 29 U.S.C. § 1132(g)(1) authorizes this Court to award reasonable attorney's fees and costs of the action.

179.    As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and have necessarily incurred attorneys' fees and costs in connection with their claims for benefits. Further, Plaintiff anticipates incurring additional attorney's fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown. Plaintiff therefore requests an award of reasonable attorney's fees and costs.

## AS AND FOR A EIGHTH CAUSE OF ACTION

### (Indemnification)

180.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 179, as if fully set forth herein.

181.    Plaintiff is an Indemnified Party under the Merger Agreement.

182.    This matter is based on and arises out of Plaintiff's duties as officers or directors of H&H.  Plaintiff acted in good faith in his capacity as an Officer of H&H, and reasonably believed his actions to be in the best interests of H&H and WHX.

183.    This matter is a "Claim" under the Merger Agreement.  This Claim is based on, or arises out of the fact that Plaintiff was a Director, Officer, Employee or Agent of H&H or WHX.

184.    In this matter, Plaintiff has been made, and threatened to be made party to an action by H&H or WHX to procure a judgment in its favor by reason of the fact that he was an Officer or Director of H&H or WHX.

185.    Plaintiff is willing to provide an undertaking as required by the Merger Agreement.

186.    Therefore, Plaintiff demands advancement and indemnification of his legal fees and other expenses in this matter.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against defendants follows:

A.    On the First Cause of Action, awarding Plaintiff damages on his Breach of Contract Action in an amount to be determined at trial, but believed to be not less than $4,001,621.87, in addition to interest, costs and reasonable attorneys' fees;

B.    On the Second Cause of Action, entering a Judgment declaring (1) that the August 1998 SERP is valid; (2) ordering Defendants to pay to Plaintiff all benefits due Plaintiff under

the ERISA and Benefit Plans retroactive to the Termination Date, (3) declaring that all rights and benefits due Plaintiff under the ERISA and Benefit Plans are vested and non-forfeitable, or in the alternative, to award Plaintiff a money judgment for all sums due and owing; and (4) declaring that no good cause existed to terminate Plaintiff's employment;

   C.  On the Third Cause of Action, ordering Defendant August 1998 SERP, or in the alternative, January 1998 SERP as amended through custom, practice and usage, to pay to Plaintiff all benefits due to Plaintiff retroactive to the Termination Date;

   D.  On the Fourth Cause of Action, ordering Defendant H&H/WHX Pension Plan, H&H Life Insurance Program and the Medical Plan to pay to Plaintiff all benefits due to Plaintiff retroactive to the Termination Date;

   E.  On the Fifth Cause of Action, Ordering Defendants Bonus Plan, Incentive Plan and Option Plan to pay to Plaintiff all benefits due to Plaintiff retroactive to the Termination Date;

   F.  On the Sixth Cause of Action, ordering Defendants H&H, WHX and the ERISA Plans to pay Plaintiff for damages in amounts sufficient to compensate Plaintiff for all his damages, consequential losses, and for all their injuries according to proof at trial;

   G.  On the Seventh Cause of Action, awarding Plaintiff his legal fees and costs;

   H.  On the Eighth Cause of Action, entering a Judgment against Defendants granting advancement and indemnification in an amount to be determined at trial, together with interest, costs and reasonable attorneys' fees.

   I.  On each of the Causes of Action, awarding Plaintiff prejudgment interest from the Termination Date until date of judgment, costs and disbursements in this action, attorneys' fees and all applicable interest thereon;

J.    On each of the Causes of Action, awarding Plaintiff attorneys fees, court costs, and all other reasonable costs incurred, pursuant to ERISA §502(g), 29 U.S.C. § 1132(g) and any other applicable law;

K.    On each of the Causes of Action, awarding Plaintiff liquidated damages and punitive damages in an amount to be determined at trial.

L.    On each of the Causes of Action, such other and further relief as is deemed just and proper.

Dated: New York, New York
        January 8, 2008

GREENBERG TRAURIG, LLP

By: _____
     Leslie D. Corwin (LC-0254)

MetLife Building
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Plaintiff*

# AMENDMENT NO. 1

## TO

## EMPLOYMENT AGREEMENT

AMENDMENT NO. 1 dated as of December 21, 1998 to the Employment Agreement

dated as of April 7, 1998 (the "Employment Agreement"), by and between Handy & Harman (the

"Company"), a New York corporation, and Dennis Kelly ("Employee").

