**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DENNIS C. KELLY,

                Plaintiff,

    vs

HANDY & HARMAN, WHX CORPORATION,
HANDY & HARMAN SUPPLEMENTAL
EXECUTIVE RETIREMENT PLAN, HANDY &
HARMAN EXECUTIVE POST-RETIREMENT
LIFE INSURANCE PROGRAM, HANDY &
HARMAN PENSION PLAN/WHX PENSION
PLAN, H&H MANAGEMENT INCENTIVE
PLAN, H&H LONG-TERM INCENTIVE PLAN,
INCENTIVE AND NON-QUALIFIED STOCK
OPTION PLAN, AND THE HANDY & HARMAN
POST-RETIREMENT MEDICAL PLAN,

                Defendants.

CIVIL ACTION NO.
08CV00163 (KMK)

ANSWER

Defendants Handy & Harman Supplemental Executive Retirement Plan ("SERP") and the Handy & Harman Executive Post-Retirement Life Insurance Program ("Life Insurance Program"), by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, for their Answer, state:

1.      Deny the allegations contained in paragraph 1 of the Complaint and deny knowledge or information sufficient to form a belief concerning the Benefit Plans.

2.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, except admit that Plaintiff was and employee of Handy & Harman ("H&H").

3.      Deny the allegations contained in paragraph 3 of the Complaint, except admit that WHX acquired H&H in April 1998 and H&H has concluded that the document entitled "H&H

Supplemental Executive Retirement Plan dated August 1998" ("alleged August 1998 SERP") was never approved or authorized by the Board, and is therefore invalid. Defendants refer the Court to the September 27, 2006 letter of Louis Klein and the 2/8/07 letter of Garen Smith for an accurate portrayal of the Company's findings, which are annexed hereto as Exhibits A and B, respectively.

4.      Deny the allegations contained in paragraph 4 of the Complaint, except admit that WHX filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code in March 2005 and that Steel Partners II, L.P. ("Steel Partners") acquired a significant interest in WHX in August 2005.

5.      Deny the allegations contained in paragraph 5 of the Complaint.

6.      Deny the allegations contained in paragraph 6 of the Complaint, except admit that H&H retained the law firm Olshan Grundman Frome Rosenzweig & Wolosky LLP to evaluate the alleged August 1998 SERP and the Life Insurance Program.

7.      Deny the allegations contained in paragraph 7 of the Complaint, except admit that on or about May 2005, Olshan Grundman Frome Rosenzweig & Wolosky LLP issued a report concluding that the alleged August 1998 was never properly adopted and approved, and refers the Court to the report for its complete content.

8.      Deny the allegations contained in paragraph 8 of the Complaint, except admit that Plaintiff was terminated for cause in September 2005, and H&H concluded that the alleged August 1998 SERP was never properly adopted by its Board.

9.      Deny the allegations contained in paragraph 9 of the Complaint.

10.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint.

2

11.     Admit the allegations contained in paragraph 11 of the Complaint.

12.     Admit the allegations contained in paragraph 12 of the Complaint.

13.     Deny the allegations contained in paragraph 13 of the Complaint, except admit that the SERP dated January 1998 ("January 1998 SERP") is an unfunded benefits plan that provides for supplemental retirement benefits for members of its senior management and refers the Court to the January 1998 SERP for its complete terms.

14.     Deny the allegations contained in paragraph 14 of the Complaint, except admit that the Life Insurance Program is a welfare benefit plan under ERISA § 3(1).

15.     Deny the allegations contained in paragraph 15 of the Complaint, except admit that the Pension Plan is a pension plan under ERISA § 3(2).

16.     Deny the allegations contained in paragraph 16 of the Complaint.

17.     Deny the allegations contained in paragraph 17 of the Complaint.

18.     Deny the allegations contained in paragraph 18 of the Complaint.

19.     Deny the allegations contained in paragraph 19 of the Complaint, except admit that the Medical Plan is a welfare benefit plan as defined under ERISA §3(1).

20.     The allegations contained in paragraph 20 of the Complaint state legal conclusions as to which no response is necessary.

21.     The allegations contained in paragraph 21 of the Complaint concerning the statutory provisions state legal conclusions as to which no response is necessary. Defendants admit that their principal place of business is New York and deny the remaining allegations contained in paragraph 21 of the Complaint.

22.     The allegations contained in paragraph 22 of the Complaint state legal conclusions as to which no response is necessary.

23.     Admit the allegations contained in paragraph 23 of the Complaint.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, except admit that Plaintiff was an employee of H&H.

25.     Admit the allegations contained in paragraph 25 of the Complaint.

26.     Deny the allegations contained in paragraph 26 of the Complaint, and refer the Court to the employment agreement for its complete terms.

27.     Deny the allegations contained in paragraph 27 of the Complaint, and refer the Court to the employment agreement for its complete terms.

28.     Deny the allegations contained in paragraph 28 of the Complaint, except admit that the SERP was first adopted in 1989 and there exists a January 1998 SERP.

29.     Deny the allegations contained in paragraph 29 of the Complaint, except admit that the January 1998 SERP is an unfunded plan.

30.     Deny the allegations contained in paragraph 30 of the Complaint, except admit WHX acquired H&H in or around April 1998.

31.     Deny the allegations contained in paragraph 31 of the Complaint, and refer the Court to H&H's Amended and Restated Bylaws for its complete terms.

32.     Deny the allegations contained in paragraph 32 of the Complaint.

33.     Deny the allegations contained in paragraph 33 of the Complaint, except admit that Mr. LeBlanc made a presentation to the WHX Compensation Committee, that Mr. LeBlanc agreed to make further proposals to the WHX Compensation Committee, and refer the Court to the minutes of the August 5, 1998 meeting for its complete contents.

4

34.     Deny the allegations contained in paragraph 34 of the Complaint, except admit that the H&H Board agreed to refer the matter of certain benefit plans to the WHX Board, and refer the Court to the minutes of the October 30, 1998 meeting for its complete contents.

35.     Deny the allegations contained in paragraph 35 of the Complaint, and refer the Court to the January 1998 SERP for its complete contents.

36.     Deny the allegations contained in paragraph 36 of the Complaint.

37.     Deny the allegations contained in paragraph 37 of the Complaint, and refer the Court to the minutes of the November 5, 1998 meeting of the WHX Compensation Committee for its complete contents.

38.     Deny the allegations contained in paragraph 38 of the Complaint.

39.     Deny the allegations contained in paragraph 39 of the Complaint.

40.     Deny the allegations contained in paragraph 40 of the Complaint.

41.     Deny the allegations contained in paragraph 41 of the Complaint, and refer the Court to the March 26, 1998 Minutes of the H&H Compensation Committee for its complete contents.

42.     Deny the allegations contained in paragraph 42 of the Compliant, and refer the Court to the Settlement and Release Agreements for their complete contents.

43.     Deny the allegations contained in paragraph 43 of the Complaint, and refer the Court to Second Amended and Restated Trust Agreement for its complete contents.

44.     Deny the allegations contained in paragraph 44 of the Complaint, and refer the Court to the report dated November 4, 1998 from Watson Wyatt & Company for its complete contents.

5

45.     Deny the allegations contained in paragraph 45 of the Complaint, except admit that Mr. LeBlanc was terminated in 2003 and received a payout, and refer the Court to the Unanimous Consent of the H&H Board of Directors, dated April 3, 2003, and the minutes of the May 7, 2003 meeting of the WHX Compensation Committee for their complete contents.

46.     Deny the allegations contained in paragraph 46 of the Complaint, except admit that Mr. Nance was terminated in 2001 and received a payout, and refer the Court to the calculations performed by Watson Wyatt & Company for its complete contents.

47.     Deny the allegations contained in paragraph 47 of the Complaint, except admit that a copy of the alleged August 1998 SERP was distributed in 2003 to certain executives, who signed and returned a SERP Benefit Election Form.

48.     Deny the allegations contained in paragraph 48 of the Complaint, and refer the Court to WHX's SEC filings for an accurate portrayal of their discussion of the SERP benefits.

49.     Deny the allegations contained in paragraph 49 of the Complaint.

50.     Deny the allegations contained in paragraph 50 of the Complaint.

51.     Deny the allegations contained in paragraph 51 of the Complaint, except admit that Acknowledgment and Releases were executed in 2005 in connection with WHX's bankruptcy filing and refers the Court to the Acknowledgment and Releases for their complete terms.

52.     Deny the allegations contained in paragraph 52 of the Complaint.

53.     Deny the allegations contained in paragraph 53 of the Complaint, and refer the Court to H&H's Amended Bylaws for its complete terms.

54.     Deny the allegations contained in paragraph 54 of the Complaint, except admit that Watson Wyatt discussed the MIP with Plaintiff.

55.    Deny the allegations contained in paragraph 55 of the Complaint.

56.    Deny the allegations contained in paragraph 56 of the Complaint.

57.    Deny the allegations contained in paragraph 57 of the Complaint.

58.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58 of the Complaint.

59.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59 of the Complaint.

60.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the Complaint.

61.    Deny the allegations contained in paragraph 61 of the Complaint.

62.    Deny the allegations contained in paragraph 62 of the Complaint, and refer the Court to the extensive responses by the Claims Administrator and the Plan Administrator for their complete contents.  See Ex. A and B.

63.    Deny the allegations contained in paragraph 63 of the Complaint, particularly that it is common corporate practice to adopt or approve pension and benefit plans in the manner described, and refer the Court to the referenced documents for their complete contents and dates of execution.

64.    Deny the allegations contained in paragraph 64 of the Complaint.

65.    Deny the allegations contained in paragraph 65 of the Complaint, except admit that H&H maintains and sponsors the January 1998 SERP.

66.    Deny the allegations contained in paragraph 66 of the Complaint.

67.    Deny the allegations contained in paragraph 67 of the Complaint, except admit that Steel Partners acquired a significant interest in WHX in August 2005 and that Steel Partners is a valued investor.

68.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Complaint.

69.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Complaint.

70.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Complaint.

71.    Deny the allegations contained in paragraph 71 of the Complaint, except admit that Towers Perrin performed calculations and arrived at a higher lump sum calculation than Watson Wyatt did under the alleged August 1998 SERP.

72.    Deny the allegations contained in paragraph 72 of the Complaint, except admit that Plaintiff corresponded with WHX and H&H executives about the alleged August 1998 SERP.

73.    Deny the allegations contained in paragraph 73 of the Complaint.

74.    Deny the allegations contained in paragraph 74 of the Complaint, except admit that Olshan Grundman Frome Rosenzweig & Wolosky LLP was hired to evaluate the SERP amendments.

75.    Deny the allegations contained in paragraph 75 of the Complaint, and refer the Court to the report for its complete contents.

76.    Deny the allegations contained in paragraph 76 of the Complaint.

77.     Deny the allegations contained in paragraph 77 of the Complaint, except admit that Plaintiff was terminated for cause in September 2005.

78.     Deny the allegations contained in paragraph 78 of the Complaint, and refer the Court to Plaintiff's Employment Agreement for its complete terms.

79.     Deny the allegations contained in paragraph 79 of the Complaint, and refer the Court to the termination letter for its complete contents.

80.     Deny the allegations contained in paragraph 80 of the Complaint, except admit that H&H was acquired by Steel Partners.

81.     Deny the allegations contained in paragraph 81 of the Complaint, except admit that Plaintiff was terminated in September 2005, and refer the Court to the September 15, 2005 letter for its complete contents.

82.     Deny the allegations contained in paragraph 82 of the Complaint.

83.     Deny the allegations contained in paragraph 83 of the Complaint, and refer the Court to the Amended and Restated Bylaws of its complete contents.

84.     Deny the allegations contained in paragraph 84 of the Complaint.

85.     Deny the allegations contained in paragraph 85 of the Complaint.

86.     Deny the allegations contained in paragraph 86 of the Complaint.

87.     Deny the allegations contained in paragraph 87 of the Complaint, and refer the Court to the January 1998 SERP and alleged August 1998 SERP for its complete contents.

