# Greenberg Traurig

Leslie D. Corwin
Tel. (212) 801-3113
Fax (212) 801-6400
corwinl@gtlaw.com

May 16, 2008

**VIA FEDERAL EXPRESS**

Honorable Kenneth M. Karas
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601

Re:    **Kelly v. Handy & Harman et al., 08 CV 00163**

Dear Judge Karas:

On behalf of plaintiff Dennis Kelly ("Mr. Kelly" or "Plaintiff") in the above-referenced matter, we write pursuant to the Court's instruction at the April 18th conference to (i) demonstrate Mr. Kelly's need for additional discovery from Defendants[1] before they should be permitted to move against his ERISA claims, and (ii) establish that the "Remaining Defendants" described in Defendants' March 7, 2008 letter (the "March 7th Letter") are proper defendants who should remain in this action.[2]   For the reasons set forth below and in Mr. Kelly's March 12, 2008 letter to the Court (the "March 12th Letter"),[3] Mr. Kelly is entitled to additional discovery so that he may properly defend against a summary judgment motion from Defendants and obtain *de novo* review of the H&H Plan Administrator's biased and erroneous decision denying him benefits.

In addition, other than the Option Plan, all of the Remaining Defendants, are properly named in this action.

---

[1]      Defendants in this action are Handy & Harman ("H&H"), Mr. Kelly's former employer; WHX Corporation ("WHX"), H&H's parent company; and various pension plans administrated pursuant to the Employee Retirement Income Security Act of 1974 (the "ERISA and Benefit Plans"), including: the August 1, 1998 H&H Supplemental Executive Retirement Plan (the "August 1998 SERP"); the H&H Executive Post-Retirement Life Insurance Program (the "H&H Life Insurance Program"); the H&H/WHX Pension Plan, the H&H Management Incentive Plan (the "Bonus Plan"); the H&H Long-Term Incentive Plan (the "Incentive Plan"); the 1991 Incentive and Non-Qualified Stock Option Plan (the "Option Plan"); and the H&H Post-Retirement Medical Plan (the "Medical Plan") (collectively, the "Defendants").

[2]      The "Remaining Defendants" referred to in Defendants' March 7 Letter are:  WHX, the H&H Life Insurance Program, the H&H/WHX Pension Plan, the Incentive Plan, the Medical Plan, the Bonus Plan, and the Option Plan.   A true and correct copy of the March 7 Letter is annexed hereto as Exhibit A.

[3]      A true and correct copy of Mr. Kelly's March 12th Letter is annexed hereto as Exhibit B.

ALBANY
AMSTERDAM
ATLANTA
BERLIN*
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance

Honorable Kenneth M. Karas
May 16, 2008
Page 2

### Mr. Kelly Is Entitled To Full And Fair Discovery On His ERISA Claims,
### Not Simply Discovery That *Defendants* Deem Relevant

At the April 18th conference, Defendants' counsel asserted that a "closed administrative record" existed in this action, discovery was complete, and Defendants' proposed motion for summary judgment was ripe for consideration by the Court. These assertions are incorrect.

As shown below, the parties disagree on the scope of relevant discovery regarding Mr. Kelly's ERISA claims. Indeed, Defendants refused to produce any documents in response to a number of Mr. Kelly's pre-action discovery requests. In response to other requests, Defendants unilaterally limited their production to those documents they deemed relevant to Mr. Kelly's claims. Because this discovery took place before Mr. Kelly filed this action, it was outside the scope of the Federal Rules of Civil Procedure, and Mr. Kelly has no way of confirming the completeness of Defendants' document production or contesting the propriety of their objections.

Finally, Defendants improperly refused to make key witnesses available for interview or deposition, including Louis Klein, the Plan Administrator who denied Mr. Kelly's benefits claims. Such discovery is crucial to Mr. Kelly's ERISA claims and the scope of the Court's review of the Plan Administrator's decision. For these and other reasons, the administrative record is not "closed," as Defendants contend. Additional discovery is required on Mr. Kelly's ERISA claims.

Mr. Kelly's Pre-Action Discovery Requests
And Defendants' Responses

On October 20, 2006, Mr. Kelly served 37 document requests upon Defendant H&H and its agents, and requested the interviews of Louis Klein, the H&H Plan Administrator who denied Mr. Kelly's benefits claims (the "Plan Administrator"), and Hal Leiberman, an attorney retained by H&H as an "expert" on attorney ethics[4] (collectively, the "Requests").[5] On November 6, 2006, H&H produced responsive documents, as well as a disc containing responsive email. Significantly, however, in its written responses to the Requests (the "Responses"),[6] H&H objected to producing certain categories of documents that it deemed

---

[4]     Mr. Lieberman was retained by H&H to render an ethics opinion on the conduct of Paul Dixon, H&H's former general counsel, in amending H&H's January 1, 1998 Supplemental Executive Retirement Plan (the "January 1, 1998 SERP"), which led to the creation of the August 1998 SERP.

[5]     A true and correct copy of Mr. Kelly's Requests is annexed hereto as Exhibit C.

[6]     A true and correct copy of H&H's Responses to Mr. Kelly's Requests is annexed hereto as Exhibit D.

Honorable Kenneth M. Karas
May 16, 2008
Page 3

irrelevant or objectionable because they purportedly were protected by the attorney-client privilege. *See* Appendix hereto.

The Requests seek relevant and probative information regarding Mr. Kelly's ERISA and other claims in this action and H&H's objections are baseless. First, H&H's claims of "irrelevance" are entirely self-serving and appear calculated to prevent discovery that would assist Mr. Kelly in prosecuting his ERISA claims. For example, Request Nos. 30 and 31 go to the core of the alleged wrongdoing by Mr. Kelly claimed by H&H, which form the basis of the Plan Administrator's denial of benefits. *See* Appendix, *infra* at 12. Similarly, Request No. 32 goes to the central issue of H&H's claim that Mr. Kelly was terminated for cause, which fundamentally impacts his ERISA claims. *Id.* Request Nos. 35 and 36 seek information concerning H&H's open adoption and use of the August 1998 SERP. *Id.* at 10, 13. Mr. Kelly can make a similar showing of relevance and probative value for each of the above Requests to which Defendants have failed to respond, or responded incompletely.

Second, since there is a fiduciary exception to the attorney-client privilege in the case of employee benefit plans, Defendants' objections based on the attorney-client privilege are wholly without merit.

H&H also wrongfully refused to produce documents reflecting communications between the Olshan Firm and its "experts," based on an incorrect assertion of privilege. (*See, e.g.,* Exh. D at 6, H&H Response to Request No. 21.) There is no privilege protecting attorney communications with experts. See, e.g., 1993 Advisory Committee Notes to Fed. R. Civ. P. 26(a)(2)(B) ("Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."); *B.C.F. Oil Ref., Inc. v. Consolidated Edison Co.,* 171 F.R.D. 57, 66 (S.D.N.Y. 1997) (ordering production of documents shown to expert, including drafts, correspondence from attorneys communicating facts, correspondence from attorneys containing attorney mental impressions, opinions and in some cases, litigation strategies, handwritten notes and similar material created by attorneys). Accordingly, such documents should be produced. To the extent Defendants purport to claim a privilege regarding such documents, at a minimum, they should produce a privilege log, so that Mr. Kelly can investigate Defendants' privilege designations and contest them if necessary.

Finally, H&H refused to allow Mr. Kelly's attorneys to interview Messrs. Klein and Leiberman, on the grounds that such interviews were not required by ERISA or the rules adopted by the Plans.[7] Defendants never provided a legal basis for this position, however, and Mr. Kelly has never been permitted to interview or depose Mr. Klein, the conflicted Claim

---

[7] A true and correct copy of Defendants' letter, dated November 8, 2006 refusing to allow the depositions of Mr. Klein and Mr. Leiberman is annexed hereto as Exhibit E.

Honorable Kenneth M. Karas
May 16, 2008
Page 4

Administrator whose biased denial of Mr. Kelly's claim for benefits is central to his ERISA claims. Mr. Kelly also was denied the opportunity to interview or depose Garen Smith, the similarly-conflicted Plan Administrator who denied his appeal on his benefits claim.[8] At a bare minimum, before Defendants are allowed to bring a summary judgment motion on Mr. Kelly's ERISA claims, Mr. Kelly should be given an opportunity to depose Messrs. Klein and Smith.

Mr. Kelly's need for additional discovery is clear. Without it, he not only will be forced to rely upon Defendants' self-interested and erroneous limitations on what is "relevant" and "privileged," but he also will be prevented from effectively demonstrating to the Court that it should apply a *de novo* standard of review to the decisions of the Claim and Plan Administrators due to their serious conflicts of interest.