### W I T N E S S E T H :

WHEREAS, Employee is an employee of the Company; and

WHEREAS, Employee and the Company have entered into the Employment

Agreement, pursuant to which the Company has employed and will continue to employ Employee

as Vice President and Controller of the Company; and

WHEREAS, in consideration for Employee's performance under the Employment

Agreement, the parties wish to amend certain terms of the Employment Agreement to provide for

a one-year evergreen renewal, as provided herein.

NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby agree

as follows:

1.      Section 1 of the Employment Agreement is hereby amended in its entirety

effective as of the date hereof to read as follows:

1. The initial term of your employment shall be from April 7, 1998
through April 7, 1999, subject to earlier termination pursuant to the
provisions set forth below, and shall automatically be extended for successive
one-year terms unless either you or the Company shall advise the other upon
not more than 60 days nor less than 30 days notice that such term shall not be
renewed; provided that if the Agreement shall not be renewed by the

219263.1

2809
CONFIDENTIAL

Company, you shall be entitled to the benefits set forth in Section 8(b) hereof as if your employment had been terminated pursuant to Section 7(c) hereof;

2.    Except as modified above, the terms and conditions of the Employment Agreement are hereby confirmed and shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have duly executed this Amendment No. 1 as of the date first above written.

**HANDY & HARMAN**

By: _____
Name:  Robert LeBlanc
Title:   President and Chief
          Executive Officer

Agreed to this **21** day
of **December**, 1998

_____
Dennis Kelly

219263.1                                    -2-                            **2810**
                                                                    **CONFIDENTIAL**

## EMPLOYMENT AGREEMENT

This Agreement (the "Agreement"), dated as of April 7, 1998, will confirm that Handy & Harman, a New York corporation (the "Company") has offered, and you have accepted, the position of Vice President and Controller of the Company.

1.     The term of your employment shall be from April 7, 1998 through April 7, 1999, subject to earlier termination pursuant to the provisions set forth below. After expiration of the term, unless the Agreement is extended or a new employment agreement is entered into with the Company, you shall be an employee at-will and entitled to all of the benefits including severance under the Company's then applicable policies.

2.     You agree to use your best efforts to promote the interest of the Company and devote your full business time and energies to the business and affairs of the Company. You agree to perform such services as are customary to your position and as shall from time to time be assigned to you by the Board of Directors of the Company.

3.     Your annual base salary shall be no less than $175,000, less applicable federal, state and local tax deductions, payable in accordance with the Company's customary payroll practices. Any increases in your annual salary shall be in the sole discretion of the Company's Board of Directors.

4.     (a)     You shall be eligible to participate in the following compensation plans that may be offered from time to time by the Company, in accordance with the terms and provisions of such plans and their successors and assigns and subject to the discretion of the Company's Board of Directors: the Handy & Harman Management Incentive Plan (the "Bonus

204294.1

**2811**
**CONFIDENTIAL**

Plan"), the Handy & Harman Long-Term Incentive Plan (the "Incentive Plan"), and WHX

Corporation's (the "Parent Company") 1991 Incentive and Non-Qualified Stock Option Plan (the

"Option Plan") in each case as described below.

      (b)    You shall be eligible to participate in the Bonus Plan beginning in

respect of the 1998 plan year; provided, however, that any bonus amounts payable thereunder are

contingent upon the Company's attainment of performance goals established by the Company's

Board of Directors in its sole discretion.

      (c)    You shall continue to be eligible and to participate in the Incentive

Plan in respect of the 1997-through-1999 cycle and subsequent cycles; provided, however, that

any awards granted and any amounts payable thereunder are contingent upon the Company's

attainment of performance goals established by the Company's Board of Directors.

      (d)    You shall be granted, effective as of April 23, 1998, options (the

"Options") to purchase 50,000 shares of common stock of the Parent Company pursuant to the

Option Plan. The Options shall (i) be granted under, and subject to the terms of, the Option Plan,

(ii) have a ten (10) year term (subject to earlier termination as provided in the Option Plan and

the form of grant agreement thereunder), (iii) vest and become exercisable with respect to one-

third of the shares of common stock subject thereto on each of the first three (3) anniversaries

of the date of grant and (iv) have an exercise price per share of common stock equal to the fair

market value of the common stock as of April 23, 1998.

      5.    (a)    You shall be eligible to participate in all Company employee benefit

plans and programs which are made generally available to salaried employees of the Company,

in accordance with the terms and provisions of such plans.

2812
CONFIDENTIAL

(b)     You shall be eligible to participate in the Handy & Harman Supplemental Executive Retirement Plan and the Handy & Harman Executive Life Insurance and Post-Retirement Life Insurance Program, in each case in accordance with the terms and provisions of such plans.