88.     Deny the allegations contained in paragraph 88 of the Complaint, and refer the Court to the Second Amended and Restated Trust Agreement for its complete contents.

89.     Deny the allegations contained in paragraph 89 of the Complaint, except admit that Plaintiff demanded benefits on or about April 26, 2006.

90.     Admit the allegations contained in paragraph 90 of the Complaint.

91.     Deny the allegations contained in paragraph 91 of the Complaint, and refer the Court to the May 26, 2006 letter for its complete contents.

92.     Deny the allegations contained in paragraph 92 of the Complaint.

93.     Deny the allegations contained in paragraph 93 of the Complaint, and refer the Court to the September 27, 2006 letter for its complete contents.

94.     Deny the allegations contained in paragraph 94 of the Complaint, except admit that Mr. Louis Klein is a director of WHX, a member of the WHX Compensation Committee, and was appointed Claim Administrator for the SERP and Life Insurance Program.

95.     Deny the allegations contained in paragraph 95 of the Complaint, except admit that Mr. Klein was a member of the H&H Compensation Committee and the SERP is an unfunded plan.

96.     Admit the allegations contained in paragraph 96 of the Complaint.

97.     Deny the allegations contained in paragraph 97 of the Complaint, except admit that Plaintiff appealed the decision concerning the alleged August 1998 SERP.

98.     Admit the allegations contained in paragraph 98 of the Complaint.

99.     Deny the allegations contained in paragraph 99 of the Complaint, except admit that the Plan Administrator responded to Plaintiff's appeal and refer the Court to the February 8, 2007 letter for its complete contents.

100.     Deny the allegations contained in paragraph 100 of the Complaint.

101.     Deny the allegations contained in paragraph 101 of the Complaint, except admit that Mr. Smith is a director of WHX, a member of the WHX Compensation Committee, and is the Plan Administrator for the SERP and Life Insurance Program.

10

102.    Deny the allegations contained in paragraph 102 of the Complaint, except admit that Mr. Smith was a member of the H&H Compensation Committee and the SERP is an unfunded plan.

103.    Deny the allegations contained in paragraph 103 of the Complaint, and refer the Court to the H&H Amended and Restated Bylaws for its complete contents.

104.    The allegations contained in paragraph 104 state provisions of the Amended and Restated Bylaws and no response is necessary.  Defendants refer the Court to the Amended and Restated Bylaws for its complete contents.

105.    The allegations contained in paragraph 105 state provisions of the Amended and Restated Bylaws and no response is necessary.  Defendants refer the Court to the Amended and Restated Bylaws for its complete contents.

106.    Deny the allegations contained in paragraph 106 of the Complaint, and refer the Court to the Merger Agreement for its complete contents.

107.    Deny the allegations contained in paragraph 107 of the Complaint, except admit that Plaintiff was an officer or director of H&H, and refers the Court to the Merger Agreement for its complete contents.

108.    The allegations contained in paragraph 108 state provisions of the Amended and Restated Bylaws and no response is necessary.  Defendants refer the Court to the Amended and Restated Bylaws for its complete contents.

109.    The allegations contained in paragraph 109 state provisions of the Amended and Restated Bylaws and no response is necessary.  Defendants refer the Court to the Amended and Restated Bylaws for its complete contents.

11

110.    The allegations contained in paragraph 110 state provisions of the Amended and Restated Bylaws and no response is necessary.  Defendants refer the Court to the Amended and Restated Bylaws for its complete contents.

111.    In response to paragraph 111 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 110 as if set forth at length herein.

112.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112 of the Complaint.

113.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the Complaint.

114.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114 of the Complaint.

115.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115 of the Complaint.

116.    Deny the allegations contained in paragraph 116 of the Complaint.

117.    In response to paragraph 117 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 116 as if set forth at length herein.

118.    Deny the allegations contained in paragraph 118 of the Complaint, except admit that Plaintiff was an employee of H&H at all relevant times.

119.    Deny the allegations contained in paragraph 119 of the Complaint.

120.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 of the Complaint.

121.    The allegations contained in paragraph 121 of the Complaint state legal conclusions to which no response is necessary.

122.    In response to paragraph 122 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 121 as if set forth at length herein.

123.    Deny the allegations contained in paragraph 123 of the Complaint.

124.    Deny the allegations contained in paragraph 124 of the Complaint.

125.    Deny the allegations contained in paragraph 125 of the Complaint.

126.    Deny the allegations contained in paragraph 126 of the Complaint.

127.    Deny the allegations contained in paragraph 127 of the Complaint, except admit that Plaintiff was entitled to elect a lump sum payment under the January 1998 SERP.

128.    Deny the allegations contained in paragraph 128 of the Complaint.

129.    Deny the allegations contained in paragraph 129 of the Complaint.

130.    Deny the allegations contained in paragraph 130 of the Complaint, except admit that Plaintiff made a demand for benefits on or about April 26, 2006.

131.    Deny the allegations contained in paragraph 131 of the Complaint, except admit that H&H responded to Plaintiff's claims on or about September 27, 2006, and refer the Court to the letter for its complete contents.

132.    Deny the allegations contained in paragraph 132 of the Complaint, except admit that Plaintiff appealed the Claim Administrator's decision on or about December 11, 2006.

133.    Deny the allegations contained in paragraph 133 of the Complaint, except admit that Plaintiff's appeal was denied on or about February 8, 2007.

134.    Deny the allegations contained in paragraph 134 of the Complaint.

135.    Deny the allegations contained in paragraph 135 of the Complaint.

136.    Deny the allegations contained in paragraph 136 of the Complaint.

137.    Deny the allegations contained in paragraph 137 of the Complaint.

138.    In response to paragraph 138 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 137 as if set forth at length herein.

139.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 139 of the Complaint.

140.    Deny the allegations contained in paragraph 140 of the Complaint, except admit the Life Insurance Program is a welfare benefit plan under ERISA §3(1).

141.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 141 of the Complaint.

142.    Deny the allegations contained in paragraph 142 of the Complaint as they prepaid for the Life Insurance Program.

143.    Deny the allegations contained in paragraph 143 of the Complaint.

144.    Deny the allegations contained in paragraph 144 of the Complaint, except admit that Plaintiff made a demand for benefits on April 26, 2006.

145.    Admit the allegations contained in paragraph 145 of the Complaint.

146.    Deny the allegations contained in paragraph 146 of the Complaint.

147.    Deny the allegations contained in paragraph 147 of the Complaint, and refer the Court to the September 27, 2006 letter for its complete contents.

148.    Deny the allegations contained in paragraph 148 of the Complaint.

149.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 149 of the Complaint.

150.    Deny the allegations contained in paragraph 150 of the Complaint.

151.    Deny the allegations contained in paragraph 151 of the Complaint.

152.    In response to paragraph 152 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 151 as if set forth at length herein.

153.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 153 of the Complaint.

154.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 154 of the Complaint.

155.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 155 of the Complaint.

156.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 156 of the Complaint.

157.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 157 of the Complaint.

158.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 158 of the Complaint.

159.    Deny the allegations contained in paragraph 159 of the Complaint, and refer the Court to the September 27, 2006 letter for its complete contents.

160.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 160 of the Complaint.

161.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 161 of the Complaint.

162.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 162 of the Complaint.

163.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 163 of the Complaint.

164.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 164 of the Complaint.

165.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 165 of the Complaint.

166.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 166 of the Complaint.

167.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 167 of the Complaint.

168.    Deny the allegations contained in paragraph 168 of the Complaint.

169.    In response to paragraph 169 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 168 as if set forth at length herein.

170.    Deny the allegations contained in paragraph 170 of the Complaint.

171.    Deny the allegations contained in paragraph 171 of the Complaint, except admit that Plaintiff was employed by H&H at all relevant times and was receiving appropriate benefits as such.

172.    Deny the allegations contained in paragraph 172 of the Complaint, except admit that Plaintiff was employed by H&H.

173.    Deny the allegations contained in paragraph 173 of the Complaint.

174.    Deny the allegations contained in paragraph 174 of the Complaint.

175.    Deny the allegations contained in paragraph 175 of the Complaint.

176.    Deny the allegations contained in paragraph 176 of the Complaint.

177.    In response to paragraph 177 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 176 as if set forth at length herein.

178.    Deny the allegations contained in paragraph 178 of the Complaint, except admit that the statutes provide for awarding attorney's fees and costs in certain cases.

179.    Deny the allegations contained in paragraph 179 of the Complaint.

180.    In response to paragraph 180 of the Complaint, repeat and reiterate their responses to paragraphs 1 through 179 as if set forth at length herein.

181.    Deny the allegations contained in paragraph 181 of the Complaint.

182.    Deny the allegations contained in paragraph 182 of the Complaint.

183.    Deny the allegations contained in paragraph 183 of the Complaint.

184.    Deny the allegations contained in paragraph 184 of the Complaint.

185.    Deny the allegations contained in paragraph 185 of the Complaint.

186.    Deny the allegations contained in paragraph 186 of the Complaint.

<u>First Affirmative Defense</u>

The Complaint, and each Count thereof, fails to state a claim against Defendants upon which relief can be granted.

<u>Second Affirmative Defense</u>

Plaintiff's claims are barred because Defendants owed no duty to Plaintiff.

<u>Third Affirmative Defense</u>

Plaintiff's claims are barred because Defendants did not breach any duty it may have owed to Plaintiff.

<u>Fourth Affirmative Defense</u>

Plaintiff's claims are barred, in whole or in part, due to the doctrines of waiver, estoppel, and unclean hands.

17

<u>Fifth Affirmative Defense</u>

Defendants specifically reserve the right to file and assert any and all additional defenses in response to the Complaint, including any additional affirmative or special defenses, or any such other matters constituting an avoidance, which may subsequently come to the attention of Defendants, to the full extent permitted by law, including those asserted by any other defendant or that become available or apparent during discovery.

<u>Sixth Affirmative Defense</u>

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's own material breaches of contract.

<u>Seventh Affirmative Defense</u>

Plaintiff's claims are barred by the claims procedure established for review of determinations of benefits.

<u>Eighth Affirmative Defense</u>

Plaintiff's claims against the Life Insurance Program fail because Plaintiff never appealed the Claim Administrator's ruling.

**WHEREFORE**, Defendants respectfully request that this Court dismiss the Complaint in its entirety, together with such other and further relief as the Court may deem just and proper.

18

Dated: New York, New York
      March 7, 2008

                      OLSHAN GRUNDMAN FROME
                      ROSENZWEIG & WOLOSKY LLP

By:   /s/ Christine Wong
      Thomas J. Fleming, Esq. (TJF 4433)
      Christine W. Wong, Esq. (CWW 7683)
      *Attorneys for Defendants*
      Park Avenue Tower
      65 East 55th Street
      New York, New York 10022
      (212) 451-2300

19

Louis Klein
Claim Administrator
c/o Handy & Harman
555 Theodore Fremd Avenue
Rye, New York 10580


September 27, 2006


Mr. Dennis Kelly
c/o Leslie D. Corwin, Esq.
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166

     *Re*:   Claim for Benefits

Dear Mr. Kelly:

     I am the Claim Administrator for the Handy & Harman Supplemental Executive Retirement Plan (the "SERP") and for the Handy & Harman Executive Post Retirement Life Insurance Program (the "Life Insurance Program"). I was appointed by the Plan Administrator (the Compensation Committee of the Board of Handy & Harman) for each of these plans, pursuant to rules that each Plan adopted in June 2006. I have reviewed your claims under each of these Plans and my findings are set forth below. I based my conclusions upon my review of the documents on the annexed Exhibit B, all of which are available for your review and consideration, the reports of Margolin Winer & Evens LLP ("MWE") and Hal Lieberman, Esq. (both enclosed), as well as my interviews of Stuart Tabin, Robert Hynes and Robert LeBlanc. Here are my conclusions.