In this regard, Judge Marrero's recent decision in *Harrison v. Metropolitan Life Insurance Company*, 417 F. Supp. 2d 424 (S.D.N.Y. 2006) is squarely on point with this case. In *Harrison*, the beneficiary of a life insurance plan sued her deceased husband's employer, Empire Blue Cross Blue Shield ("Empire") and life insurance company, MetLife, which offered an ERISA life insurance plan to Empire employees, in State Court for, *inter alia*, breach of fiduciary duties under ERISA. The action was removed to Federal Court and defendants moved to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

As here, the parties in *Harrison* disputed the amount of deference to be accorded to the plan administrator who denied plaintiff's benefits claim. *Harrison*, 417 F. Supp. 2d at 435. The plaintiff alleged that the plan administrator had a conflict of interest because Empire faced potential liability for its failure to intervene in response to her deceased husband's mental deterioration.[9] *Id.* She also claimed that MetLife had been influenced improperly by its economic self-interest as the funding agent of the ERISA plan. *Id.* Accordingly, the plaintiff argued that the plan administrator's decision should be reviewed *de novo*.

In determining whether the plan administrator in fact suffered from a conflict of interest, Judge Marrero stated:

> [T]he record is sparse of evidentiary grounds upon which the Court may properly assess such a claim. As no discovery has been conducted at this stage of the litigation, Harrison has not yet had

---

[8]    Mr. Klein's and Mr. Smith's serious conflicts of interest are described in detail in Mr. Kelly's March 12th Letter to the Court. *See* Exh. B at 2-3.

[9]    Plaintiff's late husband worked at Empire's offices in the World Trade Center and was at work on September 11, 2001, when the terrorist attack occurred. *Harrison*, 417 F. Supp. 2d at 430. Plaintiff alleged that her husband suffered emotional trauma as a result of the experience and his mental state gradually deteriorated to the point of insanity. *Id.* On September 16, 2002, plaintiff's husband tragically killed himself and two co-workers. *Id.* at 429.

Honorable Kenneth M. Karas
May 16, 2008
Page 5

the opportunity to collect evidence that might support her allegation that a conflict of interest influenced Defendants' decision to deny the additional benefits allegedly due under the Plan. *See Thompson v. General Electric Co.*, No. 01 Civ. 4438, 2002 WL 482862, at *4 (S.D.N.Y. March 29, 2002). It is conceivable that, after discovery, Harrison might be able to demonstrate that Defendants' decision to deny benefits was influenced by the alleged conflict of interest. . . .

Since the proper analysis and standard of review will turn on Harrison's ability to demonstrate that a conflict of interest influenced Defendants' decision-making, the Court will not be able to determine the proper analysis and standard of review until discovery has been completed and any evidence . . . that a conflict of interest influenced decision-making has been submitted. *See Suozzo v. Bergreen*, No. 00 Civ. 9649, 2002 WL 1402316 (S.D.N.Y. June 27, 2002); *see also Peck v. Aetna Life Ins. Co.*, No. Civ. A.3:04-CV 1139JCH, 2005 WL 1683491 (D. Conn. July 19, 2005).

*Harrison*, 417 F. Supp. 2d at 435-36 (emphasis added).

The same rationale applies here.[10] Defendants' selective document production, specious discovery objections, and refusal to allow Mr. Kelly to interview or take the depositions of Mr. Klein and Mr. Smith have obstructed Plaintiff's ability to gather evidence regarding their respective conflicts of interest and the influence such conflicts had on their decisions denying Mr. Kelly the ERISA benefits to which he is entitled. Until such discovery is completed,

---

[10] The cases cited by Defendants in the March 7th Letter do not require a different result. *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89 (2d Cir. 2000) states that the district court's decision on plaintiff's ERISA claims followed discovery and "a two-day bench trial on a stipulated record." *Id.* at 92. Plainly, no bench trial has occurred in this case, and the record here certainly is not stipulated. Moreover, in this case, there are many more facts present demonstrating a conflict of interest on the part of the Plan Administrator than were present in *Pulvers. See* Exh. B. *Francia v. Wonderoast, Inc. Profit Sharing Plan*, No. 92-CV-790S, 1995 WL 625705 (Oct. 19, 1995) involved a summary judgment motion that appeared to follow the taking of substantial discovery, although the precise scope of such discovery is unclear from the decision. Notably however, in *Francia*, the plaintiff failed to contest defendant's argument that an abuse of discretion (rather than *de novo*) standard of review should be applied. *Francia*, 1995 WL 625705, at *7. Thus, in *Francia*, unlike here, the standard of review issue was uncontested. *Francia* is therefore distinguishable from this case. Finally, *C.N.S. Inc. v. Connecticut Gen. Life Ins. Co.*, 9 F. Supp. 2d 194 (E.D.N.Y. 1998) did not involve the issue presented here, *i.e.*, whether the Plan Administrator had a conflict of interest such that its decision should be reviewed *de novo*. Rather, the issue involved in *C.N.S. Inc.* concerned whether the plan administrator's decision was arbitrary and capricious. Thus, *C.N.S. Inc.*, like *Pulvers* and *Francia*, is distinguishable from this case.

Honorable Kenneth M. Karas
May 16, 2008
Page 6

Mr. Kelly will be unable to fully and fairly demonstrate to the Court that it should review the Administrators' decisions *de novo* and not accord them any deference.

### All "Remaining Defendants" Other Than The Option Plan
### Are Proper Defendants In This Case

At the Court's request, we undertook to confirm whether WHX, the H&H Life Insurance Program, the H&H/WHX Pension Plan, the Incentive Plan, the Medical Plan, the Bonus Plan, and the Option Plan are proper Defendants in light of WHX's bankruptcy and Defendants' contentions in the March 7th Letter. We have confirmed that the Option Plan was canceled by the WHX bankruptcy and agree to dismiss the Option Plan from this action. For the reasons stated below, however, the other Defendants are properly named and should remain in this action.

<u>WHX</u>

Defendants contend that WHX is not a proper defendant because Mr. Kelly's indemnification claim against WHX is predicated on the WHX/H&H Merger Agreement, and the Merger Agreement was canceled by the Plan of Reorganization in the WHX bankruptcy. Defendants also assert that WHX's general discharge "bars claims over pre-petition obligations." *See* Exh. A at 3. Defendants assume too much. While it is true that Section 4.13 of the Plan of Reorganization purports to cancel all pre-petition agreements giving rise to claims against WHX and Section 4.3 of the Plan of Reorganization discharges WHX from all pre-petition claims, Defendants ignore independent sections of the Plan of Reorganization that govern Mr. Kelly's indemnification claim.

Section 2.8(a) of the Plan of Reorganization provides that executory contracts that are not explicitly rejected are deemed assumed and assigned to the new, post-bankruptcy WHX. A schedule to the Plan provides that no such executory contracts are to be rejected. In addition, Section 2.8(c) of the Plan of Reorganization states that WHX indemnification obligations arising by reason of a person's service as an employee, officer, or director of the company -- the very type of indemnification claim asserted here by Mr. Kelly -- shall be treated as executory contracts that are being assumed and assigned to the new WHX.

Section 2.8(d) of the Plan of Reorganization excludes such indemnification claims from the requirement to file "cure payment" proofs of claim to prevent discharge. Therefore, Mr. Kelly's executory indemnification claim against WHX was not canceled or discharged in the WHX bankruptcy; it was assumed and assigned to the new WHX. For these reasons, WHX is a proper Defendant on this claim.

Honorable Kenneth M. Karas
May 16, 2008
Page 7

_____

### H&H Life Insurance Program

Defendants assert that the H&H Life Insurance Program is not a proper Defendant because (i) the review and appeal process for Mr. Kelly's claim under the August 1998 SERP encompassed this claim, and the Plan Administrator's decision denying benefits is "entitled to deference"; and (ii) Mr. Kelly purportedly "never appealed the benefits awarded under this program as inadequate." *See* Exh. A at 2.

Both assertions are incorrect. First, the Plan Administrator is seriously conflicted, for the reasons stated in the March 12th Letter. His decision denying Mr. Kelly's claim for benefits was unreasonable, arbitrary, and plainly influenced by his conflicts of interest. Accordingly, his conflicted decision on this claim, like his decision on Mr. Kelly's August 1998 SERP claim, warrants no deference. Second, Mr. Kelly appealed the Plan Administrator's decision denying this claim in a 26-page letter dated December 11, 2006, from myself to counsel for Defendants. Therefore, any assertion that Mr. Kelly did not properly appeal the benefits awarded under the H&H Life Insurance Program is false. Indeed, in over a year of correspondence between counsel on this issue, Defendants never once raised this argument (nor could they).

### The H&H/WHX Pension Plan

Defendants contend that the H&H/WHX Pension Plan is not a proper defendant because Mr. Kelly's claim under this Plan is premature, as Mr. Kelly has not reached 60 years of age. They also assert that Mr. Kelly has not been denied benefits under the Pension Plan and that the Pension Plan has never claimed he is not entitled to such benefits. *See* Exh. A at 3.

Defendants' assertions are disingenuous. The August 1998 SERP is a supplemental plan to the H&H/WHX Pension Plan. Defendants oppose Mr. Kelly's claim under the August 1998 SERP and therefore, whether they are prepared to say so now or not, they most certainly will take the same position regarding the Pension Plan when Mr. Kelly turns 60 in four years. Mr. Kelly is entitled to benefits under <u>both</u> the August 1998 SERP and the supplemental Pension Plan. In the interest of judicial economy and Mr. Kelly's limited financial resources, his rights under both Plans should be decided at the same time. A declaratory judgment from this Court affirming that he is eligible for benefits under the Pension Plan when he turns 60 will prevent Mr. Kelly from having to commence a new action for benefits under the Pension Plan when his claim is eventually denied by H&H, as it most certainly will be. Finally, and contrary to Defendants' assertion (March 7 Letter at 3), Mr. Kelly <u>did</u> file a Deferred Vested Pension Application, on October 20, 2006.