(c)     The Company shall reimburse you for annual financial, estate and tax planning and tax preparation expenses up to a maximum of 3% of your annual base salary in effect on January 1 of the tax year.

(d)     You shall be provided with a Company-owned automobile in accordance with the Company's existing policies and procedures in place for other executive officers of the Company.

6.    (a)     The Company shall reimburse you for all reasonable business expenses incurred by you in accordance with the Company's policies on reimbursement for business expenses as then in effect.

(b)     The Company shall reimburse you for annual membership fees and expenses with respect to your membership in one country club selected by you.

(c)     You and your spouse shall be entitled to receive post-retirement health insurance benefits from the Company under the Company's Post-Retirement Medical Plan in effect for employees of the Company prior to 1992 on such terms and conditions in place for other employees covered by the Plan.

7.    (a)     The Company may terminate your employment at any time, without prior notice, for any of the following reasons: (i) your engaging in conduct which is materially injurious to the Company or the Parent Company, their subsidiaries or affiliates, or any of their

2813
CONFIDENTIAL

respective customer or supplier relationships, monetarily or otherwise; (ii) your engaging in any act of fraud, misappropriation or embezzlement or any act which would constitute a felony (other than minor traffic violations); or (iii) your material breach of this Agreement.

(b)    If, as a result of your incapacity due to physical or mental illness, you shall have been absent from the full-time performance of your duties hereunder for at least 120 days within any twelve (12) consecutive months, excluding vacation time actually used in accordance with the Company's policies thereon, your employment may be terminated by the Company, upon written notice in accordance with paragraph 8 hereof without further notice.

(c)    The Company, in its sole discretion, may terminate your employment at any time for any reason other than those stated in paragraphs 7(a) or 7(b) upon thirty (30) days prior written notice.

8.    (a)    If your employment is terminated by the Company pursuant to paragraph 7(a), you shall receive your base salary through the date of termination and the Company shall have no further obligations to you under this Agreement.

(b)    If your employment is terminated by the Company pursuant to paragraph 7(b) or 7(c) or by your death, you or your personal representative, guardian, or the representative of your estate shall be entitled to the following severance and benefits:

(i)    The Company shall pay you a severance payment (the "Severance Payment") equal to one (1) year's full base salary at your highest rate in effect during the twelve (12) months preceding the date on which the Notice of Termination is given plus any Bonus Plan compensation you have accrued;

204294.1                                    -4-

2814
CONFIDENTIAL

(ii)     The Company shall pay you the Severance Payment starting no later than the thirtieth (30th) day following the date of termination. The Company shall pay the Severance Payment in equal installments over the course of the twelve (12) months following the date of termination.

(iii)     The Company or the Parent Company shall continue to provide you or your family with life insurance (other than in the event of termination of employment as a result of your death) medical and dental insurance benefits, financial planning and a company-owned automobile, substantially similar to those benefits which you are receiving or entitled to receive prior to your termination of employment, for twelve (12) months following the date of termination.

(iv)     During the period you are receiving any payments or benefits under paragraph 8(b), you agree to promptly notify the Company and the Parent Company upon your acceptance of any other employment and upon your eligibility for any medical benefits, insurance, financial planning or use of a company-owned vehicle by your new employer, you shall no longer be eligible to participate in the corresponding aspects of the Company's and the Parent Company's benefit plans and arrangements.

9.     You shall be entitled to terminate your employment for "Good Reason", which shall mean the occurrence of one of the following circumstances:

(i)     a reduction in your annual base salary as in effect on the date of such change;

(ii)     the Company causes the relocation of the office in which you are located prior to the change to a location more than fifty (50) miles from Rye, New York, except

204294.1                              -5-

2815
CONFIDENTIAL

for required travel on the business of the Company to an extent substantially consistent with your present business travel obligations;

   (iii) pursuant to an action taken by the Company, you are selectively excluded from a compensation, bonus, stock option or stock ownership plan otherwise in existence at the time of the change or thereafter put into effect for the benefit of others in a similar situation unless substantially equivalent benefits are provided to you;

   (iv) except as a required by law, the failure to continue to provide you with benefits at least as favorable as those enjoyed by you under the employee benefit and welfare plans of the Company or the Parent Company in which you were participating at the time of the change or the taking of any action by the Company which would materially reduce any of the benefits enjoyed by you at the time of the change; or

   (v) the failure of the Company or the Parent Company to obtain a satisfactory agreement from any successor to assume and agree to perform this Agreement.