The SERP Benefit Claim


Background

     1.    From approximately 1992 through September 2005, Paul E. Dixon ("Dixon") was General Counsel to Handy & Harman ("H&H"), a New York corporation, based in Rye, New York. Dixon was a member of the New York Bar, admitted to practice in 1972.

     2.    From approximately 1998 to September 2005, Dennis Kelly served as Vice President, Controller or Chief Financial Officer for H&H, and held other positions in its accounting department before then.

     3.    At all times relevant, H&H maintained a Supplemental Executive Retirement Plan ("SERP") which provided retirement benefits for approximately seven members of its senior management. WHX Corp. ("WHX") acquired H&H in April 1998, at which time H&H became a wholly owned subsidiary of WHX.

514288-1

September 27, 2006
Page 2

4.     Effective January 1, 1998, the Board of H&H adopted a new SERP Plan, which was in place in April 1998 when WHX acquired H&H. The January 1, 1998 SERP provided in Section 7 that it could only be amended by action of the H&H Board.

5.     Dixon and Kelly were both beneficiaries of this SERP. Based on his compensation level and his years with the Company, Dixon was one of its largest beneficiaries from 1999 through 2003, and after 2003, the largest single beneficiary. This fact was known to Kelly.

Board Discussions Regarding a Revised or New SERP

6.     At a board meeting held October 30, 1998, the H&H Board reviewed the benefits available under three existing executive compensation plans and discussed possible changes to these plans. These plans were: (i) the Management Incentive Plan ("MIP Plan"); (ii) the Long-Term Incentive Plan ("LTIP Plan"); and (iii) the SERP. The minutes of the 10/30/98 meeting state:

> After discussion and agreement in concept with respect to these proposed Plans, it was agreed that the Management Incentive Pan, the Long-Term Incentive Plan and the SERP, including a bonus at the 100% level, would be referred for discussion and approval to the WHX Board of Directors.

7.     At a February 2, 1999 meeting, the Compensation Committee of the WHX Board reviewed and approved a new MIP Plan for 1999. The minutes of the February 2, 1999 meeting of the WHX Board's Compensation Committee state:

> At this point, Robert LeBlanc, the Chief Executive Officer of Handy & Harman ("H&H"), joined the meeting. Mr. LeBlanc reviewed with the Compensation Committee proposed bonuses to be paid to employees of Handy & Harman under H&H's 1998 Management Incentive Plan. He described in detail the operation of such plan and the methodology in determining bonus payments under such plan. Mr. LeBlanc also described the existing H&H Long Term Incentive Plan, and presented to the Compensation Committee payments proposed to be made under such plan. Mr. LeBlanc also described to the Compensation Committee, the new Management Incentive Plan being developed by the management of H&H and agreed to present a new Long Term Incentive Plan to the Compensation Committee at its next meeting. After a full discussion, upon motion duly made, seconded and unanimously carried

September 27, 2006
Page 3

> RESOLVED, that the Compensation
> Committee does hereby acknowledge and approve
> the methodology of bonus payments to be made by
> the management of H&H pursuant to the H&H
> 1998 Management Incentive Plan and the Long
> Term Incentive Plan; and it is further

> RESOLVED, that the Compensation
> Committee does hereby ratify and approve the
> adoption by H&H's Board of Directors of H&H's
> Management Incentive Plan for 1999 substantially
> in the form of the draft submitted to the
> Compensation Committee.

8.    At its August 4, 1999 meeting, the Compensation Committee of the WHX Board reviewed and approved a new LTIP Plan. The minutes of the meeting held on August 4, 1999, state:

> At this point, Robert LeBlanc, the Chief Executive Officer of
> Handy & Harman, and Paul Dixon, General Counsel of Handy &
> Harman, joined the meeting. Messrs. LeBlanc and Dixon reviewed
> for the Compensation Committee the Handy & Harmon Long-
> Term Incentive Plan, including its structure, potential awards and
> its goals.

> After a full discussion, upon motion duly made, seconded and
> unanimously carried, it was

> RESOLVED, that the Compensation Committee does hereby ratify
> the approval and implementation by the Board of Directors of
> Handy & Harman of the Handy & Harman Long-Term Incentive
> Plan.

9.    The only modifications to the SERP presented for discussion at any of the above meetings were whether (i) to increase the amount of the annual bonus to be included in the calculation from 25% to 100% and (ii) to implement a new SERP so that payments made under January 1, 1998 SERP (when WHX acquired H&H) would not be credited against the benefits of the participants. Neither of these modifications was ever adopted. Neither the WHX Board, the H&H Board, nor the WHX Compensation Committee was ever presented with any financial information regarding the costs of additional benefits under a new or revised SERP, or with drafts of any proposed plan changes.

10.    No discussion of any proposal for a new or revised SERP occurred at any subsequent meeting of the WHX or H&H Board or the WHX Compensation Committee.

3

September 27, 2006
Page 4

11.    Neither the WHX Board, the H&H Board, nor the WHX Compensation Committee ever approved a new or revised SERP, or was provided with information sufficient to do so.

Dixon's Preparation and Dissemination of a Revised SERP

12.    From 1999 through 2003, Dixon used his position as general counsel of H&H to direct the drafting of an alleged new SERP Plan and other alleged new benefit plan documents. Among other things, in 1999, Dixon instructed H&H's actuarial firm to prepare a draft plan document and in 2001 he retained outside attorneys who revised this draft and prepared related documents in a process that lasted until May 2003. The alleged new SERP Plan awarded Dixon and other executives significantly greater financial benefits than the existing SERP dated January 1, 1998.

13.    The drafts of the alleged new SERP generated between 1999 and 2003 used several dates, including "amended and restated as of June 1, 1999," and "amended and restated as of January 1, 2002." Because these years were after the 1998 acquisition by WHX, their appearance in the document would have been a red flag to WHX executives, including those on the H&H Board, that the document was a new plan. The alleged new SERP in its final form stated that it was "amended and restated as of August 1, 1998." Dixon apparently selected the "August 1, 1998" date arbitrarily, unrelated to any Board action or authorization.

14.    In 2003, Dixon signed the alleged new SERP plan "on behalf of Handy & Harman as of the date set forth above," i.e., August 1, 1998. On its face, the document appeared to have been generated at or about that date. At or about the same time, Dixon also signed a series of related plan documents on behalf of H&H, all dated August 1, 1998, but prepared in 2002 and 2003.

15.    Based on the written record, it is clear that Dennis Kelly actively collaborated with Dixon throughout the drafting process and was privy to the decision making that Dixon undertook in preparing the alleged new SERP. Kelly was aware that the dates on the SERP were bogus and that the document was signed in 2003.

16.    Kelly was also aware that the alleged new SERP imposed significant financial obligations upon H&H.

17.    It is my conclusion that the alleged new SERP plan dated August 1, 1998 is not a valid benefit plan and none of its alleged beneficiaries are entitled to its purported benefits. The SERP Plan dated January 1, 1998 is the valid Plan.

Kelly's Eligibility

18.    Kelly was born on March 11, 1952 and has not reached retirement age under the SERP. He is therefore not yet eligible for benefits.

514288-1

September 27, 2006
Page 5

Kelly's Role in Dixon's Misconduct

19.    In August 2003, in his capacity as general counsel for H&H, Dixon distributed to H&H senior management the alleged new SERP Plan along with a related benefit plan. The related benefit plan, a purported Life Insurance Program, was also signed by him in 2003 and created under his supervision that year. This related Plan was dated "effective August 1, 1998." The package sent by Dixon to other members of H&H senior management also included a "lump sum election" form. Under both the existing SERP and the alleged new SERP, this form had to be submitted prior to retirement in order to receive pension benefits in a lump sum. Dixon asked his fellow members of H&H senior management to return their election forms to him. His cover memo gave no indication that the accompanying Plan replaced an earlier plan, or that the August 1, 1998 date was chosen by Dixon although the plan was in fact prepared between 2001 and 2003.

20.    Kelly was a recipient of the package and did not disclose to any member of the H&H Board or to WHX the highly unusual circumstances surrounding the preparation and background of the plan, although he should surely have known that these events were contrary to customary corporate operations.

21.    The alleged new SERP plan, if effective, would have a material impact upon the finances of H&H. The alleged new SERP Plan also included many benefit changes beyond a change in the definition of salary to include 100% of bonus. These other changes, if effective, by themselves would have a material impact upon the finances of H&H, as well as WHX. In light of WHX's precarious financial condition, such changes would have been discussed by the Board in great detail.

22.    Dixon was the largest individual beneficiary of the alleged new SERP and the related documents that he signed in 2003 on behalf of H&H. In 2005, Dixon claimed entitlement to approximately $3.78 million in retirement benefits pursuant to the alleged new SERP and the related plan documents. Kelly too was a material beneficiary of the alleged new SERP, making a claim for approximately $3.6 million in benefits at the same time as Dixon. Under the January 1, 1998 SERP, Kelly would have been entitled to a fraction of this amount in retirement benefits, without giving credit to his earlier receipt of $96,287 under this plan.

23.    Kelly never disclosed to the Boards of H&H or WHX that work on a revised plan was underway between 1999 and 2003. Nor did he seek approval for the revised plan or for any changes to the existing SERP plan during those years, or later. At no time before 2005 did Kelly disclose to H&H's Board that the alleged new SERP dated as of August 1, 1998 was in fact generated largely between 2001 and 2003.

24.    From time to time between 1999 and 2004, H&H consulted with Dixon, as corporate counsel, regarding the amount of benefits due under the existing SERP. In connection with his legal advice, at no time did Dixon disclose to anyone on the H&H Board, or at WHX, any aspect of his work in creating the alleged new SERP, including without limitation, that (i) the salary computation for SERP benefits that included 100% of bonus varied from the written plan document dated January 1, 1998; (ii) he stood to gain a substantial amount from the

5

September 27, 2006
Page 6

application of this 100% bonus standard to his own retirement package; (iii) the alleged new SERP Plan dated August 1, 1998 was generated under his supervision between 2001-2003; or (iv) the August 1, 1998 date for the alleged new SERP was arbitrarily selected by him.

25.    From time to time between 1999 and 2004, H&H consulted with Dennis Kelly, as its Chief Financial Officer, regarding the amount of benefits due under the existing SERP. In connection with his advice to H&H, at no time did Kelly disclose to anyone on the H&H Board, or at WHX, any aspect of his work or that of Dixon in creating the alleged new SERP, including without limitation, that (i) the salary computation for SERP benefits that included 100% of bonus varied from the written plan document dated January 1, 1998; (ii) he (Kelly) stood to gain a substantial amount from the application of this 100% bonus standard to his own retirement package; (iii) the alleged new SERP Plan dated August 1, 1998 was generated between 2001-2003 with his collaboration; or (iv) the August 1, 1998 date for the alleged new SERP was arbitrarily selected by Dixon.

26.    The deception perpetrated by Dixon in connection with the alleged new SERP was accomplished with the active support of Dennis Kelly. Their efforts have caused H&H substantial loss, including payments to Messrs. Arnold Nance and Robert LeBlanc at levels inconsistent with the SERP dated January 1, 1998 and the payment of legal fees to Jacobs Persinger & Partners for their work in drafting the alleged new SERP.

27.    I understand from Court filings that Dixon and Kelly have taken the position that H&H's payments to Arnold Nance and Robert LeBlanc, as well as certain statements in the WHX proxy materials, demonstrate that the alleged new SERP is a valid plan. I find that this is mistaken for at least three reasons. First, the January 1, 1998 SERP provides that it can only be amended by action of the Board of H&H. None of the items to which Dixon and Kelly point constitutes a board action approving an amendment or a new plan. Second, each of the events occurred as a result of information obtained by H&H through Dixon or Dennis Kelly, without disclosure of the true facts concerning the alleged new SERP, or that calculations based on 100% of MIP bonus were inconsistent with the SERP Plan as written dated January 1, 1998. Third, the alleged new SERP contains material terms that go beyond the use of 100% MIP bonus in calculating benefits, including the addition of early retirement benefits, modifications to the change of control provision, and the inclusion of "gross up" provisions.