Honorable Kenneth M. Karas
May 16, 2008
Page 8

_____

### The Medical Plan

Defendants assert that Mr. Kelly is not eligible for benefits under the Medical Plan because he was terminated before his retirement and was not enrolled in the plan or receiving pension payments, which are conditions of the Plan.   These assertions are also disingenuous. If Mr. Kelly had been appropriately retired -- but for his wrongful termination by H&H -- he would have been entitled to post-retirement benefits under the Medical Plan.  Moreover, while we are currently unable to confirm the accuracy of Defendants' assertion regarding the alleged pension payment pre-condition,[11] even assuming its truth, the argument fails, for the reasons set forth *supra*.  Finally, contrary to Defendants' assertion, the only form that was sent to Mr. Kelly was a COBRA form.

### The Bonus Plan

Defendants assert that the Bonus Plan is not properly named in this action because Mr. Kelly's Employment Agreement purportedly required him to "look to" H&H "for any claim related to his annual bonus" if he were terminated.  *See* Exh. A at 3.   The Employment Agreement contains no such provision, however.   It merely states that if Mr. Kelly is terminated for reasons other than for cause, then H&H would, among other things, pay him any Bonus Plan compensation he had accrued.   The Employment Agreement does not require Mr. Kelly only to "look to" H&H for a claim under the Bonus Plan, and it certainly does not preclude him from pursuing such a claim against the Bonus Plan, or WHX.

### The H&H Long-Term Incentive Plan

Section 4 of Mr. Kelly's Employment Agreement expressly granted Mr. Kelly the right to participate in the H&H Long-Term Incentive Plan. Defendants contend that the Employment Agreement provided that he would not be entitled to participate in Incentive Plan benefits if he were terminated with or without cause. *See* Exh. A at 3.  Not so.  Mr. Kelly's Employment Agreement does not state that he would not obtain Incentive Plan benefits if he were terminated without cause, which is what he alleges in the Complaint.

Defendants further assert that there was no Incentive Plan in place when Mr. Kelly was terminated.  *Id.*  In an effort to confirm the veracity of this assertion, on February 12, 2008, I sent Defendants' counsel a letter requesting documentation and/or supporting evidence that the H&H Long-Term Incentive Plan was terminated and that Mr. Kelly no longer has a benefit under the Plan.   No response was forthcoming from Defendants.   Of course, if Defendants'

_____

[11]      We are unable to locate a copy of the Medical Plan in H&H's document production.  By service of a copy of this letter upon Defendants' counsel, we request that Defendants produce us with a copy of the Medical Plan so that we can determine the accuracy of their assertion regarding the Plan's alleged preconditions.

Honorable Kenneth M. Karas
May 16, 2008
Page 9

---

assertion proves to be true, we will dismiss the H&H Long-Term Incentive Plan as a defendant. Otherwise, Mr. Kelly is entitled to benefits under the Incentive Plan, and it is a proper defendant.

Respectfully submitted,

Leslie D. Corwin

cc:    Thomas Fleming, Esq. (via e-mail)
       Mr. Dennis Kelly (via e-mail)
       Melanie Cyganowski, Esq.
       Timothy DiDomenico, Esq.

Honorable Kenneth M. Karas
May 16, 2008
Page 10

---

## **APPENDIX**

Based on relevance, privilege, and other objections (*see* Exh. D), H&H refused to produce <u>any</u> documents in response to the following Requests:

> Request No. 13: All minutes of any meeting of the Board of Directors or any Committee of WHX, regarding the [August 1998] SERP and the financial data supplied to the WHX Compensation Committee regarding the [August 1998] SERP, including any notes thereof.

> Request No. 14: All drafts of the [August 1998] SERP Plan.

> Request No. 16: All documents relating to negotiations between H&H and WHX and Steel Partners, including but not limited to any documents reflecting H&H or WHX Plans.

> Request No. 21: All communications between Olshan Grundman Frome Rosenzweig & Wolosky LLP or H&H (including Mr. Klein) and Mr. Leiberman regarding Messrs. Dixon or Kelly, or any H&H benefits retirement Plans.

> Request No. 26: All communications between you or H&H (including Mr. Klein) and [the law firm Margolin, Winer & Evans LLP ("MWE")] regarding Messrs. Dixon or Kelly.

> Request No. 35: Documents reflecting or relating to any payments made to any of the Messrs. Tabin, Trangucci, Arnold, Murphy pursuant to any H&H, WHX or Steel Partners benefits plan.[12]

In response to the following Requests, H&H only produced documents that it deemed relevant to Mr. Kelly's claims:

> Request No. 9: All minutes of any meeting of the Board of Directors or any Committee of H&H, including drafts thereof, between 1998 to the present.

---

[12]    Stewart Tabin (WHX President), Neale Trangucci (WHX CEO), Neil Arnold (WHX Chairman) and Dan Murphy (H&H President) are current or former executives of WHX of H&H who attended a July 2005 meeting of the H&H Board for the apparent purpose of interrogating Plaintiff in order to formulate a plan to terminate him.

Honorable Kenneth M. Karas
May 16, 2008
Page 11

- H&H only agreed to produce minutes "addressing whether to amend the [January 1, 1998 SERP]. *See* Exh. D at 3.

Request No. 12: All minutes of any meeting of the Board of Directors or any Committee of WHX, relating or referring to Messrs. Dixon or Kelly, or any benefit plan of H&H, including the H&H SERP, and the financial data supplied to the WHX Board of Directors or any Committee thereof regarding the H&H SERP, including any notes thereof.

- H&H only agreed to produce WHX Board and Committee minutes "that discuss H&H benefit plans" or the "H&H SERP in 1998 and 1999." *See* Exh. D at 4.

Request No. 15: All merger and/or acquisition documents relating to H&H, from 1998 to the present, including any merger and/or acquisition documents relating to the H&H transaction with WHX in 1998, and the transaction with Steel Partners in 2005.

- H&H only agreed to produce the Merger Agreement, tender offer for WHX's acquisition of H&H in 1998, the Plan of Reorganization and the disclosure statement for the WHX bankruptcy. *See* Exh. D at 5.

Request No. 17: Any agreements between H&H and any of Messrs. Leiberman, Tabin, Hynes and LeBlanc.[13]

- H&H only agreed to produce Mr. Leiberman's retainer agreement, Mr. LeBlanc's employment agreement and "materials regarding his separation," and the employment agreements for Mr. Tabin and Mr. Hynes. *See* Exh. D at 5. Upon information and belief, additional responsive agreements exist, including agreements between H&H or WHX and former H&H Executives Robert Hynes and Peter Marciniak (among others), pursuant to which Messrs. Hynes and Marciniak agreed to accept consideration in exchange for their release of all claims under the August 1998 SERP and the H&H Life Insurance Program.

---

[13]    Robert LeBlanc, H&H's former President and a former member of WHX's Board, requested that Mr. Kelly and Mr. Dixon prepare an updated benefit and compensation plan to reflect changes resulting from WHX's April 1998 acquisition of H&H.

Honorable Kenneth M. Karas
May 16, 2008
Page 12

Defendants have withheld such agreements, which are plainly at issue in this action.

Request No. 24: All documents forming the basis of the "Assumed Facts" in Mr. Lieberman's "Ethics Opion" (9/21/06 Lieberman Letter at pages 1-5).

- H&H responded that responsive documents were previously produced to Mr. Kelly, and then added, without explanation, that "[t]he documents also include other materials provided to you herewith." See Exh. D at 6.

Request No. 30: Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to any person in the Human Resources departments of H&H, WHX, and Steel Partners, including but not limited to communications with Messrs. Dixon or Kelly, referring or relating to Messrs. Dixon or Kelly, any of the Plans at issue, the SERP Plan or the MIP Plan.

- H&H only agreed to produce "relevant materials responsive to this request within the overall document production" and Mr. Kelly's personnel file. See Exh. D at 8.

Request No. 31: Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to Mr. Marciniak to or from any executive or director of H&H, WHX, and Steel Partners, regarding Messrs. Dixon or Kelly, relating to any of the Plans at issue including but not limited to the SERP Plan or the MIP Plan, or the termination of Messrs. Dixon or Kelly.

- H&H only agreed to produce "relevant materials responsive to this request within the overall document production" and Mr. Kelly's personnel file. See Exh. D at 8.

Request No. 32: All documents and communications relating to the termination of Messrs. Dixon and Kelly.

Honorable Kenneth M. Karas
May 16, 2008
Page 13

- H&H objected on relevance grounds because "this material was not considered or reviewed by the Claim Administrator." It then stated that "[t]he documents produced herewith may be responsive to this request in part." *See* Exh. D at 8.

Request No. 36:    Agreements between H&H and any of its directors or executives entered into between September 2005 to the present which relate in any way to Messrs. Dixon or Kelly.