   10. Upon the occurrence of any of the aforestated set forth in Section 9, you shall for Good Reason upon notice pursuant to Section 16 hereof to the Company, if such occurrence is not cured within 30 days of receipt of such notice, be entitled to the following benefits:

   (a) The Company shall pay you a severance payment (the "Severance Payment") equal to one (1) year's full base salary at your highest rate in effect during the twelve (12) months preceding the date on which the Notice of Termination is given plus any Bonus Plan compensation you have accrued;

204294.1       -6-

2816
CONFIDENTIAL

(b)    For a twelve (12) month period after termination of your employment, the Company shall arrange to provide you with life, medical and dental insurance benefits, financial planning and a company-owned automobile substantially similar to those which you are receiving or entitled to receive immediately prior to the Notice of Termination, unless you are eligible to receive such benefits from a subsequent employer;

(c)    The Company shall pay you the Severance Payment starting no later than the thirtieth (30th) day following the date of termination. The Company shall pay the Severance Payment in equal installments over the course of the twelve (12) months following the date of termination.

11.    Your continued employment shall not constitute consent to, or as a waiver of rights with respect to, any circumstance constituting Good Reason hereunder for a period of sixty (60) days following the occurrence of such event, and thereafter such circumstance shall be deemed waived as an event giving rise to a termination pursuant to Section 9.

12.    Any termination of your employment by the Company, or by you shall be communicated by written "Notice of Termination" to the other party hereto in accordance with Section 16 hereof. For purposes of this Agreement, a Notice of Termination shall mean a notice indicating the specific termination provision in this Agreement relied upon and setting forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of your employment under the provision so indicated. Further, you agree that upon termination that you will resign effective as of the date of termination from any and all directorships you may hold in the Company or the Parent Company and their subsidiaries.

204294.1

-7-

2817
CONFIDENTIAL

13.    "Date of Termination" shall mean (30) days after the date specified in the Notice of Termination.

14.    Arbitration; Certain Costs.    Any dispute or controversy between the Company or Parent Company and you, whether arising out of or relating to the Agreement, the breach of the Agreement, or otherwise, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Rules then in effect and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  Such arbitration shall take place in the New York City metropolitan area.  The cost of any arbitration proceeding hereunder shall be borne equally by the Company and you.  The arbitrator shall have the authority to award any remedy or relief that a court of competent jurisdiction could order or grant, including, without limitation, the issuance of an injunction. However, either party may, without inconsistency with this arbitration provision, apply to any court having jurisdiction over such dispute or controversy and seek interim provisional, injunctive or other equitable relief until the arbitration award is rendered or the controversy is otherwise resolved.  In the event that it shall be necessary or desirable for you to retain legal counsel and/or incur other costs and expenses in connection with this arbitration provision, and provided that you substantially prevail in the enforcement of such rights, the Company shall pay (or you shall be entitled to recover from the Company, as the case may be) your reasonable attorneys' fees and costs and expenses in connection with any application under this arbitration provision, including the enforcement of any arbitration award, up to $25,000 in the aggregate.  Except as necessary in court proceedings to enforce this arbitration provision or an award rendered hereunder, or to

2818
CONFIDENTIAL

obtain interim relief, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of the Company.

15.    You have previously executed the Non-Competition Agreement annexed hereto.

16.    Any notices required by this Agreement shall be in writing and shall be deemed to have been given when delivered by hand, sent by facsimile (so long as an original is mailed within 24 hours of such facsimile transmission), mailed by United States certified mail, return receipt requested, postage prepaid, or sent by nationally-recognized overnight mail service, as follows:

if to you:

Mr. Dennis Kelly
94-27 Park Lane So.
Woodhaven, N.Y. 11421

if to the Company:

555 Theodore Fremd Avenue
Rye, New York 10580
Attention:    Paul Dixon
Senior Vice President and
General Counsel

and or to such other address as the parties may furnish to the other in writing in accordance with this paragraph.  Notices of change of address shall only be effective upon receipt.

17.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws principles.

18.    This Agreement sets forth the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements,

2819
CONFIDENTIAL

arrangements and understandings among the Company and you with respect to such subject matter. This Agreement can be modified only by a writing signed by you and the Company. If any provision of this Agreement shall be held to be void or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect. This Agreement shall inure to the benefit of and be binding upon the Company's successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

HANDY & HARMAN

By: _____
Name:  Paul Dixon
Title:  Senior Vice President and General
        Counsel


Agreed to this **2** day
of **Sept**, 1998

_____
Dennis Kelly

2820
CONFIDENTIAL