28.    A review of Dixon's expense account submissions from 2003-2005 indicates that he knowingly submitted invalid expense claims. All of these expenses were approved by Kelly. The last full year that Dixon's expenses were reviewed by Robert LeBlanc he charged $26,693.51 in the aggregate as business expenses including a total of $2,250.34 for meals. Under Dennis Kelly's review, he charged $70,620 in 2004, including $10,639 in meals. For the first 8 months of 2005, he charged $62,797, including $11,783 in meals.

29.    I find the evidence inconclusive as to whether Kelly was a faithless servant while employed by H&H. At this stage, I find that he is eligible for benefits in accordance with the SERP Plan, without prejudice to H&H's right to seek a court ruling that he was in fact a faithless servant for all or a portion of the years in question.

514288-1

September 27, 2006
Page 7

    30.     To the extent any benefits are paid to Kelly under the SERP, it is entitled to a credit in the amount of $96,2878 representing the amount paid to him under the SERP Plan in April 1998.

    31.     In addition, I find that under Section 11 of the SERP, Kelly is not eligible for the lump sum option offered by the SERP. Kelly received a lump sum payment of benefits under this Plan pursuant to Section 10 in April 1998 in connection with the WHX acquisition of H&H. The language of Section 11 of the Plan indicates that a participant who receives a lump sum payment under the plan through a "change in control" is not eligible for a second lump sum payment.

    32.     I have made the foregoing determination pursuant to Section 6 of the SERP. I have annexed as Exhibit A, a computation of your projected benefits prepared by our outside actuarial firm based upon these determinations.

### Further Proceedings

    You are entitled to appeal from this determination which appeal shall be reviewed by the entire Compensation Committee of H&H in its capacity as Plan Administrator. You are permitted to submit written comments, documents, and other information relating to your claim for benefits as well as any other information upon which you rely in contending that this determination is erroneous. Your submission shall constitute your appeal for this determination. Your appeal must be submitted no later than sixty days following receipt of this notification of an adverse benefit determination. You are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to your claim for benefits. I am enclosing with this letter copies of the documents referenced on the Schedule A.

    Pursuant to the rules adopted by the Plan Administrator, the Plan Administrator's review of any appeals shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. You will receive written or electronic notification of the determination of the appeal upon the earlier of (i) within five days after the next regular meeting of the Compensation Committee, provided the appeal is received at least thirty days before the meeting or (ii) sixty days after receipt of the appeal by the Plan Administrator, unless the Plan Administrator determines special circumstances requiring an extension of time for processing the appeal, which extension shall be no more than sixty days on notice to you. All communications with the Plan Administrator or the H&H shall be deemed valid upon delivery by hand, overnight courier or registered mail addressed to the SERP Plan Administrator, c/o Handy & Harman, 555 Theodore Fremd Avenue, Rye, New York 10580.

    Please be further advised that you have the right to bring a Civil Action under Section 502(a) of the Employees Retirement Income Securities Act ("ERISA"), 29 U.S.C. § 1132(a), following an adverse determination on review.

514288-1

September 27, 2006
Page 8

### The Life Insurance Program Benefit Claim

33.     Handy & Harman established an Executive Post Retirement Life Insurance Program, effective as of January 1, 1995. The Life Insurance Program provides that H&H, "through its Board of Directors, shall maintain at all times complete authority to terminate the program or amend or modify the provisions thereof anytime…." (Life Insurance Program ¶6)

34.     In connection with the preparation of the Plan documents for an alleged new SERP, Dixon directed outside counsel to prepare an alleged amendment to the Life Insurance Program, purportedly effective August 1, 1998. This document was apparently signed by Dixon in 2003.

35.     In addition, Dixon also directed outside counsel to prepare an alleged "Restated Executive Post Retirement Life Insurance Program," also purportedly effective as of August 1, 1998, which he signed in May 2003, purportedly on behalf of Handy & Harman as of "August 1, 1998." Neither of these alleged plans or amendments were approved by the Board of H&H. Accordingly, neither of these is valid.

36.     The alleged new Life Insurance Program was prepared pursuant to the same deceptive program as set forth above for the alleged new SERP and Dixon was also a significant beneficiary of the alleged new Life Insurance Program. Kelly participated in this deception in the same manner as he did with respect to as the alleged new SERP.

37.     Under Section 5 of the Life Insurance Program, the Company is obligated to transfer to Kelly its ownership rights in the post-retirement policy, provided that Kelly pays H&H an amount equal to the cash surrender value of the post-retirement policy. The cash surrender value of the policy (#6041212) is now $132,820.05. Accordingly, upon payment of this amount H&H will transfer to Kelly the post retirement policy.

### Further Proceedings

You are entitled to appeal from this determination which appeal shall be reviewed by the entire Compensation Committee of H&H in its capacity as Plan Administrator. You are permitted to submit written comments, documents, and other information relating to your claim for benefits as well as any other information upon which you rely in contending that this determination is erroneous. Your submission shall constitute your appeal for this determination. Your appeal must be submitted no later than sixty days following receipt of this notification of an adverse benefit determination. You are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to your claim for benefits. I am enclosing with this letter copies of the documents referenced on the Schedule A.

8

September 27, 2006
Page 9

Pursuant to the rules adopted by the Plan Administrator, the Plan Administrator's review of any appeals shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. You will receive written or electronic notification of the determination of the appeal upon the earlier of (i) within five days after the next regular meeting of the Compensation Committee, provided the appeal is received at least thirty days before the meeting or (ii) sixty days after receipt of the appeal by the Plan Administrator, unless the Plan Administrator determines a special circumstances requiring an extension of time for processing the appeal, which extension shall be no more than sixty days on notice to you. All communications with the Plan Administrator or the H&H shall be deemed valid upon delivery by hand, overnight courier or registered mail addressed to the Life Insurance Plan Administrator, c/o Handy & Harman, 555 Theodore Fremd Avenue, Rye, New York 10580, Attn: Pension Benefits Coordinator.

Please be further advised that you have the right to bring a Civil Action under Section 502(a) of the Employees Retirement Income Securities Act ("ERISA"), 29 U.S.C. § 1132(a), following an adverse determination on review.

Sincerely,

Louis Klein

cc:    *Compensation Committee of the Board of Handy & Harman*

514288-1

## HANDY & HARMAN SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN

Handy & Harman Salaried

### Participant Data

| | |
|---|---|
| First Name | DENNIS C |
| Last Name | KELLY |
| Social Security Number | O95-44-1839 |
| Date of Birth | March 11, 1952 |
| Date of Hire | September 3, 1985 |
| Spouse's Date of Birth | N/A |
| Date of Termination | September 15, 2005 |
| Normal/Postponed Retirement Date | April 1, 2017 |
| Benefit Commencement Date (BCD) | April 1, 2017 |

Earnings History

| Year | # Months | Gross Earnings | Limited Earnings |
|---|---|---|---|
| 2005 | 12 | $ 247,000 | $ 210,000 |
| 2004 | 12 | 244,500 | 205,000 |
| 2003 | 12 | 235,000 | 200,000 |
| 2002 | 12 | 203,000 | 198,000 |
| 2001 | 12 | 208,750 | 190,000 |
| 2000 | 12 | 215,750 | 182,000 |
| 1999 | 12 | 202,500 | 175,000 |
| 1998 | 12 | 139,578 | 127,000 |
| Total | 96 | $ 1,696,078 | $ 1,487,000 |

### Benefit Calculation

| | SERP Plan Doc 3(a) | SERP Plan Doc 3(b) |
|---|---|---|
| 1) Average Monthly Basic Pay: | $ 17,667.48 | $ 15,489.58 |
| 2) Vesting Service at Termination Date: | 20.083 | 20.083 |
| 3) Benefit Service at Termination Date: | 20.083 | 20.083 |
| 4) Participant's Expected Benefit Service at Normal Retirement Date: | 31.583 | 31.583 |
| 5) Accrued Benefit Calculation under the Salary-Related Formula | | |
| (i) 38.75% of Average Monthly Basic Pay | $ 6,846.15 | $ 6,002.21 |
| (ii) 11.25% of Average Monthly Basic Pay in excess of $833.33 | 1,893.84 | 1,648.83 |
| (iii) Minimum (25, Expected BS at NRD)/25 | 1.0000 | 1.0000 |
| (iv) Participant's Expected Monthly Normal Retirement Pension {(i) + (ii)} times (iii) | 8,739.99 | 7,651.04 |
| (v) Participant's Service Ratio {(3) / Max[(3),(4)]} | 0.6359 | 0.6359 |
| (vi) Accrued Monthly Pension {(iv) times (v)} | $ 5,557.62 | $ 4,865.17 |
| 6) Accrued Monthly Pension [SERP Plan Doc 3(a)-(SERP Plan Doc 3(b)]: | | $ 692.45 |
| 7) April 1998 SERP Payment With Interest | | 134,385.08 |
| 8) Annuitized Value of April 1998 SERP Payment | | 1,336.55 |
| 9) Final Accrued Monthly Pension {Max[0,(6) - (8)]} | | $ 0.00 |
| 10) Net Monthly Benefit Payable at Benefit Commencement Date: | | |
| --Life Annuity Basis | | $ 0.00 |
| --10 C&C Basis | | 0.00 |
| --50% J&S Basis | | N/A |
| --100% J&S Basis | | N/A |

### Assumptions and Notes

a) Average earnings prior to 1998 assumed to be less than the average monthly basic pay derived on a career average basis since 1998

b) The value of the April 1998 SERP payment of $96,287 was provided by Handy & Harman and has been increased with interest at 4% and annuitized at 4% and 1994 GAR Unisex mortality as an offset to the value of the SERP benefit at termination.

c) Present value of accrued monthly pension is based on 1994 GAR Unisex mortality and a 4.00% interest rate.

d) Participant is not entitled to receive the optional lump sum payment described in Section 10 of the January 1, 1998 SERP document due to his receipt of a prior lump sum, per the instruction of the plan's claim administrator.

e) Retirement age is assumed to be 65. The value of the SERP benefit will change depending on when benefits are commenced.