- H&H claimed the request was "unclear" and only agreed to produce "certain agreements . . . that H&H entered into as a direct result of [Paul] Dixon's misconduct." *See* Exh. D at 9.

Exhibit A

MAR-07-2008  20:25        OGFRW LLP                                    2124512222      P.02

# O L S H A N
O L S H A N  G R U N D M A N  F R O M E  R O S E N Z W E I G  &  W O L O S K Y  L L P

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212.451.2213
EMAIL: TFLEMING@OLSHANLAW.COM

March 7, 2008

FEDERAL EXPRESS

Honorable Kenneth M. Karas
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150

Re:  Kelly v. Handy & Harman, et al., 08 CV 00163

Dear Judge Karas:

We represent the defendants. We write to request a pre-motion conference regarding our proposed motions for summary judgment and to dismiss. Plaintiff's core claims are for benefits under ERISA plans that provide that decisions by their Plan Administrators are "final and conclusive and binding." Under well-established precedent, the Plan Administrator's denial of benefits after a lengthy review cannot be disturbed unless it is arbitrary and capricious, a showing that cannot be made here. The claims against the remaining defendant benefit plans and WHX Corporation are also barred for the reasons set forth below.

### The Parties

Plaintiff Dennis Kelly was employed by defendant Handy & Harman ("H&H") until his discharge in September, 2005.

Defendant H&H is a diversified manufacturer based in Rye, New York. Defendant WHX Corporation ("WHX") is its parent corporation.

The remaining seven defendants are benefit plans for employees of WHX and/or H&H. The core claims are against two plans maintained for H&H senior executives, the Handy & Harman ("H&H") Supplemental Executive Retirement Plan ("SERP") and the H&H Executive Post-Retirement Life Insurance Program ("Life Insurance Program"). The remaining plan defendants are (i) the WHX Incentive and Non-Qualified Stock Option Plan ("Option Plan"), (ii) the H&H/WHX Pension Plan ("Pension Plan"), (iii) the H&H Post-Retirement Medical Plan ("Medical Plan"), (iv) the H&H Long-Term Incentive Plan ("Incentive Plan"), and (v) the H&H Management Incentive Plan ("Bonus Plan").

### The SERP Claim

Plaintiff's most significant claim seeks to recover approximately $4 million allegedly due under the SERP. On September 27, 2006, the SERP's Claim Administrator denied plaintiff's claim in a nine page letter, attaching certain relevant documents and an index of the many documents that he relied upon. On November 6, 2006, H&H produced to Mr. Kelly over ten thousand pages of documents and a disc of emails, which constitute the administrative record in his case, and a ten-page letter responding to his

744 BROAD STREET, 16TH FLOOR
NEWARK, NEW JERSEY 07102
TELEPHONE: 973.331.7300
FACSIMILE: 973.331.7922

March 7, 2008
Page 2

contentions. Plaintiff appealed the Claim Administrator's denial on December 11, 2006. H&H's Plan Administrator affirmed the Claim Administrator's decision. Its ruling is reflected in a detailed response to the contentions raised in plaintiff's appeal letter. The decisions of the Plan and Claim Administrator are annexed to the Answers filed by the SERP.

The SERP provides, "The decision or action of the [Plan Administrator] in respect of any questions arising out of or in connection with the administration, interpretation and application of the Supplemental Plan and the rules and regulations thereunder *shall be final and conclusive and binding* upon all persons having any interest therein. (emphasis added)

When an ERISA plan vests the administrator with "final and binding" discretion to determine a participant's eligibility to receive benefits, federal courts give deference to a plan administrator's decision, which will be enforced unless plaintiff demonstrates that it is arbitrary and capricious or can show that the administrator's decision was actually influenced by a conflict of interest. *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000), *quoting Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996). *See also Harrison v. Metropolitan Life Ins. Co.*, 417 F. Supp. 2d 424, 435-36 (S.D.N.Y. 2006) (arbitrary and capricious standard applies unless administrator was actually influenced by conflict); *Lee v. Aetna Life & Cas. Ins. Co.*, No. 05 Civ. 2960, 2006 WL 345854, at *2 (S.D.N.Y. Feb. 13, 2006). An administrator's decision may only be overturned "if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pulvers*, 210 F.3d at 92, *quoting Pagan v. Nynex Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). If there is more than one reasonable interpretation, the administrator's choice of a reasonable interpretation controls. *Pulvers*, 210 F.3d at 92-93.

Courts routinely enforce the determinations of Plan Administrators on summary judgment. *Francia v. Wonderoast, Inc. Profit Sharing Plan*, No. 92-CV-7908, 1995 WL 625705, *7-*8 (W.D.N.Y. Oct. 19, 1995) ("'the lawful discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness.'") (citations omitted). To do otherwise, would transform the Court into "substitute plan administrators, contrary to Congress' intention." *C.N.S. Inc. v. Connecticut Gen. Life Ins. Co.*, 9 F. Supp. 2d 194, 196 (E.D.N.Y. 1998).

Plaintiff's allegations of a conflict are insufficient as a matter of law. *Cook v. New York Times Co. Long-Term Disability Plan*, No. 02 Civ. 9154, 2004 WL 203111, at *3 (S.D.N.Y. Jan. 30, 2004). *See also Fay v. Oxford Health Plan*, 287 F.3d 96, 109 (2d Cir. 2002) (even where there is inherent conflict because plan administrator also pays the claims, plaintiff must show the conflict actually governed the administrator's decision). Further, a showing that a plan is unfunded and that the administrators were also employees of the plan sponsor is insufficient for plaintiff to show that there was an actual conflict, and that the *de novo* standard should apply. *See Sullivan*, 82 F.3d at 1255; *Pagan*, 52 F.3d at 442.

<u>The Remaining Defendants</u>

Life Insurance Program – The review and appeal process for the SERP claim encompassed plaintiff's claim under the Life Insurance Program. The Plan Administrator's decision is again entitled to deference.

Plaintiff's claim under the Life Insurance Program also fails because plaintiff never appealed the benefits awarded under this program as inadequate. *Thomas v. Verizon*, No. 02 Civ. 3083, 2004 WL 1948753 (S.D.N.Y. Sept. 2, 2004) (summary judgment for defendant granted when plaintiff failed to appeal the denial of her claim).

568096-3

March 7, 2008
Page 3

WHX – It is undisputed that pursuant to WHX's bankruptcy filing in 2005, the Plan of Reorganization canceled the Merger Agreement, upon which plaintiff's indemnification claim is based. WHX's general discharge bars claims over pre-petition obligations. *In re Texaco Inc.*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995).

Option Plan  The Option Plan was also cancelled and annulled by WHX's bankruptcy filing. It held options to purchase WHX stock, which were wiped out in the reorganization.

Pension Plan – Plaintiff's claim is premature because he has not reached 60 years of age. The Pension Plan provided plaintiff with a Deferred Pension Application in 2006, which he never returned. More important, the Pension Plan has neither denied him benefits, nor asserted that he is not entitled to them. *Riley v. MEBA Pension Trust*, 452 F. Supp. 117 (S.D.N.Y. 1978) (finding that plaintiff has no vested right to pension benefits until he reached the retirement age).

Medical Plan – Plaintiff is not eligible for benefits under the Medical Plan since he was terminated prior to his retirement. Further, plaintiff is neither enrolled in this plan nor is he receiving pension payments, which are conditions of the plan, and is not eligible to receive benefits under it. *Caidor v. Chase Manhattan Bank*, No. 98 Civ. 5018, 2001 WL 311727 (S.D.N.Y. March 27, 2001) (granting summary judgment when plaintiff's condition did not satisfy the requirements of the plan).

Incentive Plan  Plaintiff has asserted a claim against the Incentive Plan, which was established to provide incentive benefits for employees who work over multi-year cycles. Plaintiff's Employment Agreement, however, provided that he could be terminated either with cause or without cause and, in either event, would have no entitlement to participation in the Incentive Plan benefits. More important, at time plaintiff was discharged, there was no Incentive Plan in place, the previous plan having expired in 2004.

Bonus Plan – In his Employment Agreement, plaintiff agreed to look to H&H for any claim related to his annual bonus in the event of a termination. Accordingly, no claim may be stated against the Bonus Plan.

Conclusion

For the reasons stated above, defendants SERP, Life Insurance Program, WHX, Option Plan, Pension Plan, and Medical Plan wish to move for summary judgment against plaintiff, and defendants Incentive Plan and Bonus Plan wish to move to dismiss against plaintiff and on the clear terms of the Employment Agreement referenced in the Complaint. Once these claims are resolved, plaintiff's sole claim against H&H will be a non-federal claim for breach of contract. Because no diversity exists, this claim too should be dismissed pursuant to 28 U.S.C. § 1367(c). Defendants respectfully request that Your Honor schedule a pre-motion conference.