f) Gross earnings include 25% of MIP

Exhibit B

| BINDER I | |
|---|---|
| **TAB** | **DESCRIPTION** |
| A | 4/26/06 Demand Ltr. |
| B | Dixon Settlement and Release 3/31/98 |
| C | Kelly Settlement and Release 3/31/98 |
| D | Dixon Employment Agreement |
| E | Kelly Employment Agreement |
| F | SERP 1/1/98 |
| G | SERP 8/1/98 (Disputed) |
| H | Post Retirement Life Ins. Program 2/1/95 |
| I | Amendment to Post Retirement Life Ins. Program 8/1/98 (Disputed) |
| J | Amended and Restated Post Retirement Life Ins. Program 8/1/98 (Disputed) |

| BINDER II | |
|---|---|
| **TAB** | **DESCRIPTION** |
| 1 | SERP (as amended and restated as of January 1, 1998) |
| 2 | June 21, 1999 letter to Al Wheeler from Dennis Kelly re: increases in insurance coverage for pre- and post-retirement benefits |
| 3 | Draft of SERP (as amended and restated as of June 1, 1999) *various dates written in and crossed out as effective date |
| 4 | Dec. 9, 1999 letter to Paul Dixon from Watson Wyatt re: draft of SERP |
| 5 | June 18, 2001 memo from Dennis Kelly to Watson Wyatt re: Nance's accrued and lump sum benefits and attaching excerpts of SERP |
| 6 | June 20, 2001 letter from Watson Wyatt to Kelly re: Nance's calculations |
| 7 | Aug. 22, 2001 letter to Dixon and Kelly from Wheeler attaching draft of SERP |
| 8 | Redlined version of draft of SERP attached in tab 7 |

| 9 | Dec. 6, 2001 note from Kelly to Wheeler re: definition of term "paid" in SERP |
| 10 | Dec. 11, 2001 letter to Dixon and Kelly from Wheeler re: revised draft of SERP |
| 11 | Draft of SERP (as amended and restated as of Jan. 2, 2002) |
| 12 | Redlined version of SERP attached in tab 11 |
| 13 | Fax from Wheeler to Dixon and Kelly enclosing memo on SERP |
| 14 | Oct. 31, 2002 letter to Dixon and Kelly from Wheeler attaching revised SERP with effective date of August 1998 |
| 15 | Nov. 25, 2002 memo from Kelly to Anthony Buonato (Watson Wyatt) attaching draft of SERP |
| 16 | Feb. 13, 2003 letter from Wheeler to Dixon and Kelly re: effective date of SERP |
| 17 | May 19, 2003 letter from Wheeler to Dixon and Kelly attaching drafts of Trust Agreements with respect to SERP and MIP, draft of post retired life insurance program, and draft of MIP deferral procedures |
| 18 | May 23, 2003 letter from Wheeler to Dixon and Kelly re: Trust Agreement with respect to SERP and post-retirement life insurance program |
| 19 | Aug. 28, 2003 memo from Dixon attaching SERP (as amended and restated as of Aug. 1, 1998), restated executive post-retirement life insurance program, and SERP election form to all eligible participants |
| 20 | Sept. 30, 2003 letter from Dixon to Wheeler attaching all signed benefit election forms for SERP |
| 21 | March 1, 2005 letter from Dixon to Wheeler re: SERP provisions |
| 22 | March 10, 2005 letter from Dixon to Wheeler clarifying March 1, 2005 letter |

| BINDER III | |
| --- | --- |
| **TAB** | **DESCRIPTION** |
| A | E-mail from D. Kelly to Hynes et al. dated 3/2/05, with H&H SERP Plan calculations. |
| B | Draft memos re: H&H SERP Plan Differences.<br>Doc. 344 with N. Trangucci interlineations.<br>Doc. 341 with S. Tabin interlineations. |
| C | E-mail from D. Kelly to A. Wheeler, dated 5/20/05, with SERP calculations summary. |

2

| D | E-mail from D. Kelly to S. Tabin, dated 5/25/05, with H&H SERP and Life Insurance calculations. |
|---|---|
| E | Comparison of SERP scenarios by Towers Perrin. |
| F | Comparison of SERP scenarios by Peter Marciniak. |

| BINDER IV | |
|---|---|
| **TAB** | **DESCRIPTION** |
| 1 | Excerpts from WHX's Schedule 14A Proxy Statements |
| 2 | February 28, 2002 letter from Dennis Kelly to Arnold Nance |
| 3 | Unanimous written consent of H&H Board, effective as of April 3, 2003 |

| BINDER V | | |
|---|---|---|
| **TAB** | **DATE** | **DESCRIPTION** |
| A | 8/5/98 | Minutes of Regular Meeting of WHX Compensation Committee |
| B | 8/5/98 | Meeting Agenda for WHX Compensation Committee Meeting 8/5/98 |
| C | 8/5/98 | Handwritten Notes from WHX Compensation Committee Meeting |
| D | 10/30/98 | Minutes of Meeting of Board of Directors of Handy & Harman |
| E | 11/5/98 | Minutes of Regular Meeting of WHX Compensation Committee |
| F | 11/5/98 | Meeting Agenda for WHX Compensation Committee Meeting 11/5/98 |
| G | 11/5/98 | Handwritten Notes from WHX Compensation Committee Meeting 11/5/98 |
| H | 2/2/99 | Minutes of Regular Meeting of WHX Compensation Committee |
| I | 2/2/99 | Meeting Agenda for WHX Compensation Committee Meeting 2/2/99 |
| J | 5/3/99 | Meeting Agenda for WHX Compensation Committee Meeting 5/3/99 |
| K | 8/4/99 | Minutes of Regular Meeting of WHX Compensation Committee |
| L | 8/4/99 | Meeting Agenda for WHX Compensation Committee Meeting 8/4/99 |

515084-1

Garen W. Smith
Plan Administrator
c/o Handy & Harman
555 Theodore Fremd Avenue
Rye, New York 10580

February 8, 2007

**_BY HAND AND FEDERAL EXPRESS_**

Mr. Paul E. Dixon
Mr. Dennis Kelly
c/o Leslie D. Corwin, Esq.
Greenberg Traurig, LLP
Met Life Building
200 Park Avenue
New York, NY 10166

*Re:*   Appeal on Claim for Benefits

Dear Messrs. Dixon and Kelly:

I am writing on behalf of the Plan Administrator for the Handy & Harman Supplemental Executive Retirement Plan (the "SERP") and the Handy & Harman Executive Post Retirement Program (the "Life Insurance Program"). The Plan Administrator is comprised of the members of the Compensation Committee of the Board of Handy & Harman ("H&H").

Please be advised that the Plan Administrator has reviewed the contents of your letter dated December 11, 2006, which sets forth your disagreements with the initial decision by the Claim Administrator transmitted to each of you by letter dated September 27, 2006. It has also reviewed the Claim Administrator's letters and where appropriate, the materials referenced in them. The Plan Administrator convened in person on February 6 and then again, telephonically, on February 8, 2007. The Plan Administrator has determined that your appeals are without merit. The rationale for the Plan Administrator's decision is set forth, in large part, in the letters dated September 27, 2006 by the Claim Administrator, which we find well reasoned, thorough, and persuasive. I have annexed as Appendix A, a response to certain factual contentions in your appeal letter.

The principal and recurring flaw in your letter is your contention that the alleged August 1998 SERP was essentially identical to the SERP dated January 1998, except for the change to the definition of "pay" to include 100% of Management Incentive Program Bonus ("MIP"). In fact, the alleged August 1998 SERP contained other material changes, including, without limitation, modification to the change in control provisions and altering the relationship between the SERP and the H&H Pension Plan. The latter was achieved by the addition of language exempting the alleged SERP from the Economic Growth and Tax Reconciliation Act of 2001

Mr. Paul E. Dixon
Mr. Dennis Kelly
Page 2
February 8, 2007

("EGTRA") and providing that the liberalized definition of "pay" permitted under EGTRA would not apply in the SERP calculation, although plan beneficiaries might obtain these benefits from the H&H Pension Plan. The evidentiary record is compelling that these highly material changes were never presented to the Board of H&H or that of WHX Corp., its parent company.

Your letter questions the opinion of Mr. Lieberman which accompanied the Claim Administrator's letters. Your commentary indicates a basic misunderstanding concerning Mr. Lieberman's role. He has not performed any factual investigation, but rather rendered an opinion based upon the assumptions set forth in paragraphs 1-19 of his letter. Because the Plan Administrator has concluded that these assumptions conform to the record in the case, we find that Mr. Lieberman's opinions have value. From your correspondence, it does not appear that you disagree with any of these assumptions, except perhaps Item 10.

Your letter requested evidence concerning Mr. Klein's appointment as Claim Administrator. I have enclosed document number stamped PA6036 through PA6038, which address this concern.

Please be advised that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

In the event you disagree with the decision of the Plan Administrator, you have the right to bring a civil action under Section 502(a) of the Employee Retirement Income and Security Act, 29 U.S.C. § 1132(a).

Sincerely,

Garen W. Smith

### Appendix A

**I.    Claims Regarding Board Approval of the Alleged August 1998 SERP**

1.    PAGE 2:[*] "In or around April 1998 H&H was acquired by WHX Corp. ("WHX"). After the acquisition, the H&H Board, by Unanimous Written Consent appointed Messrs. Kelly and Dixon to serve on H&H's Administrative Committee, which was authorized to administer the Company's various pension plans. *See* 2190-91. Messrs. Dixon and Kelly were specifically asked by H&H's President, Robert LeBlanc, who was also subsequently a Member of the WHX Board, to update certain benefit and compensation plans to reflect changes resulting from the acquisition. Claimants' work with respect to the SERP, which was requested by the Company leadership, was specifically approved by Article X, Section 2 (d) of the H&H Amended and Restated Bylaws which provides, in relevant part, that:

> For the purpose of this Section 2, the Corporation shall be deemed to have requested a person to serve an employee benefit plan where the performance by such person of his duties to the Corporation also imposes duties on, or otherwise involves beneficiaries of the plan; … action taken or omitted by a person with respect to an employee benefit plan in the performance of such person's duties for a purpose reasonably believed by such person to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the Corporation.

Response:    The SERP dated January 1, 1998 ("the 1/1998 SERP") was in place in April 1998 when WHX acquired H&H. Neither Mr. LeBlanc's requests, nor the above language, empowered Mr. Dixon or Mr. Kelly to make changes to the 1/1998 SERP. By its express terms, the 1/1998 SERP could only be amended by the H&H Board of Directors. (Binder I, Ex. F ¶ 7)[**]

2.    PAGE 3: "In good faith, and certainly in the best interests of the Corporation, Messrs. Dixon and Kelly (who were following instructions), together with H&H's President, recommended changes to the previous SERP and presented the revisions to the H&H Board, which approved the changes, and in turn recommended that it be presented to the WHX Board. The changes were presented by Messrs. Dixon and LeBlanc to the appropriate Committees of the WHX Board in August and November 1998."

Response:    A revised SERP Plan was indeed reviewed by the H&H Board in October 1998, along with two other benefit plans. None of these plans was approved by the H&H Board.

---

[*]    Reference is to December 1, 2006 Letter from Les Corwin Esq.

[**]    Reference is to the binders accompanying the Letters of Louis Klein, Claim Administrator, dated September 27, 2006.

Rather, the Board minutes state:

> After discussion and agreement in concept and with respect to
> these proposed Plans, it was agreed that the Management Incentive
> Plan, the Long-Term Incentive Plan and the SERP, including a
> bonus at the 100% level, would be referred for discussion and
> approval to the WHX Board of Directors.

(Binder V, Ex. D)

The Management Incentive Plan ("MIP Plan") and the Long-Term Incentive Plan ("LTIP

Plan") were presented to WHX's Compensation Committee three months later, on February 2,

1999. The MIP Plan was approved by a resolution adopted at that meeting. (Binder V, Ex. H)

The final LTIP Plan was approved by a resolution adopted August 4, 1999. (*Id.*, Ex. K) Neither

the WHX Board Plan, nor its Compensation Committee, ever adopted a resolution approving an

amended SERP.

Messrs. Dixon and Kelly refer to WHX's Compensation Committee meetings in August

and November 1998. Presentations of some form were made at these meetings, but no approvals

were given. The August 1998 minutes recite:

> The next matter to come before the meeting was a discussion by
> Mr. LeBlanc of Handy & Harman's Long-Term Incentive Plan.
> Mr. LeBlanc described the current Long-Term Incentive Plan and
> the existing compensation program in place at Handy & Harman.
> Mr. LeBlanc proposed to the Compensation Committee that the
> Handy & Harman Long-Term Incentive Plan be terminated at the
> end of 1998 and a new plan started. Mr. LeBlanc also discussed
> Handy & Harman's SERP with the Compensation Committee and
> agree to report back to the Compensation Committee on further
> proposals regarding the SERP. After a full discussion, upon
> motion duly made, seconded and unanimously carried, it was

> RESOLVED, that the Compensation Committee hereby
> approves the termination of Handy & Harman's Long-Term
> Incentive Plan at the end of fiscal 1998, such termination to be
> directed by management upon consultation with Company counsel,
> and directs management to commence development of a
> replacement plan.