Respectfully submitted,

Thomas J. Fleming

cc:    Les Corwin, Esq. (via fax)

568096-3

Exhibit B

# Greenberg Traurig

Leslie D. Corwin
Tel. (212) 801-3113
Fax (212) 801-6400
corwinl@gtlaw.com

March 12, 2008

**VIA FEDERAL EXPRESS**

Honorable Kenneth M. Karas
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601

Re:    **Kelly v. Handy & Harman et al., 08 CV 00163**

Dear Judge Karas:

We represent plaintiff Dennis Kelly ("Mr. Kelly") in the above-referenced matter and write in response to Defendants'[1] March 7, 2008 letter to the Court (the "March 7th Letter"), which purports to assert grounds for dismissing Mr. Kelly's claims before any discovery has been taken in this matter. As shown below, the proposed motions are legally and factually deficient because in deciding Mr. Kelly's benefits claims, Defendants' Plan Administrator suffered from serious conflicts of interest. Therefore, its decision denying Mr. Kelly's severance and benefits claims was arbitrary, capricious, and unreasonable. As a matter of law, the Administrator's tainted decision warrants no deference by the Court, and Mr. Kelly's claims should be reviewed and determined *de novo*.

### Mr. Kelly's Claims

Mr. Kelly is the former Vice President and Chief Financial Officer of H&H, where he worked for twenty years before his termination on September 15, 2005. Mr. Kelly seeks to recover termination benefits rightfully due him under his employment agreement with H&H, including ERISA and Benefit Plan payments Defendants wrongfully have withheld, and attorneys fees he needlessly has incurred in prosecuting this action.

---

[1]    Defendants in this action are Mr. Kelly's former employer, Handy & Harman ("H&H"), an industrial manufacturer; WHX Corporation ("WHX"), H&H's parent company; and various pension plans administrated pursuant to the Employee Retirement Income Security Act of 1974 (the "ERISA and Benefit Plans"), including: the August 1, 1998 H&H Supplemental Executive Retirement Plan (the "August 1998 SERP"); the H&H Executive Post-Retirement Life Insurance Program (the "H&H Life Insurance Program"); the H&H/WHX Pension Plan, the H&H Management Incentive Plan (the "Bonus Plan"); the H&H Long-Term Incentive Plan (the "Incentive Plan"); the 1991 Incentive and Non-Qualified Stock Option Plan (the "Option Plan"); and the H&H Post-Retirement Medical Plan (the "Medical Plan") (collectively, the "Defendants").

Honorable Kenneth M. Karas
March 12, 2008
Page 2

## Defendants' Conflicts of Interest Concerning the ERISA and Benefits Plans

The instant dispute originated in April 1998, when, following H&H's acquisition by WHX, H&H's then-President, Robert LeBlanc, asked Mr. Kelly and H&H's then-General Counsel, Paul Dixon ("Mr. Dixon"), to draft amendments to the company's January 1, 1998 Supplemental Executive Retirement Plan (the "January 1998 SERP"). Complying with Mr. LeBlanc's request, Mr. Kelly and Mr. Dixon created the August 1998 SERP, which H&H used from 1998 through 2005 in issuing benefit payments to unrelated H&H executives.[2]

Remarkably, after having used and relied upon the August 1998 SERP for nearly seven years, Defendants now have the temerity to argue that it was wrongfully drafted and implemented by Mr. Kelly without the knowledge of H&H or WHX, or their respective Boards or Plan fiduciaries. Such claims defy credibility and alone raise distinct fact issues for trial. The evidence will show that Defendants had serious conflicts of interest regarding the August 1998 and January 1998 SERPs, which were "unfunded" plans. In other words, H&H did not maintain reserves or funds to cover any benefit payments under these Plans, so any benefits payments arising from these Plans had to come from H&H's own general funds. This resulted in a direct cost to the Company whenever a benefit payment was made.

In March 2005, WHX declared bankruptcy. Soon thereafter, it began negotiations for an acquisition by Steel Partners II, L.P. ("Steel Partners"), a private investment partnership. During the course of these negotiations, WHX realized that an acquisition by Steel Partners would trigger change-in-control provisions in the August 1998 SERP, such that WHX (via H&H) would be required to make nearly $14.6 million in benefits payments to covered beneficiaries. This risked altering the valuation of the Company and scuttling the acquisition entirely.[3] In an effort to avoid this liability, WHX and H&H ironically retained law firm Olshan Grundman Frome Rozenweig & Wolosky LLP ("Olshan") -- who are Defendants' attorneys in this action -- to examine the August 1998 SERP. Not surprisingly, the report rendered by Olshan in or about May 2005 (the "Olshan Report") concluded that the August 1998 SERP was never properly adopted by the Boards of WHX and H&H.[4] Relying on the Olshan Report, Steel Partners acquired WHX's controlling interest in or about August 2005 and proceeded with its plans to cut costs by reducing or eliminating certain employee payments. As part of this plan, Mr. Kelly was terminated in September 2005 without prior notice. Defendants then refused to pay Mr. Kelly the benefits to which he is entitled under the ERISA and Benefits

---

[2]    H&H also disclosed the August 1998 SERP in filings with the SEC.

[3]    In an effort to avoid scuttling its acquisition by Steel Partners, we believe the August 1998 SERP Plan Administrator purposefully concealed the existence of the August 1998 SERP from the Bankruptcy Court.

[4]    Tellingly however, the Olshan Report also conceded that the Boards were aware of the August 1998 SERP amendment, discussed its substance more than once, and openly used and relied upon the August 1998 SERP from 1998 to 2005.

Honorable Kenneth M. Karas
March 12, 2008
Page 3

Plans.  Defendants' desire to further the acquisition of WHX by Steel Partners by refusing to pay Mr. Kelly the severance payments and benefits to which he is entitled under the ERISA and Benefit Plans constitutes an actual conflict of interest that we believe affected the decision of the Plan Administrator.

Defendants possess other conflicts of interest as well.  Two Claim Administrators for the August 1998 SERP, Louis Klein and Garen Smith, have been directors of WHX since 2002, and are members of the WHX Compensation Committee. These individuals -- who were involved in the September 2006 decision denying Mr. Kelly's benefits claim (*see* March 7th Letter, at 2-3) -- plainly have conflicting loyalties and duties to WHX and to SERP participants and beneficiaries under the Benefit Plans.  It is clear that in Mr. Kelly's case, the conflicted Messrs. Klein and Smith did not act as fiduciaries and solely in Mr. Kelly's interest in deciding his SERP claims. Accordingly, their determination that Mr. Kelly was not entitled to benefits was unreasonable, arbitrary, and plainly influenced by serious conflicts of interest.

For the foregoing reasons, the decisions of the tainted Plan Administrator in this case deserve no deference, and the Court should apply a *de novo* standard of review in deciding Mr. Kelly's claims.  *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (conflict of interest must be weighed as a "factor in determining whether there has been an abuse of discretion" where benefit plan gives discretion to administrator or fiduciary operating under conflict of interest); *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251 (2d Cir. 1996) (summary judgment properly denied where fact questions existed regarding the existence of a conflict of interest and the "effect of any such conflict on the Committee's choice of interpretation" of ERISA plan's language); *Mikrut v. Unum Life Ins. Co. of Am.*, Civ. Act. No. 3:03 cv 1714, 2006 WL 3791417, * 8 (D. Conn. Dec. 20, 2006) ("*De novo* review is also available if a plan administrator was influenced by a conflict of interest in denying benefits.") (citing *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000)).[5]

Respectfully submitted,

*Leslie D. Corwin*

Leslie D. Corwin

cc:   Thomas Fleming, Esq. (via e-mail)
      Mr. Dennis Kelly (via e-mail)

---

[5]      Contrary to Defendants' assertion on page two of the March 7th Letter, on December 11, 2006, Mr. Kelly properly appealed the enhanced benefits awarded under the H&H Life Insurance Program.  Moreover, prior to the March 7th Letter, Defendants never claimed that Mr. Kelly's appeal was insufficient.  Accordingly, they have waived any such claim.  Mr. Kelly likewise disputes Defendants' other contentions regarding his eligibility under the ERISA and Benefit Plans (*see* March 7th Letter at 2-3).  We will address these flawed assertions in detail in submissions to the Court in opposition to Defendants' proposed motions.

Exhibit C

# Greenberg Traurig

Leslie D. Corwin
(212) 801-3113
corwinl@gtlaw.com

October 20, 2006

<u>**VIA EMAIL AND U.S. MAIL**</u>

Thomas J. Fleming, Esq.
Olshan Grundman Frome
   Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

Re:    <u>*Paul E. Dixon and Dennis C. Kelly: Claims for Benefits*</u>

Dear Mr. Fleming:

We have reviewed September 21, 2006 letters from Louis Klein to Messrs. Dixon and Kelly, the September 21, 2006 letter from Hal R. Lieberman addressed to you, and the September 25, 2006 letter from Margolin, Winer & Evens LLP ("MWE") to Mr. Klein. Each of these letters reflects various opinions formed based on various documents which are in the possession of Handy & Harman ("H&H") or its agents. As noted in the letters of Mr. Klein, Messrs. Dixon and Kelly "are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to [their] claim[s] for benefits." Accordingly, we hereby request that you deliver the following documents to my attention promptly, so that Messrs. Dixon and Kelly are able to prepare their appeal of Handy & Harman's denial of their claims within the allotted time frame:

Documents Requested:

1. All documents cited in Exhibit B to the September 21, 2006 letters of Louis Klein, and all documents cited in or referred to in any other part of those letters.