2

(Binder V, Ex. A)

The November 1998 WHX Compensation Committee minutes state:

> The next matter to come before the meeting was a discussion by
> Messrs. Dixon and LeBlanc regarding Handy & Harman's
> ("H&H") compensation and incentive plans.  Mr. Dixon reviewed
> for the Compensation Committee the structure of H&H's existing
> incentive and compensation plans.  He further described the
> proposed changes to such plans and new plans which the
> management of H&H believed to be in the best interests of H&H.
> The members of the Compensation Committee questioned Messrs.
> LeBlanc and Dixon regarding their proposals, and Messrs. LeBlanc
> and Dixon agreed to finalize the proposed plans for final approval
> at the next Compensation Committee meeting.

(Binder V, Ex. E)

For both the MIP Plan and the LTIP Plan, the WHX Committee received presentations

detailing the financial impact of the proposed plans.  (Binder V, Ex. I)  No such information was

provided regarding a revised SERP.  There is no evidence of any proposed change to the SERP

beyond increasing the definition of "pay" to include 100% of MIP, rather than 25% of MIP, and

possibly expanding its coverage beyond H&H senior management.  The handwritten notes of an

attendee at the November 5, 1998 meeting state as follows regarding a proposed new SERP:

> "Rebuild SERP
>
> - Currently SERP just exec officers
>
>   - rebuild for all officers & expand to other senior ees.
>
>   - initial participants
>
>     | Nance | Kuhns |
>     |-------|-------|
>     | Dixon | Brooks |
>     | Kelly | LeBlanc" |

(Binder V, Ex. G)  There is no further record of what the new SERP might have included, and no

record that such a plan was ever adopted.

3

There is no evidence that any proposed amended SERP was ever presented to the WHX

Board or Compensation Committee after November 1998. Neither Dixon nor Kelly claim that

approval was given at any later meeting, or that any specific elements of the alleged new SERP

were ever presented, apart from defining "pay" to include 100% MIP.

      3.      PAGE 4: "Soon after the Merger with WHX, H&H and WHX both expressed
their clear intention to amend the H&H SERP. Minutes of an August 5, 1998 meeting of the
WHX Compensation Committee reflect that Mr. LeBlanc made a presentation to that Committee
regarding various H&H employee benefit plans, including the LTIP and the SERP, and that Mr.
LeBlanc "agree [d] to report back to the Compensation Committee on further proposals
regarding the SERP." Klein Binder V Exh. A; 2526-29; 2565-68, 2575. In attendance at that
meeting were Messrs. Davidow, Olshan, LaBow, LeBlanc, Dixon, Tabin, and Fineman *inter
alia*. Mr. Kelly was not present. Notably, certain handwritten notes (whose author was not
identified) demonstrate that the Committee understood and discussed "Rebuilding [the] SERP."
Klein Binder V Exh. C. Significantly, the notes show that the Committee understood that
"Rebuilding SERP — impacts 6 people — Sr. officers." Thus, there was full disclosure both of
the meaning and impact of the SERP, as well as disclosure that it would specifically affect six
Senior Officers, including Messrs. Dixon and Kelly."

      Response:     The minutes are accurately quoted. At most, the minutes reflect

consideration of an amended SERP; there are no minutes or other record "express[ing] [a] clear

intention to amend the SERP."

No approval was given by WHX in August 1998, as the possibility of amending the

SERP was the subject of further discussion approximately three months later by the H&H Board

and in November 1998 by the WHX Compensation Committee. There is no evidence of any

presentation of the financial impact of any changes to the 1/1998 SERP, and the notes of the

November 5, 1998 meeting of the WHX Compensation Committee indicate that a broader plan

was then under review, without any discussion of financial changes except for using 100% of

MIP in the definition of "pay."

It is significant that the alleged "August 1998 SERP" disseminated in 2003 by Dixon and

Kelly contains several items that were never presented to the WHX Board, its Compensation

Committee or the H&H Board and which have material financial consequences. (*See* Binder III, Ex. B) These include:

(i)    Healthcare & disability insurance premiums are both included as "pay." (Binder I, Ex. G ¶4(b))

(ii)    The increased ceilings adopted by the Economic Growth and Tax Reconciliation Act of 2001 ("EGTRA") for the WHX Pension Plan are *excluded* from the offset computation in calculating the SERP payment. As a result approximately $30,000 to $40,000 in compensation would be counted twice, annually after 2001. (*Id.* ¶5(b))

(iii)    A change of control was added that (i) occurs upon a change at the WHX level, and (ii) adjusts the present value computation to assume full pension benefits as if one retired as of the age of 55 (instead of 60) and fixes the interest rate under the WHX Pension Plan at 5.1%, and under the SERP at 4.1%. (*Id.* ¶ 17)

(iv)    An early retirement benefit is added at age 55. (*Id.* ¶ 6)

(v)    A supplemental disability benefit is added. (*Id.* ¶ 8)

(vi)    A deferred vested pension is added at age 55. (*Id.* ¶ 9)

No "change of control" benefit had previously been granted to any H&H executive. Both Dixon and Kelly signed Employment Agreements in April 1998, without any change of control provisions.

4.    PAGE 5: "Minutes of the October 30, 1998 H&H Board meeting reflect that LeBlanc and Dixon reviewed with the H&H Board various employee benefit plans, including the SERP. According to the minutes, the H&H Board "agree [d] in concept" with the proposed amendments to the SERP. The minutes state, "After discussion and agreement in concept with respect to these proposed Plans, it was agreed that the Management Incentive Plan, the Long-Term Incentive Plan and the SERP, including a bonus at the 100% level, would be referred for discussion <u>and approval</u> to the WHX Board of Directors." Klein Binder V Exh. D, 2516-18. The entire H&H Board (inclusive of the Compensation Committee) was present at this meeting, as was Mr. Dixon. Mr. Kelly was not present[.] *Id.*"

<u>Response:</u>    The letter accurately quotes the H&H minutes. There is no factual basis

for the suggestion that the reference to the WHX Board for "discussion and approval" constitutes approval by the WHX Board. The minutes merely indicate that the Board of H&H was sufficiently satisfied with the proposal to present it to WHX's Board. Kelly and Dixon offer no evidence that any components of alleged August 1998 SERP were considered, other than changing the definition of "pay" to include 100% MIP.

5.      PAGE 6: "The SERP and all of its terms were also disclosed to WHX. Minutes of a WHX Compensation Committee Meeting held on November 5, 1998, reflect that Messrs. LeBlanc and Dixon reviewed H&H "compensation and incentive plans" with the WHX Compensation Committee and that Dixon described proposed changes to existing incentive and compensation plans and new plans "which the management of H&H believed to be in the best interests of H&H." Klein Binder V Exh. E, 2519-24, 2569-71. After questioning from the WHX Compensation Committee, LeBlanc and Dixon "agreed to finalize the proposed plans for final approval at the next Compensation Committee Meeting." Significantly, there is no rule requiring WHX to also approve the SERP, which had already been sanctioned by the H&H Board.

Similarly, the handwritten notes of this meeting show that the discussion concerned 'rebuilding comp plan at H+H' with three steps, including 'SERP' with the goal of 'building LT continuity.' Klein Binder V Exh. G. A change in the plan for the purposes of addressing a change in control was clearly contemplated in this November 1998 meeting (which was clearly after the April 1998 Merger). The amendments resulting in the August 1998 SERP were clearly discussed at length. The notes state, 'Rebuild SERP,' and notes that the initial participants include Messrs. Nance, Dixon, Kelly and LeBlanc."

Response:      The minutes of the November 5, 1998 WHX Compensation Committee indeed state that the H&H representatives "agreed to finalize the proposed plans for final approval at the next Compensation Committee meeting." The "proposed plans" are described generically as "H&H compensation and incentive plans." This apparently included the LTIP Plan, the MIP Plan and possibly the SERP. The latter two plans were presented for approval at subsequent meetings of the Compensation Committee. No proposed amended SERP was ever presented. The only change mentioned in the minutes is using a 100% MIP in the definition of "pay"; the alleged August 1998 SERP contains many other features, including opting out of EGTRA, a statute that was not enacted into law until 2001.

6

The statement that the "SERP and all of its terms were [] disclosed to WHX" is not true. The alleged August 1998 SERP contains many features which did not appear until drafts were created in 2001 and 2002. Dixon and Kelly point to no evidence that there was any discussion of a change to the SERP "for the purposes of addressing a change in control." All members of senior management of H&H had recently signed Employment Agreements, none of which contained any change in control provision. (*See* Binder I, Exs. D & E)

Although the 1/1998 SERP provided that it could be amended by the H&H Board, the minutes of the H&H Board meeting in October 1998 make clear that it deferred to the WHX Compensation Committee for approval of any changes. WHX was the sole shareholder of H&H; accordingly, it was appropriate for its Board to set compensation for senior management at a major subsidiary. The minutes of the WHX Compensation Committee make clear that it had responsibility for compensation matters involving H&H senior management.

6.    PAGE 3: "Although Messrs. Dixon and Kelly did not partake in ratifying the revision, in fact H&H and WHX began using the revised Plan openly and publicly for several years."

Response:    This statement is inaccurate to the extent that it refers to the alleged plan dated August 1998 as the "revised plan." Certain features of the alleged SERP were indeed in use before 2003, although all such use is directly attributable to Dixon and/or Kelly. 100% MIP was used as "pay" to compute SERP payouts to Mr. Nance in 2001 and Mr. LeBlanc in 2003. In each instance, Dixon and/or Kelly were responsible for H&H's computation, working with the actuarial firm, Watson Wyatt. The WHX proxy statement also states that H&H executives had a SERP that was based on 100% MIP. WHX relied upon Dixon and Kelly for this disclosure. The disclosure in the proxy concerning other aspects of the SERP conforms to the 1/1998 SERP, not the alleged August 1998 SERP. (*See* pages 14-15 below)

7

7.    PAGE 4: "Notably, the H&H Minute Book contained in the produced folder labeled "Handy & Harman Board of Directors Minutes April 10, 1998 Forward," (2189) contains a complete copy of the August 1998 SERP, with calculations thereunder (2310-27), and the February 26, 2003 letter of Anthony Buonato of Watson Wyatt to Dennis Kelly, explaining the payment made to Robert LeBlanc upon his departure, and attaches spreadsheets showing the calculations. (2334-2340). This is evidence that the Officers and Directors of the Company knew of the August 1998 SERP and its terms.

Response:    It is unclear whether the foregoing materials are included in the H&H

minute book. A separate copy of H&H minutes sent by Mr. Dixon to Stewart Tabin in early

2005 does not contain this material. In any event, there is no evidence that any member of the

H&H Board was advised that the alleged August 1998 SERP was drafted from 2000 to 2003, or

of its significant differences from the 1/1998 SERP.

8.    PAGE 4: "Mr. LeBlanc and Claimants, with the assistance of outside counsel, Alfred Wheeler, Esq. of Jacobs, Persinger & Parker, drafted the Amendment which resulted in the August 1998 SERP. Soon after the draft was completed, the August 1998 SERP Amendment began to be presented, both formally and informally, to the Board Members and Committees of WHX and H&H."

Response:    The documentary record establishes that Messrs. Dixon and Kelly, along

with the assistance of Alfred Wheeler, worked on a revised SERP plan from late 1999 through

2003, which culminated in the alleged August 1998 SERP, disseminated in August 2003. Mr.

Wheeler was outside counsel who worked under the direction of Mr. Dixon. There is no record

of his contact with any other H&H executive regarding the alleged revised SERP except for Mr.

Kelly. There is no documentary evidence that Mr. LeBlanc participated. Mr. LeBlanc's role, if

any, would not make the document a proper plan. Under the 1/1998 SERP, only the H&H Board

had the power to amend. The alleged August 1998 SERP was disseminated by letter dated

August 28, 2003 to plan participants and others. Kelly and Dixon have not identified any

communications to the Board of H&H or WHX or to any of their directors providing an

explanation about the recent origin of the document or the fact that Messrs. Dixon and Kelly

made numerous changes, independent of board review and approval.