2. All documents reviewed, relied upon or considered by H&H or Mr. Klein with respect to the claims of Messrs. Dixon and Kelly.

3. The curriculum vitae of Mr. Klein.

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

CHICAGO

DALLAS

DELAWARE

DENVER

FORT LAUDERDALE

HOUSTON

LAS VEGAS

LOS ANGELES

MIAMI

MILAN*

NEW JERSEY

NEW YORK

ORANGE COUNTY, CA

ORLANDO

PHILADELPHIA

PHOENIX

ROME*

SILICON VALLEY

TALLAHASSEE

TOKYO*

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

ZURICH

*Strategic Alliances
Tokyo Office Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | Met Life Building | 200 Park Avenue | New York, NY 10166 | Tel 212.801.9200 | Fax 212.801.6400

www.gtlaw.com

Thomas J. Fleming, Esq.
October 20, 2006
Page 2

———————

4. All documents or communications reflecting or relating to the decision made by H&H or WHX to retain Mr. Klein as Claim Administrator for the H&H benefit plans.

5. All versions of SERP plans of H&H or WHX that have been in effect at any time between 1998 to the present, and drafts thereof.

6. All documents reflecting or referring to the June 2006 rules adopted by the H&H SERP Plan and the H&H Life Insurance Program as set forth in the September 27, 2006 Letters of Mr. Klein.

7. All documents showing or relating to the corporate structure of H&H and WHX.

8. All documents reflecting or referring to the corporate governance of H&H and WHX, including any certificates of incorporation, bylaws, or other corporate governance documents.

9. All minutes of any meeting of the Board of Directors or any Committee of H&H, including drafts thereof, between 1998 to the present.

10. Any financial data supplied to the Board of Directors or any Committee of H&H, including any notes thereof, relating to the H&H SERP.

11. All minutes, notes, or records, including handwritten notes, of any meeting of the Board of Directors or any Committee of H&H, which took place in July 2005.

12. All minutes of any meeting of the Board of Directors or any Committee of WHX, relating or referring to Messrs. Dixon or Kelly, or any benefit plan of H&H, including the H&H SERP, and the financial data supplied to the WHX Board of Directors or any Committee thereof regarding the H&H SERP, including any notes thereof.

13. All minutes of any meeting of the Board of Directors or any Committee of WHX, regarding the WHX SERP and the financial data supplied to the WHX Compensation Committee regarding the WHX SERP, including any notes thereof.

14. All drafts of the WHX SERP Plan.

Thomas J. Fleming, Esq.
October 20, 2006
Page 3

_____

15. All merger and/or acquisition documents relating to H&H, from 1998 to the present, including any merger and/or acquisition documents relating to the H&H transaction with WHX in 1998, and the transaction with Steel Partners in 2005.

16. All documents relating to negotiations between H&H and WHX and Steel Partners, including but not limited to any documents reflecting H&H or WHX Plans.

17. Any agreements between H&H and any of Messrs. Lieberman, Tabin, Hynes and LeBlanc.

18. Any agreements between H&H or WHX and Mr. LeBlanc entered into subsequently to Mr. LeBlanc's departure from H&H in February 2003.

19. The curriculum vitae of Mr. Lieberman.

20. All documents showing Mr. Lieberman's qualification as an "expert" to render an "Ethics Opinion."

21. All communications between Olshan Grundman Frome Rosenzweig & Wolosky LLP or H&H (including Mr. Klein) and Mr. Lieberman regarding Messrs. Dixon or Kelly, or any H&H benefits or retirement Plans.

22. All documents in the possession, custody or control of Mr. Lieberman relating to Messrs. Dixon or Kelly, or any H&H benefits or retirement Plans.

23. All documents which Mr. Lieberman reviewed, considered, or relied upon in rendering his "Ethics Opinion" dated September 21, 2006.

24. All documents forming the basis of the "Assumed Facts" in Mr. Lieberman's "Ethics Opinion." (9/21/06 Lieberman Letter at pages 1-5.)

25. All documents showing MWE's qualification to render its opinion.

26. All communications between you or H&H (including Mr. Klein) and MWE regarding Messrs. Dixon or Kelly.

27. All documents in the possession, custody or control of MWE relating to Messrs. Dixon or Kelly.

Thomas J. Fleming, Esq.
October 20, 2006
Page 4

28. All documents which MWE reviewed, considered, or relied upon in rendering its opinion dated September 25, 2006.

29. All documents forming the basis of the schedules attached as exhibits to the September 25, 2006 letter of MWE.

30. Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to any person in the Human Resources departments of H&H, WHX, and Steel Partners, including but not limited to communications with Messrs. Dixon or Kelly, referring or relating to Messrs Dixon and Kelly, any of the Plans at issue, the SERP Plan or the MIP Plan.

31. Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to Mr. Marciniak to or from any executive or director of H&H, WHX, or Steel Partners, regarding Messrs. Dixon or Kelly, including but not limited to communications with Messrs. Dixon or Kelly, relating to any of the Plans at issue including but not limited to the SERP Plan or the MIP Plan, or the termination of Messrs. Dixon or Kelly.

32. All documents and communications relating to the termination of Messrs. Dixon and Kelly.

33. Attorney invoices to H&H or WHX from 1998 to the present relating to the Plans at issue, including but not limited to the H&H or WHX SERP Plan and the H&H or WHX MIP Plan.

34. Invoices and reports of any actuary, including but not limited to Watson Wyatt from 2004 to the present relating to the Plans at issue, including but not limited to the SERP Plan and the MIP Plan.

35. Documents reflecting or relating to any payments made to any of Messrs. Tabin, Trangucci, Arnold, Murphy pursuant to any H&H, WHX or Steel Partners benefits plan.

36. Agreements between H&H and any of its directors or executives entered into between September 2005 to the present which relate in any way to Messrs. Dixon or Kelly.

Thomas J. Fleming, Esq.
October 20, 2006
Page 5

---

37. All documents relating to Mr. Dixon's underlying pension benefits, payment of Mr. Dixon's pension benefits, or any decisions taken with respect to a decision to pay or not to pay Mr. Dixon's pension benefits.

Further, we request the interviews of Messrs Klein and Lieberman, whose opinion as "experts" H&H has put at issue, upon our receipt of these documents. Please provide us with copies of these documents as soon as possible, but in no event later than 14 days from the date of this letter so that we can conduct our interviews of Messrs. Klein and Lieberman, and prepare our appeal of H&H's denial of claims.

Yours Truly,

Leslie D. Corwin

cc:  Paul E. Dixon
     Dennis C. Kelly
     Sophia Tsokos
     Jeffrey Mamorsky, Esq.

Exhibit D

# O L S H A N

O L S H A N    G R U N D M A N    F R O M E    R O S E N Z W E I G    &    W O L O S K Y    L L P

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212-451-2213
EMAIL: TFLEMING@OLSHANLAW.COM

November 6, 2006

**VIA PDF AND BY HAND**

Leslie D. Corwin
Greenberg Traurig, LLP
Met Life Building
200 Park Avenue
New York, NY 10166

Re:    Paul E. Dixon and Dennis C. Kelly: Claims for Benefits

Dear Mr. Corwin:

I have received your request for various documents in connection with Messrs. Dixon and

Kelly's benefits claims, and our responses to each request are set forth below. Our production of

documents is without prejudice to the position of Handy & Harman ("H&H") and that of the

Plan Administrators for each Plan, that much of this material is not relevant, within the meaning

of 29 C.F.R. § 2560.503-1(m)(8). We are providing you under separate cover documents that

have been number stamped 1-2889, HH 1-2897, and PA 1-5649 as well as a disc with emails

from Mr. Dixon's computer. Our responses below are subject to the general objections and

conditions set forth at the end of this letter.

<u>Responses to Specific Requests</u>

<u>Request No. 1</u>:    All documents cited in Exhibit B to the September 21, 2006 letters
of Louis Klein, and all documents cited in or referred to in any other part of those letters.

519194-1

NEW JERSEY OFFICE
2001 ROUTE 46 / SUITE 202
PARSIPPANY, NEW JERSEY 07054
TELEPHONE: 973.331.7200
FACSIMILE: 973.331.7222

November 6, 2006
Page 2

> Response:    By cover letter dated October 23, 2006, we provided a copy of the documents cited in Exhibit B to the September 21, 2006 letters of Louis Klein (the "Initial Decision Letters"), which is responsive to this Request in its entirety.

> Request No. 2:    All documents reviewed, relied upon or considered by H&H or Mr. Klein with respect to the claims of Messrs. Dixon and Kelly.

> Response:    The review was conducted by Mr. Klein as Claim Administrator. The responsive documents are those provided with his Initial Decision Letters, and those referenced in Exhibit B to the Initial Decision Letters.

> Request No. 3:    The curriculum vitae of Louis Klein.

> Response:    I enclose a c.v. for Mr. Klein (document no. PA 4893)

> Request No. 4:    All documents or communications reflecting or relating to the decision made by H&H or WHX to retain Mr. Klein as Claim Administrator for the H&H benefit plans.