8

9.      PAGE 6: "By letter dated June 21, 1999, Mr. Kelly stated to Alfred Wheeler, Esq., H&H's outside counsel and the Trustee of the H&H SERP Trust, that H&H 'increased the level of insurance coverage for its executives who are participants in the SERP Plan. Insurance Coverage for pre-retirement benefits has increased from the 4x's salary to 7x's salary and post retirement benefits has increased from 2x's to 3 1/2 x's salary.' Klein Binder II Exh. 2."

Response:      By letter dated June 21, 1999, Mr. Kelly indeed advised Mr. Wheeler that

H&H had increased the level of life insurance coverage for its senior executives. In 1999, H&H

purchased policies covering pre-retirement and post-retirement life insurance benefits at 7x and

3.5x salaries, an increase from 4x and 2x salaries, respectively.

10.      PAGE 6: "The August 1998 SERP was indeed openly disclosed and used. For example by Memorandum dated November 25, 2002, Mr. Kelly sent a copy of the SERP to Mr. Buonato of Watson Wyatt & Company, a human capital and financial management consulting firm ("Watson Wyatt"), including change in control calculations." Klein Binder II Exh. 15.

Response:      The statement that the "August 1998 SERP was indeed openly disclosed

and used" is disingenuous. The alleged SERP was not disseminated until August 2003 and its

drafting was not completed until earlier in 2003. Mr. Kelly's letter to Mr. Bounato of Watson

Wyatt hardly establishes that the SERP was "openly disclosed and used." The document that

was sent to him was an unsigned draft. There is no evidence that Mr. Kelly disclosed to any

members of senior management that the change in control calculations were based upon a

recently crafted SERP plan, with numerous assumptions and provisions apart from using 100%

MIP to calculate pay, or that the new SERP included a change in control at the WHX level.

11.      PAGE 7: "By letter dated February 13, 2003, Alfred Wheeler, Esq., outside counsel to H&H and Trustee of the SERP Trust, sent Messrs. Dixon and Kelly a letter enclosing the SERP Plan with the August 1, 1998 Effective Date included. Wheeler further explained the provisions of the SERP by letter dated May 19, 2003 and May 23, 2003. Klein Binder II Exhs. 16-18."

Response:      Mr. Wheeler in fact sent these letters. They were addressed solely to

Dixon and Kelly. Mr. Wheeler worked at their direction, so his drafting of a new SERP was not

done independently of their activities. The February 13, 2003 letter includes a draft of the

9

alleged August 1998 SERP bearing the date "August 1, 1998," a change from the earlier version, which was dated "as of January 1, 2002". Wheeler's February 13, 2003 letter contains a six page discussion of Plan changes and issues, all varying from the earlier draft. Kelly and Dixon do not claim that any of this was ever presented to the H&H or WHX Boards.

12.    PAGE 7: "On or about August 28, 2003, Dixon distributed a copy of the August 1998 SERP, the Post-Retirement Life Insurance Program, and a SERP Benefit Election Form, together, to Executives, including Dan Murphy, Mario Arena, Tom Brouillard, Pete Marciniak and Bob Hynes. Thus, each and every one of these executives had full and fair opportunity to read and review this document which was presented in its final form to them, and each had full and fair opportunity to either discuss it in a H&H or WHX Board meeting, or with Alfred Wheeler, Esq. Klein Binder II Exh. 19. HH 000865-89. Each of these executives, as well as Messrs. Dixon and Kelly and Robert LeBlanc, signed a SERP Election Form. Klein Binder II Exh. 20; 0008-48; HH 781-88."

Response:    The alleged August 1998 SERP, along with other benefit materials, were first disseminated to H&H executives on August 28, 2003. While each recipient may have had an opportunity to read and review the document, and an opportunity to discuss it with H&H or WHX directors, there is no evidence that the recipients were advised that they were recently created. Dixon and Kelly do not claim to have told anyone that the "August 1998" date was affixed more than five years after-the-fact. That the individuals signed the SERP election form is of no significance, as this was the only way to be eligible for a lump sum payment.

13.    PAGE 7: "In the March 2, May 20, and May 25, 2005 emails of Dennis Kelly to WHX and H&H Executives, Mr. Kelly attached extensive spreadsheets demonstrating the calculations that would result from application of the SERP. Klein Binder III, Tabs A, C and D."

Response:    Mr. Kelly indeed sent e-mails on these dates to Stewart Tabin, Neil Arnold, Neale Trangucci and/or Bob Hynes. The large nature of the liabilities disclosed in the March 2 e-mail prompted Mr. Tabin's inquiry and ultimately led to an investigation concerning the circumstances surrounding the creation of the alleged plans. In March 2005, Messrs. Tabin and Trangucci drafted a letter to Plan participants advising them that the alleged August 1998 SERP was not in force. (Binder III, Ex. B) Thus, individuals who had served on the WHX and

10

H&H Boards in 1998 and 1999 concluded that the Plan from which these calculations were made was not valid. (*See* Binder III, Ex. B)

14.    PAGES 12-13: "Probably due to the busy nature of the business conducted by H&H, very many critical decisions were taken, and implemented by the Company, with the full agreement of the H&H Board, with no reflection in the Board or Committee Minutes. Just as there can be no dispute that those actions were properly approved and taken, there also should be no question here that the August 1998 SERP was properly discussed, approved, and, as demonstrated above, repeatedly implemented. Indeed, reporting of decision making was by no means consistent.

Response:    Kelly and Dixon compare the creation of the alleged August 1998 SERP to a series of corporate actions involving closing of divisions or other lines of business. There can be no doubt that these corporate actions were taken with extensive knowledge and participation by WHX executives and H&H senior management. There is no comparable evidence concerning the creation of the alleged August 1998 SERP. Rather, the documentary record indicates that Dixon and Kelly alone had a hand in creating this document, in conjunction with outside professionals who worked at their direction.

15.    PAGE 14: "Handy & Harman makes much of the fact that changes to the SERP plan were made, and the SERP was being finalized through 2003, and then deemed effective as of August 1998. However, the SERP was not an annualized plan, such as the H&H Management Incentive Plan, which might need to be re-approved each year. The practice of setting an effective date prior to the signature date of a document is common corporate practice and was indeed common practice for H&H and WHX as well."

Response:    In this case the effective date was set five years earlier, without input or consultation with any member of management other than Dixon and Kelly. Dixon and Kelly cite no comparable instance of retroactive dating. Nor do they identify any disclosure on their part that retroactive dating had occurred in connection with the alleged August 1998 SERP.

## II.    Claims Regarding The Use of the Alleged August 1998 SERP

1.    PAGE 7: "Before the August 1998 SERP was even drafted, reviewed by the Board or approved, H&H, as a company, and its Board, were contemplating the changes ultimately made in the August 1998 SERP. This was done at the leadership and Board level and

with the knowledge of H&H's Board and leadership, and without the involvement of Messrs. Dixon and Kelly.

   a. For example, the March 26, 1998 Minutes of the H&H Compensation Committee reflect the intent to make lump sum payments to certain Executives, and attached as exhibits thereto calculations of those payments. Tellingly, those calculations use 100% MIP, as provided for in the August 1998 SERP, rather than using the calculations from the January 1998 SERP. Thus, even as early as March 1998, the Company was planning to revise the SERP, and was making certain payments as though they were calculated under the new provisions. 2595-2603.

   b. Similarly, the Settlement and Release Agreements of the H&H Executives, which were dated as of April 3, 1998, and were attendant to the Merger Agreement between H&H and WHX, note that lump sum payments were made to certain Executives. See Klein Binder I Exhs. B and C (Dixon and Kelly Settlement and Release Agreements). As the exhibits thereto demonstrate, the calculations for the payment of the Executives use 100% MIP, as provided for in the August 1998 SERP, rather than the calculations from the January 1998 SERP. This is further evidence that, as set forth above, even as early as March 1998, the Company was planning to revise the SERP, and making certain payments as though they were calculated under the new provisions."

<u>Response:</u> Dixon and Kelly's conclusions are not supported by the record. The March 26, 1998 Minutes are for a Board meeting before WHX's acquisition. None of these directors served after the acquisition. The Board then in place amended the SERP to adopt the 1/1998 SERP, which was based on 25% MIP from 1996 on and 50% MIP for earlier years. The Board minutes reflect approval of lump sum payments under the 1/1998 SERP. While the Schedule annexed to the Board minutes includes a figure showing 100% MIP, a footnote to the Schedule indicates that the lump sum computation conformed to the 1/1998 Plan. The footnote states: "100% of award shown in (4). 25% of 2/96 and after included in calculation, 50% prior to 2/96 included."

   The claim that the computation was annexed to the Settlement and Release Agreements is incorrect. As with the Schedule annexed to the Board minutes, there is a footnote explaining that 50% MIP was used after 1996 and 25% before then, as contemplated by the 1/1998 SERP.

   2. PAGE 8: "H&H also entered into a Second Amended and Restated Trust Agreement (the 'Trust Agreement') effective August 1, 1998 (which was also the effective date

of the August 1998 SERP). The Trust Agreement was signed by Mr. Dixon, as well as by <u>Jay Katz, Irving Needleman, and Alfred Wheeler, who were the three Outside Trustees of the Trust</u>. 0049-70. Significantly, the Trust Agreement, stated, "WHEREAS, the SERP was <u>Amended and Restated as of August 1, 1998… and the Insurance Program was amended effective August 1, 1998</u>," the Trustees desired to further amend the first Trust Agreement, 'to <u>reflect certain changes which have been agreed between them.</u>' 0050-51 (emphasis added). The Company's knowledge, use and approval of the August 1998 SERP is evidenced from the face of the Trust Agreement."

  <u>Response:</u> The Second Amended Trust Agreement was first drafted in early 2003 by

Alfred Wheeler, Esq. (Binder II, Ex. 17) It revised an earlier Trust Agreement in light of the

alleged new SERP and Post Retirement Executive Life Insurance Program (the "Life Insurance

Plan"). The outside Trustees who signed the amended document were law partners at Jacobs,

Persinger & Parker, and one of them, Alfred Wheeler, Esq., drafted all of the H&H plan

documents at Mr. Dixon's direction. Dixon and Kelly do not claim that Mr. Wheeler or his

partners were privy to any instructions, other than what they received from Dixon or Kelly.

  3. PAGES 8-9: "A November 4, 1998 report from Watson Wyatt concluded that the use of 100% bonuses in SERP calculations was customary and appropriate. This report was requested by LeBlanc (at the time, President of H&H) to present to the WHX Compensation Committee. There is a handwritten notation on the letter by LeBlanc, which states: 'WHX Board Meeting 11/5/98', and the fax cover sheet of the document indicates it was shown to LeBlanc[.] *See* November 4, 1998 letter from Watson Wyatt to Dennis Kelly, with handwritten note stating that a copy was given to Robert LeBlanc, attached to Claimants' Arbitration Demand, and HH 1960-62."

  <u>Response:</u> Watson Wyatt in fact offered this observation to Mr. Kelly, and it was

apparently shared with Mr. LeBlanc. None of this demonstrates approval by the Board of an

amended SERP or of the alleged August 1998 SERP, which included changes far beyond 100%

MIP as "pay."

  4. PAGE 9: "The August 1998 SERP was also used by the H&H Board in the 2003 payout of Mr. LeBlanc, following his termination from the Company. The Unanimous Written Consent of the H&H Board of Directors, dated April 3, 2003, regarding the termination of LeBlanc, indicates the Board's knowledge and acceptance of the August 1998 SERP Plan, and states, in relevant part, that 'the Company has in place the Supplemental Executive Retirement Plan as Amended and Restated as of August 1, 1998.' Klein Binder IV Exh. 3; 2535, 2572-74. The May 7, 2003 Minutes of a meeting of the Compensation Committee of the WHX Board

reflect that Mr. Tabin represented to the Compensation Committee that Mr. LeBlanc was duly paid pursuant to the formula set out in his Employment Agreement and the 'H&H SERP.' Thus, both Boards recognized that the use of the August 1998 SERP was valid. 2328-30."