> Response:    I have enclosed a copy of the Unanimous Written Consent appointing Mr. Klein to the H&H Board and to its Compensation Committee (documents nos. PA 5060-5062).

> Request No. 5:    All versions of SERP plans of H&H or WHX that have been in effect at any time between 1998 to the present, and drafts thereof.

> Response:    We believe that the H&H SERP dated January 1, 1998 is the only such Plan that has been in effect for H&H since 1998. We are providing you with all versions of the alleged plan dated August 1, 1998, including materials obtained from Jacobs Persinger & Parker. We are producing the WHX SERP Plan, event though it is not relevant. Neither Dixon, Kelly, nor any other H&H executive was a beneficiary under the WHX SERP Plan and the Claim Administrator did not review or consider the WHX SERP Plan.

519194-1

November 6, 2006
Page 3

**Request No. 6:**    All documents reflecting or referring to the June 2006 rules adopted by the H&H SERP Plan and the H&H Life Insurance Program as set forth in the September 27, 2006 Letters of Mr. Klein.

**Response:**    I have enclosed a copy of the Unanimous Written Consent adopting the rules (document nos. PA 5063-5072)

**Request No. 7:**    All documents showing or relating to the corporate structure of H&H and WHX.

**Response:**    This request is vague and seeks material that is not relevant.  WHX owns 100% of the shares of H&H, as set forth in WHX's last Form-10K on file with the SEC and available at www.SEC.gov. WHX is a publicly traded company; Steel Partners' Schedule 13D's are on file with the SEC and available at www.sec.org and they disclose its ownership of WHX.

**Request No. 8:**    All documents reflecting or referring to the corporate governance of H&H and WHX, including any certificates of incorporation, bylaws, or other corporate governance documents.

**Response:**    We are providing you with bylaws and certificates of incorporation for H&H (documents nos. 2703 – 2739) and, your request for "other corporate governance documents" is vague and we do not know what you are seeking.

**Request No. 9:**    All minutes of any meeting of the Board of Directors or any Committee of H&H, including drafts thereof, between 1998 to the present.

**Response:**    The request seeks material that is not relevant to the extent it seeks information in 2005 and 2006 or information unrelated to the benefit claims at issue.  We refer you to documents nos. 2175 – 2453 and to other copies of H&H Board minutes contained in the accompanying production, which include all minutes addressing whether to amend the H&H SERP dated January 1, 1998.

519194-1

November 6, 2006
Page 4

Request No. 10:    Any financial data supplied to the Board of Directors or any Committee of H&H, including any notes thereof, relating to the H&H SERP.

Response:    We do not believe that any financial data relating to the H&H SERP was supplied to the H&H Board after March 1, 1998 in connection with any decision to amend, modify or restate this Plan. We refer you to the Board minutes produced above.

Request No. 11:    All minutes, notes, or records, including handwritten notes, of any meeting of the Board of Directors or any Committee of H&H, which took place in July 2005.

Response:    There are no documents responsive to this request.

Request No. 12:    All minutes of any meeting of the Board of Directors or any Committee of WHX, relating or referring to Messrs. Dixon or Kelly, or any benefit plan of H&H, including the H&H SERP, and the financial data supplied to the WHX Board of Directors or any Committee thereof regarding the H&H SERP, including any notes thereof.

Response:    The request for all WHX Board minutes that (i) relate or refer to Mr. Dixon or Mr. Kelly or (ii) relate or refer to medical, bonus and other benefit plans, seeks material that is not relevant. We are providing you with all WHX Board and Committee minutes that discuss H&H benefit plans or the H&H SERP in 1998 and 1999. There are no Board Minutes after 1999 discussing possible changes to the H&H SERP.

Request No. 13:    All minutes of any meeting of the Board of Directors or any Committee of WHX, regarding the WHX SERP and the financial data supplied to the WHX Compensation Committee regarding the WHX SERP, including any notes thereof.

Response:    As stated above, the WHX SERP Plan is not relevant to the claims of Mr. Dixon or Mr. Kelly and we therefore decline to provide you with this material.

Request No. 14:    All drafts of the WHX SERP Plan.

Response:    As stated above, the WHX SERP Plan is not relevant to the claims of Mr. Dixon or Mr. Kelly and we therefore decline to provide you with this material.

519194-1

November 6, 2006
Page 5

Request No. 15:    All merger and/or acquisition documents relating to H&H, from 1998 to the present, including any merger and/or acquisition documents relating to the H&H transaction with WHX in 1998, and the transaction with Steel Partners in 2005.

Response:    We are providing you with the Merger Agreement and tender offer for the WHX's acquisition of H&H in 1998 (documents nos. PA 4939-5041) We are also providing you with the Plan of Reorganization and disclosure statement for the WHX bankruptcy which reflects what you refer to as "the transaction with Steel Partners." (document nos. PA 4894-4938)

Request No. 16:    All documents relating to negotiations between H&H and WHX and Steel Partners, including but not limited to any documents reflecting H&H or WHX Plans.

Response:    This requests seeks material that is not relevant, as it was neither reviewed nor considered by the Claim Administrator.

Request No. 17:    Any agreements between H&H and any of Messrs. Lieberman, Tabin, Hynes and LeBlanc.

Response:    We are providing you with Mr. Lieberman's retainer agreement and Mr. LeBlanc's Employment Agreement, as well as materials regarding his separation, and the employment agreements for Mr. Tabin and Mr. Hynes (documents nos. 192-229, 2613-2702 2794-2803, PA 4858-4859).

Request No. 18:    Any agreements between H&H or WHX and Mr. LeBlanc entered into subsequently to Mr. LeBlanc's departure from H&H in February 2003.

Response:    There are no such agreements, excluding the documents provided in response to Request No.17.

Request No. 19:    The curriculum vitae of Mr. Lieberman.

519194-1

November 6, 2006
Page 6

Response:    I have enclosed a copy of Mr. Lieberman's curriculum vitae (document

nos. PA 4855-4857).

Request No. 20:    All documents showing Mr. Lieberman's qualification as an
"expert" to render an "Ethics Opinion."

Response:    We refer you to Mr. Lieberman's curriculum vitae for his qualifications.

Request No. 21:    All communications between Olshan Grundman Frome
Rosenzweig & Wolosky LLP or H&H (including Mr. Klein) and Mr. Lieberman regarding
Messrs. Dixon or Kelly, or any H&H benefits retirement Plans.

Response:    This request does not seek relevant materials.  This request also seeks

information that is protected by the attorney client privilege and as attorney work product.

Request No. 22:    All documents in the possession, custody, or control of Mr.
Lieberman relating to Messrs. Dixon or Kelly, or any H&H benefits retirement Plans.

Response:    There are no responsive documents to this request because Mr. Lieberman

rendered his opinion based on the assumed facts presented in his report.

Request No. 23:    All documents which Mr. Lieberman reviewed, considered, or
relied upon in rendering his "Ethics Opinion" dated September 21, 2006.

Response:    There are no responsive documents that pertain to the H&H plans to this

request because Mr. Lieberman rendered his opinion based on the assumed facts presented in his

report.

Request No. 24:    All documents forming the basis of the "Assumed Facts" in Mr.
Lieberman's "Ethics Opinion."  (9/21/06 Lieberman Letter at pages 1-5).

Response:    The documents responsive to this request are identified in Exhibit B to the

Initial Decision Letters which have already been produced and are in your possession.  The

documents also include other materials provided to you herewith.

519194-1

November 6, 2006
Page 7

Request No. 25:    All documents showing MWE's qualification to render its opinion.

Response:    We are providing you with C.V.'s for Howard Fielstein and John Bonora of MWE as well as a summary of MWE's qualifications as a forensic examiner (documents nos. 4843-4854).

Request No. 26:    All communications between you or H&H (including Mr. Klein) and MWE regarding Messrs. Dixon or Kelly.

Response:    H&H's written communications, if any, were by its general counsel. This request therefore seeks information that is protected by the attorney client privilege and as attorney work product.

Request No. 27:    All documents in the possession, custody or control of MWE relating to Messrs. Dixon or Kelly.

Response:    We are providing you with the work papers by MWE (documents nos. 4832-4842) and have previously provided you with the MWE report and its attachments.

Request No. 28:    All documents which MWE reviewed, considered or relied upon in rendering its opinion dated September 25, 2006.

Response:    We are providing this material to you as document nos. PA 1-4842, PA 5165-5649 and a disc containing Mr. Dixon's emails.

Request No. 29:    All documents forming the basis of the schedules attached as exhibits to the September 25, 2006 letter of MWE.

Response:    We are providing this material to you as documents PA 1-4842, PA 5165-5649 and a disc containing Mr. Dixon's emails.

Request No. 30:    All documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to any person in the Human Resources departments of H&H, WHX, and Steel

519194-1

November 6, 2006
Page 8

Partners, including but not limited to communications with Messrs. Dixon or Kelly, referring or relating to Messrs. Dixon or Kelly, any of the Plans at issue, the SERP Plan or the MIP Plan.