Response:    The Unanimous Written Consent dated April 3, 2003 refers to the August

1998 SERP. The directors relied upon Dixon and Kelly for benefit information and the

computation of Mr. LeBlanc's benefits. At this point, the alleged August 1998 SERP had still

not been signed by Dixon. Dixon and Kelly do not point to any evidence that they disclosed to

the Directors that the alleged plan was then in draft form and included many features not

reviewed by the H&H and WHX Boards.

5.    PAGE 9: "The August 1998 SERP had also been used in 2001 to calculate termination benefits in connection with the termination of Arnold Nance, another covered Executive of H&H and WHX who was, in fact, one of the six Executives who the Company contemplated would be covered by the August 1998 SERP. Klein Binder IV Exh. 2. This is admitted for the first time in the September 27, 2006 letter of Louis Klein. The calculations with respect to Mr. Nance were performed by Watson Wyatt. Klein Binder II Exh. 5."

Response:    The computations regarding Mr. Nance were performed by Watson Wyatt

at Mr. Kelly's direction. While the calculations used 100% MIP, the correspondence indicates

that the liberalized EGTRA provisions were used by Watson Wyatt, a feature contrary to the

alleged August 1998 SERP. The Watson Wyatt letter dated June 20, 2001, states, "The Plan

could be amended to modify the compensation limit specified in both the qualified plan and the

SRP plan to be the lesser of $170,000 (for example) and the 401(a)(17) compensation limit, if the

intention is to maximize the benefits payable from the SERP plan." (Binder II, Ex. 6) The

alleged August 1998 SERP in fact includes the modification mentioned by Watson Wyatt as a

possible change.

6.    PAGE 9: "The August 1998 SERP was also used with knowledge of the H&H and WHX Boards in that it was publicly reported in the WHX Proxy Statements in 2000, 2001, 2002, 2003 and 2004, describing SERP benefits as inclusive of 100% of MIP bonus. *See also*, Klein Binder IV Exh. 1 Although no similar disclosure was included in the 1999 WHX Proxy Statement, an analysis had been performed by Watson Wyatt in anticipation of the 1999 statement, but was not included in the Proxy Statement."

14

Response:    WHX's proxy materials from 2000 – 2004 state that the H&H maintains a

SERP which "include[s] 100% of the bonus amounts received." The description in the proxy

also states that the SERP provides "the executive officers the amount of reduction in their

formula pension benefits under the WHX pension plan on the account of their limitation in pay

under Section 401(a)(17) of the Internal Revenue Code...." This is not an accurate description

of the alleged August 1998 SERP, which froze the limitations on pay effective prior to the

adoption of the EGTRA in 2001. Thus, the offset amount under EGTRA rose to $200,000 in

2002, but under the alleged August 1998 SERP only $170,000 was used, increasing pension

income by $30,000. The disparity increased in later years.

7.    PAGES 9-10: "Further, the assumptions under the August 1998 SERP were
reported in the Financial Reports and Statements of H&H and WHX annually. The Executives
all reviewed those reports annually, and thus the existence and terms of the August 1998 SERP
should have come as no surprise. Thus, for example, in the Year 2002 10K filing of WHX
Corp., filed April 15, 2003, the SERP Calculation amounts that were disclosed were based on the
August 1998 SERP. *See* Year 2002 10K filing of WHX Corp, filed April 15, 2003, page 52.
Similarly, in the Year 2003 10K filing of WHX Corp., filed April 14, 2004, the SERP
Calculation amounts that were disclosed were based on the August 1998 SERP. *See* Year 2003
10K filing of WHX Corp, filed April 14, 2004."

Response:    The discussions that appear on the referenced pages include aggregate

figures for all WHX domestic pension plans. There is no reference to the H&H SERP and it is

not possible to discern what computation was used. The source of the information for H&H is

Watson Wyatt. The record indicates that Watson Wyatt in turn relied on Dixon and Kelly. (*See*

Binder II) Dixon and Kelly have not identified any other source of information for Watson

Wyatt. It is not correct that "the assumptions under the August 1998 SERP were reported in the

Financial Reports and Statements of H&H and WHX annually." WHX's proxy materials state

that the H&H maintains a SERP which "include[s] 100% of the bonus amounts received." The

description in the proxy material also states that the SERP provides "the executive officers the

amount of reduction in their formula pension benefits under the WHX pension plan on the

15

account of their limitation in pay under Section 401(a)(17) of the Internal Revenue Code...."

This is not an accurate description of the alleged August 1998 SERP, which froze the limitations

on pay effective prior to the adoption of the EGTRA in 2001.

8.    PAGE 10: "In the 2003 Acknowledgement and Release executed by each H&H
Executive relating to the Bankruptcy filing of WHX Corp, H&H and WHX agreed to pay the
Executives in consideration of releasing their claims under the August 1998 SERP and the H&H
Executive Post Retirement Life Insurance Program. PA 5079-83 and PA 5097-101 (Robert
Hynes); PA 5084-86 (Daniel Murphy); PA 5087-91 (Peter Marciniak); PA 5092-96 (Thomas
Brouillard).  Although H&H now claims that it entered into these agreements as a result of
Dixon's misconduct (see 11/6/06 Fleming Letter), the Company was represented by outside
counsel, accountants, actuaries, and all manner of experts, and especially in light of the
Company's knowledge, cannot now claim the Executives' heads were in the sand."

Response:    The Company indeed entered into agreements with the above executives

releasing any claims under the alleged August 1998 SERP, as well as the alleged Life Insurance

Program.  The statement that these agreements were signed in 2003 is incorrect.  The agreements

were signed in late 2005 or early 2006, after WHX and H&H had concluded the alleged August

1998 SERP had never been approved and adopted.  Certain H&H executives had potential claims

based on their reliance on the documentation distributed by Dixon and Kelly.  Accordingly,

written agreements were negotiated to release these claims.

9.    PAGES 10-11: "Well into April 2005, H&H was performing calculations using
the August 1998 SERP. 0350-66. For example, the March 7, 2005 e-mail from Richard
Michaels of Towers Perrin to Neale Trangucci, Stewart Tabin and Neil Arnold, copied to Bill
Daniels, shows that Towers Perrin was requested by the Company to perform calculations to
determine what the Executives could be paid under various scenarios under the August 1998
SERP.  Notably, although as of March 1, 2005, Watson Wyatt, working with Dennis Kelly, had
arrived at a total of $4,549,706.33 that would be due from the Company under the August 1998
SERP (0353-55), Towers Perrin, performing its own calculations at the request of H&H at the
same time, in fact, reached a calculation of lump sums under the August 1998 SERP of $5.1
million, which was higher than the Dennis Kelly number.

...

Critically, nowhere in the March 7, 2005 email discussion is there any mention that the
August 1998 SERP was improper or otherwise invalid.  Rather, this is nothing more than the
Company's attempt to benefit at the expense of two of its Executives who had served the

Company faithfully for twenty years in the case of Mr. Kelly, and thirteen in the case of Mr. Dixon."

Response:    The email from Towers Perrin indicates that they were simply asked to check the computations made by Watson Wyatt. By letter dated March 29, 2005, Mr. Tabin advised Messrs. Dixon and Kelly of his conclusions that the 1/1998 SERP was in effect (00348-349). (*See* Binder III, Ex. B)

### III.    Claims That the Alleged August 1998 SERP was in Company's Best Interest

1.    PAGES 11-12: "The SERP's use of 100% MIP, as the basis for its calculations is an entirely reasonable approach and in the interests of the Company. As advised by Watson Wyatt, many SERPs use that figure. *See* November 4, 1998 letter from Watson Wyatt to Dennis Kelly, with handwritten note stating that a copy was given to Robert Leblanc. HH 1960-62. Indeed, Watson Wyatt advised that its Associates had indicated their experiences with SERPs of companies that they work with, and "In all cases, the SERPs reflect 100% of bonus, although in one case the total pay recognized, including the bonus, was limited to $400,000. This is similar to my experience. I work with about six SERPs in addition to the H&H SERP, and the H&H SERP is the only one that does not include 100% of bonus." *Id.* Notably, the fax cover page of this letter contains a contemporaneous handwritten note indicating that a copy of this was provided to Robert LeBlanc, H&H's then President. Clearly, a SERP including 100% of bonus was disclosed and contemplated by the Company."

Response:    The issue whether 100% MIP was beneficial to H&H was a decision for H&H's Board and the WHX Board, not Dixon and Kelly. The alleged August 1998 SERP in any event included benefit changes far beyond 100% MIP, such as an expanded change of control provision.

2.    PAGE 12: "It was also reasonable that new change in control provisions needed to be reloaded into the SERP once the change in control payout under the WHX Merger had been made. Change in control payments are retention tools for top Executives — without those provisions, none of the Executives who stayed on at H&H after the WHX merger would have had incentive to stay on, if their company could be acquired by another leaving them with possibly no job."

Response:    The decision whether to include new change of control provisions for H&H senior management was not one to be made by Dixon and Kelly, two major beneficiaries of the alleged provisions. In early 1998, both men received large change of control payments as

17

530008-3

part of the WHX acquisition and each signed a new Employment Agreement after the

acquisition. In contrast to their earlier agreements, the new contracts did not include any

"change of control" terms. Dixon and Kelly offer no explanation why (or when) WHX and

H&H purportedly changed their positions to award them multi-million dollar "change of control"

benefits.

## IV.   Paul Dixon's Expense Accounts

1.    PAGE 21: "Indeed, the MWE exhibits are curious, in that they are not even
representations solely of Dixon's expenses, let alone an attempt to cull out supposedly wrongful
expenses. For example, Exhibit 3 of the MWE report includes a list of Dixon car expenses, but
also irrelevant expenses, such as Dan Murphy's Car, Costco, and a nearly blank Postage column.
Notably, the supposed second car attributed to Dixon was a field car maintained by the
Company, and was used by, for example, visiting Executives and was also used by Executives
and corporate staff when they had their own car in for servicing. H&H's theory is apparently
that merely having expenses, while Mr. Dixon was working on the round the clock basis for the
Company, is sufficient to show wrongdoing. Similarly, Exhibit 4 shows Mr. Dixon's expenses,
much of which were for travel, with no identification of supposed wrongdoing."

Response:    In Exhibit 1 to their report, Margolin Winer & Evans LLP ("MWE")

identifies a series of incidents where Dixon charged H&H for expenses that "were likely of a

personal nature." Dixon has not denied any of the specific incidents cited by MWE. Dixon does

not claim to have worked or traveled on any of the dates where MWE concludes personal use

was likely. He does not dispute the apparent usage of a dial car service for his family, or that he

charged H&H for meals with his family or friends on several occasions.

2.    PAGES 21-22: "MWE also claims that because expenses were incurred on
weekends or holidays, they must be wrongful. However, as the H&H Executives well know, Mr.
Dixon was working on the Company's behalf on evenings, weekends, holidays, and all times that
would be personal time for persons who were not so dedicated to their company. Indeed, Mr.
Dixon was available on a round-the-clock basis, and it is our understanding, frequently took calls
and meetings at times that would not be business hours.

In any event, Mr. Dixon's use of the car and car service, including billing the car service
to the Company in any way, was not inappropriate, because he was awarded the full-time use of
a company car as part of his benefits in recognition and aid of the fact that Mr. Dixon was
working on a round the clock basis on the Company's behalf, and regularly was working on
evenings and weekends. Further, it was the pattern and practice of all Executives to use such

18

resources for non-business purposes as well. To the extent there really were any wrongly charged expense, such sum was of a de minimis nature and would not support a firing for cause of either Mr. Dixon or Mr. Kelly."

   Response:  Dixon received the use of a car pursuant to this Employment Agreement. All of the taxi services charged by Dixon are in addition to his company car. Dixon offers no evidence of any pattern and practice to charge H&H for personal expenses by others. Again, Dixon does not claim a business purpose for any of the charges cited by MWE.

19