    <u>Response</u>:    This request is objectionable to the extent that is seeks material that is not relevant, such as all communications regarding the SERP Plan, the MIP Plan or the Plans at issue, regardless whether reviewed or considered by the Claim Administrator or bear on Dixon or Kelly's claim. We are producing all relevant materials responsive to this request within the overall document production; we are also providing you with the personnel files for each of Mr. Dixon and Mr. Kelly.

    <u>Request No. 31</u>:    Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to Mr. Marciniak to or from any executive or director of H&H, WHX, and Steel Partners, regarding Messrs. Dixon or Kelly, relating to any of the Plans at issue including but not limited to the SERP Plan or the MIP Plan, or the termination of Messrs. Dixon or Kelly.

    <u>Response</u>:    We refer you to our response to Request No. 30.

    <u>Request No. 32</u>:    All documents and communications relating to the termination of Messrs. Dixon and Kelly.

    <u>Response</u>:    The request seeks material that is not relevant because this material was not considered or reviewed by the Claim Administrator. The documents produced herewith may be responsive to this request in part.

    <u>Request No. 33</u>:    Attorney invoices to H&H or WHX from 1998 to the present relating to the Plans at issue, including but not limited to the H&H or WHX SERP Plan and the H&H or WHX MIP Plan.

    <u>Response</u>:    We are providing you with copies of bills from Jacobs Persinger and Parker ("JPP") the 1998 to 2003, docs no. PA 4860-4892. JPP was the law firm with primary, if not exclusive, responsibility for legal aspects of the H&H SERP and Executive Post-Retirement Life Insurance Program from 1998 through 2003.

519194-1

November 6, 2006
Page 9

> Request No. 34:    Invoices or reports of any actuary, including but not limited to Watson Wyatt from 2004 to the present relating to the Plans at issue, including but not limited to the SERP Plan and the MIP Plan.

> Response:    Your request seeks material that is not relevant, as to the extent it was not considered or reviewed by the Claim Administrator.  We are nonetheless providing you with (i) the files that we received from Watson Wyatt in 2005 regarding its work on the SERP (document nos. 1153 – 1974) and (ii) all Towers Perrin's material that is relevant to the claims of Mr. Dixon and Mr. Kelly.  Your blanket request for all of Towers Perrin's invoices and reports concerning the H&H SERP dated January 1, 1998 seek material that is not relevant.

> Request No. 35:    Documents reflecting or relating to any payments made to any of the Messrs. Tabin, Trangucci, Arnold, Murphy pursuant to any H&H, WHX or Steel Partners benefits plan.

> Response:    This request seeks material that is not relevant for several reasons.  Payments under WHX or Steel Partners benefit plans are not relevant to Mr. Dixon or Mr. Kelly's claim under the two H&H Plans at issue.  The benefit payments for medical costs and MIP bonuses to these individuals are also not relevant.  There have been no payments to any of these individuals under H&H benefit plans at issue.

> Request No. 36:    Agreements between H&H and any of its directors or executives entered into between September 2005 to the present which relate in any way to Messrs. Dixon or Kelly.

> Response:    This request is unclear.  We are providing you with certain agreements, (document nos. 5079-510T) that H&H entered into as a direct result of Dixon's misconduct.  These appear to be the documents sought in this request.

> Request No. 37:    All documents relating to Mr. Dixon's underlying pension benefits, payment of Mr. Dixon's pension benefits, or any decisions taken with respect to a decision to pay or not pay Mr. Dixon's pension benefits.

519194-1

November 6, 2006
Page 10

<u>Response:</u>     Mr. Dixon has made a request for benefits under the WHX/H&H Pension

Plan, which is being processed in the ordinary course.  The Claim Administrator is not charged

with this Pension Plan and has played no part in its deliberations.  This request is therefore

improper and should be directed to the Pension Plan.

<u>General Objection and Conditions</u>

1.     We are producing attorney time records which may contain sensitive, confidential

information.  We are doing so with the understanding that its production will not be deemed a

waiver of any applicable privilege and that for all matters unrelated to the H&H SERP or Life

Insurance Plan, we may later redact these time records.

2.     Our responses are subject to and without waiver of the attorney client privilege or

work product protections.

3.     We reserve the right to amend or supplement the above responses.

4.     To the extent the production includes compensation information that is not

publicly known, all such information must be held in confidence and may only be used in

connection with any appeal or ensuing litigation.

Sincerely,

Thomas J. Fleming

cc:     Louis Klein

519194-1

Exhibit E

# O L S H A N
O L S H A N   G R U N D M A N   F R O M E   R O S E N Z W E I G   &   W O L O S K Y   L L P

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212-451-2213
EMAIL: TFLEMING@OLSHANLAW.COM

November 8, 2006

*By Federal Express*
Leslie D. Corwin
Greenberg Traurig, LLP
Met Life Building
200 Park Avenue
New York, NY 10166

Re:   Paul E. Dixon and Dennis C. Kelly: Claims for Benefits

Dear Mr. Corwin:

I enclose additional documents, which we have number stamped PA 5650 to 6035, in response to your request. These materials are responsive to Requests No. 30 and 31, among others and are the "personnel files" for each of Mr. Dixon and Mr. Kelly, as maintained by the Handy & Harman's H.R. department and Mr. Marciniak. I also enclose Schedule 13D's filed by Steel Partners which are responsive to Request Nos. 7 and 15.

My letter dated November 6 neglected to respond to your request for interviews of Louis Klein and Hal Lieberman. Please be advised that under the rules adopted by each of the Plans, there is no provision for conducting interviews or similar type discovery. Nor is any such provision required by the Employee Retirement Income Security Act or any of its regulations. If you have authority to the contrary, please share it with me as soon as possible.

Sincerely,

Thomas J. Fleming

*Enclosure*

520301-1

NEW JERSEY OFFICE
2001 ROUTE 46 / SUITE 202
PARSIPPANY, NEW JERSEY 07054
TELEPHONE: 973.335.7400
FACSIMILE: 973.335.8018

### *INDEX OF DOCUMENTS*
### *Document Nos .PA 5650 to PA 6035*

I..    Letter dated November 6, 2006 to Leslie Corwin from Thomas J. Fleming with additional documents in response to Requests No. 7. 15, 30 and 31 and response to request for interviews with Louis Klein and Hal Lieberman.

II.    Enclosed documents

    A.    Schedule 13D filed with the SEC by Steel Partners dated July 29, 2005.

    B.    Schedule 13D filed with SEC by Street Partners dated August 23, 2005.

III.    **DENNIS C. KELLY Personal File**  includes, among other documents

    A.    Benefit Statements for WHX Pension Plan and H&H Employee Benefit Programs.

    B.    Withdrawal activity from H & H Savings Plan.

    C.    H&H Savings Plan Loan application and Promissory Note.

    D.    H&H Savings Plan Beneficiary Designation Form

    E.    H&H Savings Plan Total Distribution Form requested transfer of 100% of account balance

    F.    COBRA Qualifying Event Form indicating Termination date 9/15/2005.

    G.    Letter from H&H dated 10/7/2005 re: status of benefits as a result of termination.

    H.    Standard Life Insurance Co of NY  information re: conversion of group life to individual coverage.

    I.    WHX Corp. Code of Ethics and Conflicts of Interest policy statements signed 3/6/2003, 9/20/01, 11/12/98 and 9/25/92.

    J.    Termination Letter date 9/15/05 signed on behalf of H& H (signature is illegible).

    K.    Various salary history/merit increase documents from  hire date 9/1/85 to termination.

III.    **PAUL E. DIXON Personnel File**  - includes among other documents,

    A.    Benefits Statements from WHX Pension Plan H&H Pension Program for 2005, 2004, 2002, revised 2002, 2001 and 2000.

**Dixon Kelly Matter** _____ **page 2**
**Index of documents PA 5650 to PA 6035**

B.    H&H Savings Plan enrollment form.

C.    H&H Savings Plan Beneficiary Designation Form.

D.    H&H Savings Plan Total Distribution Form - requested transfer of 100% of account balance.

E.    Letter dated October 7, 2005 advising Dixon of status of his benefits with respect to Group and Life Insurance and 401K Plan.

F.    H&H Inter- Office Memo dated 12/16/97 re:  Post Retirement Medical Benefits.

G.    H&H Business Code of Ethics policy signed 10/24/92; WHX Corp. Conflicts of Interest policy signed 3/7/03;  WHX Corp Code of Ethics signed 3/7/03; WHX Corp. Code of Ethics and Conflicts of Interest signed 9/20/01 and 6/12/00 and 10/30/98.

H..    Letters concerning retirement benefits

    1)  Letter dated 3/28/06  from H&H Corporate Director of Benefits to P. Dixon re: pension benefits.

    2)  Letter dated 1/26/06 from P.Dixon to  H&H HR re: WHX Pension Plan early retirement benefits.

    3)  Letter dated December 30, 2005 from H&H HR to P. Dixon re: retirement benefits.

    4)  Letter dated December 15. 2005 re: retirement forms.

I.    Termination letter dated September 15, 2005 from H&H , signature not legible.

J.    Resume of Paul E. Dixon as of 1991.

K.    Various salary history/merit increases documents from hire date to termination.