# O L S H A N

O L S H A N   G R U N D M A N   F R O M E   R O S E N Z W E I G   &   W O L O S K Y   L L P

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212.451.2234
EMAIL: RSADOWSKI@OLSHANLAW.COM

May 23, 2008

<u>BY FEDERAL EXPRESS</u>

Hon. Kenneth M. Karas
United States District Judge
United States District Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601

Re:    <u>Kelly v. Handy & Harman et al., 08 Civ. 00163 (KMK)</u>

Dear Judge Karas:

We write on behalf of Handy & Harman *et al.,* the Defendants in the above-referenced action in response to Plaintiff Dennis Kelly's ("Plaintiff") letter dated May 16, 2008 ("May 16 Letter"), (1) requesting leave to have additional discovery from Defendants before Defendants move for partial summary judgment; and (2) reasserting that multiple Defendants named in this action are proper defendants who should remain in this action, with the exception of the Incentive and Non-Qualified Stock Option Plan, which Plaintiff now concedes is not a proper defendant. However, Plaintiff should also dismiss his claims against WHX, the H&H Life Insurance Plan, the H&H/WHX Pension Plan, the Medical Plan, the Bonus Plan, and the H&H Long-Term Incentive Plan. Because Plaintiff has failed to establish good cause to conduct discovery beyond the administrative record, his request for additional document production and depositions should be denied.

Plaintiff has received all of the discovery that he is entitled to under ERISA. Defendants have produced the administrative record to Plaintiff as well as additional records that Plaintiff requested. That record contains 11,717 pages of documents. Despite this comprehensive production, which includes all records submitted to, considered by, or relied upon by the Plan Administrator and Claim Administrator, Plaintiff demands additional documents not relevant to his claim, documents already in Plaintiff's possession, and documents that do not exist. In short, Defendants have already produced to Plaintiff all the documents to which he is entitled and Plaintiff fails to make any effort to establish why additional discovery is necessary.

In addition to his requests for irrelevant documents, Plaintiff also seeks the deposition of three individuals. Plaintiff, however, has failed to show cause why the depositions of these particular individuals would advance any aspect of his claim for benefits.

NEW JERSEY OFFICE
744 BROAD STREET, 16TH FLOOR
NEWARK, NEW JERSEY 07102
TELEPHONE: 973.331.7200
FACSIMILE: 973.331.7222

Finally, Plaintiff asserts, without support, that no attorney client privilege attaches to the documents withheld from disclosure. Plaintiff is wrong; the attorney client privilege attaches to communications involving the "top hat" benefits plan at issue here. Because all of Plaintiff's claims for additional discovery are baseless, the case should proceed on the administrative record as it stands.

## A.    The Court's Review Is Limited to the Administrative Record

In an action reviewing a denial of benefits under ERISA under an arbitrary and capricious standard, "a reviewing court may not look beyond the administrative record." *Lane v. The Hartford,* No. 06 Civ. 3931, 2006 WL 3292463, at *2 (S.D.N.Y. Nov. 14, 2006) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995)). "The rationale is that Congress did not intend that federal district courts would function as substitute plan administrators." *Id.* (citing *Miller*). "Thus, discovery is typically limited in ERISA cases to promote the goal of speedy and inexpensive litigation." *Id.*

The rules governing the procedures for document production in connection with claims for benefits by participants and beneficiaries of the type of plan at issue here are tailored to provide for efficient litigation. *See* 29 C.F.R. § 2560.503-1. On appeal from an adverse benefit determination, the claimant . . . "shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, records, or other information is **relevant** to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section." 29 C.F.R. § 2560.503-1(h)(2)(iii) (emphasis added). Paragraph (m)(8) provides in pertinent part:

A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information.

(i)    Was relied upon in making the benefit determination;

(ii)    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; . . .

29 C.F.R. § 2560.503-1(m)(8)(i), (ii), (iii). In accordance with ERISA procedures, Defendants have provided Plaintiff with all the relevant documents as required.

## B.    Absent a Good Cause Showing No Discovery Is Allowed

Limited discovery beyond the administrative record "may be allowed, however, where a plaintiff shows good cause for the court to consider additional evidence outside the administrative record, such as when there is a basis for believing that a plan administrator may have had a conflict of interest." *Id.* However, "[e]ven upon a showing of good cause, whether to allow discovery beyond the administrative record is within the reviewing court's discretion." *Id.* (citing *Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 294 (2d Cir. 2004). Illustrative of the necessary good cause showing is *Schalit v. Cigna Life Ins. Co. of N.Y.*, No. 07 Civ. 0476,

2007 WL 2040587 (S.D.N.Y. July 12, 2007). In *Schalt*, the court allowed only limited discovery focused solely on determining whether the administrative record is complete because the summary plan description had not been included in the administrative record. *Id.* at *3. Other discovery was not permitted because the plaintiff did not "make clear what additional evidence is sought, and if it has any 'reasonable chance' of satisfying the good cause requirement, justifying discovery outside the record." *Id.*

It is clear that some factual showing must be made before discovery outside the administrative record is allowed and any pretrial discovery should be taken with an eye toward the "good cause standard." *Porter v. Prudential Ins. Co. of America*, No. 05 Civ. 6113 (KMK)(RLE), 2006 WL 2038457 (S.D.N.Y. July 18, 2006), motion for reconsideration denied, 2006 WL 2242770 (S.D.N.Y. Aug. 2, 2006). In *Porter*, the court denied the discovery sought because plaintiff "has not yet been able to provide any factual support for allegations of impropriety which could support discovery outside of the administrative record." *Id.*, *2. *Compare e.g., Samedy v. First Unum Life Ins. Co. of America*, No. 05-CV-1431, 2006 WL 624889 (E.D.N.Y. Mar. 10, 2006) (court permitted a deposition of defendant's representative, limited to three hours and to the conflict of interest issues, when plaintiff submitted an affidavit of a former employee who claimed she had been pressured to deny claims, and a report by insurance examiners that noted concerns with affiliates of defendant's claims handling process).

Here, Plaintiff makes no showing whatsoever for why discovery is necessary. Instead, Plaintiff states "Mr. Kelly can make a similar showing of relevance and probative value for each of the above Requests . . ." May 16 Letter at 3. Plaintiff never makes that showing. Plaintiff only asserts the conclusion that the Claim Administrator is "biased" and the Plan Administrator is "similarly conflicted." *Id.* at 4. Plaintiff's reliance on *Harrison v. Metropolitan Life Ins. Co.*, 417 F. Supp.2d 424 (S.D.N.Y 2006) does not help Plaintiff. In *Harrison*, the plaintiff at least identified the conflict as the administrator's potential liability for the administrator's failure to intervene in response to the claimant's deceased husband's mental deterioration, when emotional trauma from the World Trade Center attack allegedly caused him to kill himself and two co-workers. *Id.* at 429. Here, unlike in *Harrison*, Plaintiff's bald assertions of conflict are insufficient.

## C.   Plaintiff Is Not Entitled to Documents Beyond the Administrative Record

Instead of setting forth the necessary good cause showing why additional discovery is necessary, Plaintiff attached an Appendix to the May 16 Letter summarizing which of his thirty-seven Requests for documents that he believes should have supplemental responses. Taking Plaintiff's Requests in numerical order, it is clear that Defendants have provided Plaintiff with everything, and more, that Plaintiff is entitled to.

**Request No. 9:** All minutes of any meeting of the Board of Directors or any committee of H&H, including drafts thereof between 1998 to the present.

In response to Request No. 9, Defendants produced 278 pages of H&H Board meeting minutes, which are all of the minutes addressing whether to amend the H&H SERP dated January 1, 1998, and which are the only documents remotely relevant to Mr. Kelly's claim. *See* November 6,

May 23, 2008
Page 4

2006 Letter to Leslie Corwin attached hereto as Ex. A at 10-11 (Request No. 9 and Response).
Plaintiff asserts no good cause for the production of ten years of Board meeting minutes that do
not address the H&H SERP.

>    **Request No. 12:**  All minutes of any meeting of the Board of Directors or any Committee
>    of WHX, relating or referring to Messrs. Dixon or Kelly, or any benefit plan of H&H,
>    including the H&H SERP, and the financial data supplied to the WHX Board of Directors
>    or any Committee thereof regarding the H&H SERP, including any notes thereof.

In response to Request No. 12, Defendants provided Plaintiff with all WHX Board and
Committee minutes that discuss H&H benefits plans or the H&H SERP in 1998 and 1999.  There
are no Board Minutes after 1999 discussing possible changes to the H&H SERP.  *See* Ex. A at 4
(Request No. 12 and Response). The request for all WHX Board minutes that relate or refer to
Mr. Dixon, Mr. Kelly or to any other benefit plans are not relevant to Plaintiff's claims.

As reiterated in the Appendix to the May 16 Letter, Requests No. 13 and 14 are simply
not the same document requests that are set forth in Plaintiff's October 20, 2006 request.
Request No. 13 as originally posed by Plaintiff states:

>    **Request No. 13:**  All minutes of any meeting of the Boards of Directors or any
>    Committee of WHX, regarding the **WHX** SERP and the financial data supplied to the
>    WHX Compensation Committee regarding the **WHX** SERP, including any notes thereof
>    (emphasis added).

*See* Ex. A at 4.  In the Appendix to the May 16 Letter, Plaintiff has altered Request No. 13 to
render it a request for completely different information.  The Appendix states:

>    Request No. 13:  All minutes of any meeting of the Board of Directors or any Committee
>    of WHX, regarding the **[August 1998]** SERP and the financial data supplied to the WHX
>    Compensation Committee regarding the **[August 1998]** SERP, including any notes
>    thereof (emphasis added).

*See* May 16 Letter, Appendix at 10.  As Plaintiff knows, his claim for benefits was under the
Handy & Harman SERP, not the WHX SERP, since he was not an employee of WHX.
Accordingly, in response to Plaintiff's original Request No. 13, Defendants properly responded
as follows:

>    As stated above [in response to Request No. 5], the WHX SERP Plan is not relevant to
>    the claims of Mr. Dixon or Mr. Kelly and we therefore decline to provide you with this
>    material.

*See* Ex. A at 4.  In response to Request No. 5, Defendants responded as follows:

>    We believe that the H&H SERP dated January 1, 1998 is the only such Plan that has been
>    in effect for H&H since 1998.  We are providing you with all versions of the alleged plan
>    dated August 1,1998, including materials obtained from Jacobs Persinger & Parker.  We

are producing the WHX SERP Plan, even[] though it is not relevant. Neither Dixon, Kelly nor any other H&H executive was a beneficiary under the WHX SERP Plan and the Claim Administrator did not review or consider the WHX SERP Plan.

*See* Ex. A at 2.

In his Appendix, Plaintiff complains that he received no documents in response to Request No. 14, which Plaintiff had rewritten as follows:

**Request No. 14:** All drafts of the **[August 1998]** SERP Plan (emphasis added).

*See* May 16 Letter, Appendix at 10. However, in his original request, Plaintiff's Request No. 14 read as follows:

Request No. 14: All drafts of the **WHX** SERP Plan.

*See* Ex. A at 4. As shown above in response to Request No. 5, Plaintiff has been given all drafts of the August 1998 SERP Plan, and although it is irrelevant, Plaintiff was also given the WHX SERP Plan. *Id.* at 2.

**Request No. 15:** All merger and/or acquisition documents relating to H&H, from 1998 to the present, including any merger and/or acquisition documents relating to the H&H transaction with WHX in 1998, and the transaction with Steel Partners in 2005.

In response to Request No. 15, Defendants provided Plaintiff with the merger agreement and tender offer for the WHX acquisition of H&H in 1998 and the Plan of Reorganization and Disclosure Statement for the WHX bankruptcy. *See* Ex. A at 5 (Request No. 15 and Response). Plaintiff provides no rationale why the merger or transaction documents are relevant to his claim. Nor does Plaintiff justify the need or good cause for the production of any document beyond what has already been produced.

**Request No. 17:** Any agreements between H&H and any of Messrs. Lieberman, Tabin, Hynes and LeBlanc.

Plaintiff contends "H&H only agreed to produce Mr. Liebermann's retainer agreement, Mr. LeBlanc's employment agreement and 'materials regarding his separation,' and the employment agreements for Mr. Tabin and Mr. Hynes." Plaintiff then asserts that "[u]pon information and belief, additional responsive agreements exist, including agreements between H&H or WHX and former H&H Executives Robert Hynes and Peter Marciniak (among others), pursuant to which Messrs. Hynes and Marciniak agreed to accept consideration in exchange for their release of all claims under the August 1998 SERP and the H&H Life Insurance Program. Defendants have withheld such agreements, which are plainly at issue in this action." May 16 Letter, Appendix at 11-12.

Plaintiff's assertion regarding Defendant's response to Request No. 17 is bewildering because Defendants have already produced the following:

May 23, 2008
Page 6

(1)     A Retention Agreement between Mario A. Arena and H&H containing a
release of claims under the August 1998 SERP (Bates numbered PA5073).

(2)     Acknowledgement and Release signed by Robert Hynes and WHX
Corporation, Handy and Harman dated November 10, 2005 (PA5079-83),
which was produced in response to Request No. 36.

(3)     Acknowledgement and Release signed by Daniel P. Murphy and Handy &
Harman dated November 10, 2005 (PA5084-86), which was also produce in
response to Request No. 36.

(4)     Acknowledgement and Release signed by Peter J. Marciniak and Handy &
Harman dated October 26, 2005 (PA5087-5091), which was produced in
response to Request No. 36.

(5)     Acknowledgement and Release signed by Thomas R. Brouillard and Handy &
Harman dated October 26, 2005 (PA 5092-96), which was produced in
response to Request No. 36.

(6)     Acknowledgement and Release signed my Robert K. Hynes and WHX
Corporation, Handy & Harman dated November 10, 2005 (PA 5097-5100).

See Ex. A at 9. Clearly, Plaintiff already has the documents he claims defendant wrongfully
withheld, including the Hynes and Marciniak agreements that he specifically asserts were
withheld.

**Request No. 21:** All communications between Olshan Grundman Frome Rosenzweig &
Wolosky LLP or H&H (including Mr. Klein) and Mr. Lieberman regarding Messrs.
Dixon or Kelly, or any H&H benefits retirement Plans.

There are no relevant nonprivileged documents pertaining to Plaintiff's claim responsive to this
request. As an initial matter and by way of background, Mr. Lieberman was retained to provide
an "Ethics Opinion" under the standards of professional responsibility applicable to attorneys in
New York, concerning whether the actions of Paul E. Dixon, H&H's former general counsel,
violated his fiduciary and ethical duties as in-house counsel in attempt to secure changes to the
H&H SERP. As such, Mr. Lieberman's opinion relates to Mr. Dixon, not Mr. Kelly. Despite
this fact, Plaintiff was provided Mr. Lieberman's report and all documents that form the basis of
the "Assumed Facts" in Mr. Lieberman's "Ethics Opinion." *See* Ex. A at 6. Many of the
documents called for are protected from disclosure under the attorney client privilege. *See*
Discussion of Privilege *infra* at 8-9.

**Request No. 24:** All documents forming the basis of the "Assumed Facts" in Mr.
Lieberman's "Ethics Opinion."

May 23, 2008
Page 7

Because the Ethics Opinion relates solely to Mr. Dixon and not Mr. Kelly, none of the requested documents are relevant to Plaintiff's claims. However, in response to Request No. 24, Defendants did provide Plaintiff with the documents responsive to this request. *See* Ex. A at 6.

> **Request No. 26:** All communications between you or H&H (including Mr. Klein) and [the law firm Margolin, Winer & Evans LLP] ("MWE") regarding Messrs. Dixon or Kelly.

There are no relevant nonprivileged documents pertaining to Plaintiff's claim responsive to Request No. 26. As Defendants responded to Request No. 26, "H&H's written communications, if any, were by its general counsel. This request therefore seeks information that is protected by the attorney client privilege and as attorney work product." Ex. A at 7. Moreover, the MWE report pertains exclusively to Paul Dixon's submission of false claims for reimbursement of expenses. The MWE report does not pertain to Mr. Kelly. In any event, Defendants have already provided Plaintiff with the MWE work papers, the MWE report and its attachments, and Mr. Dixon's e-mail.

> **Request No. 30:** Any documents or communication, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to any person in the Human Resources departments of H&H, WHX, and Steel Partners, including but not limited to communications with Messrs. Dixon or Kelly, referring or relating to Messrs. Dixon or Kelly, any of the Plans at issue, the SERP Plan or the MIP Plan.

H&H produced all relevant information relating to the SERP and Life Insurance Plan, any other responsive documents would have no relevance to Plaintiff's claim. *See* Ex. A at 7-8.

> **Request No. 31:** Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to Mr. Marciniak to or from any executive or director of H&H, WHX, and Steel Partners, regarding Messrs. Dixon or Kelly, relating to any of the Plans at issue including but not limited to the SERP Plan or the MIP Plan, or the termination of Messrs. Dixon or Kelly.

As with Request No. 30, H&H produced all relevant information relating to the SERP and Life Insurance Plan, any other responsive documents would have no relevance to Plaintiff's claim.

> **Request No. 32:** All documents and communication relating to the termination of Messrs. Dixon and Kelly.

This material was not submitted, reviewed, considered or relied on by the Claim Administrator in connection with Plaintiff's claim and is therefore not relevant. Plaintiff makes no showing of good cause for the production of this information in connection with his benefits claim.

**Request No. 35:** Documents reflecting or relating to any payments made to any of the Messrs. Tabin, Trangucci, Arnold, [and] Murphy pursuant to any H&H, WHX or Steel Partners benefits plan.

As Plaintiff concedes, Tabin, Trangucci and Arnold were employees of WHX, not H&H. May 16 Letter, Appendix n.12. Payments under WHX or Steel Partners benefit plans are not relevant to Mr. Kelly's claim under the H&H Plans at issue. Defendants also have confirmed that no payments to any of these individuals were made under the H&H benefit plans. *See* Ex. A at 9. Accordingly, no responsive relevant documents exist.

**Request No. 36:** Agreements between H&H and any of its directors or executives entered into between September 2005 to the present which relate in any way to Messrs. Dixon or Kelly.

Defendant produced the agreements referenced in connection with the discussion *supra* of Request No. 17. There are no other known responsive agreements.

### D.    The Fiduciary Exception to the Attorney-Client Privilege Is Inapplicable

Plaintiff asserts that there is a fiduciary exception to the attorney-client privilege in the case of employee benefits plans, and thus Defendant's objection on grounds of privilege are without merit. *See* May 16 Letter at 3. Plaintiff cites no authority for his position and indeed there is no authority for his position in the context of the "top hat" plan that is at issue in this case.

Communications between a SERP committee and counsel may not be privileged, due to the fiduciary exception to the attorney-client privilege. Under the fiduciary exception, someone who is owed a fiduciary duty is permitted to "lift the shield placed upon particular attorney-client communications." *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 83 (N.D.N.Y. 2003). For the fiduciary exception to apply, "there have to be elements of a fiduciary relationship which obligates the fiduciary to safeguard his or her beneficiaries' interest without obscuring his or her reason from the legitimate inquiries of the beneficiaries." *Id.* at 84.

The fiduciary exception, however, does not apply to the H&H SERP because the SERP is a "top hat" plan and is therefore exempt from the fiduciary provisions of ERISA. *Marsh v. Marsh Supermarkets, Inc.*, No. 1:060cv-1395-JDT-TAB, 2007 WL 1021410 (S.D. Ind. March 29, 2007). Part 4 of ERISA, 29 U.S.C. §§ 1101-1114, places fiduciary responsibilities on an ERISA plan administrator. Part 4 does not apply to "[a] plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). Therefore, an administrator of a "top hat" plan does not owe fiduciary responsibilities to the participants. *See Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 290 (2d Cir. 2000) ("as the fiduciary responsibility provisions of ERISA do not apply to top hat plans, to the extent that plaintiffs' claim for breach of fiduciary duty was based on ERISA, the district

May 23, 2008
Page 9

court correctly dismissed it."); *Gallione v. Flaherty*, 70 F.3d 724, 727 (2d Cir. 1995) (top hat plans are excluded from ERISA's fiduciary responsibility requirement); *Campbell v. Computer Task Group, Inc.*, 2001 WL 815575, at *4 (S.D.N.Y. June 19, 2001) ("The exemption of 'top hat' plans from the fiduciary obligations of ERISA, and the lack of express language in the SERP itself creating such fiduciary obligations, leads to the conclusion that no such obligations exist in this case."); *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 842 (11th Cir. 2006) ("Because the two plans at issue are both top hat plans, [defendant] owed no fiduciary duties to the [plaintiffs] under ERISA."); *Reliable Home Health Care, Inc. v. Union Central Ins. Co.*, 295 F.3d 505, 512 (5th Cir. 2002) ("'top hat' plans are exempts from ERISA's fiduciary provisions").

To qualify as a top hat plan, a plan must (1) be unfunded; and (2) be maintained primarily for a select group of management or highly compensated employees. *See* 29 U.S.C. § 1101(a)(1); *Demery*, 216 F.3d at 287. The H&H SERP satisfies both conditions. A plan is unfunded "where benefits thereunder will be paid . . . solely from the general assets of the employer." *Demery*, 216 F.3d at 287. Courts must ask: "can the beneficiary establish, through the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation?" *Id.*, quoting *Miller v. Heller*, 915 F. Supp. 651, 660 (S.D.N.Y. 1996). Because the H&H SERP was unfunded and was offered to a select group of high-level management, it is exempt from the fiduciary responsibilities imposed by ERISA, and thus the fiduciary exception to the attorney-client privilege does not apply.

Attached hereto as Exhibit B is a privilege log of the documents withheld from production.

E.    **The Alleged Conflict of Interest Does Not Justify Discovery**

Plaintiff contends that a conflict of interest influenced the Plan and Claim Administrators' decisions, based on the fact that both are directors of WHX. This fact alone cannot justify discovery or change the standard of review.

An administrator's conflict of interest will not shift the standard from arbitrary and capricious to *de novo*, unless there is evidence the administrator was actually influenced by the conflict. When a conflict exists, but there is no evidence that it influenced the administrator's decision, the arbitrary and capricious standard still applies, and the conflict of interest is weighted in determining whether there has been an abuse of discretion. *See Thompson v. General Electric Co.*, 2002 WL 482862, at *3 (S.D.N.Y Mar. 29, 2002) *see also Cook*, 2004 WL 203111, at *3, n.3. *See also Fay v. Oxford Health Plan*, 287 F.3d 96, 109 (2d Cir. 2002) (even where there is inherent conflict because plan administrator also pays the claims, plaintiff must show the conflict actually governed the administrator's decision).

To trigger *de novo* review, rather than application of the arbitrary and capricious standard, "a plaintiff must show 'that the administrator was *in fact* influenced by the conflict of interest.'" *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir.), *quoting Sullivan v.*

*LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996) (emphasis in *Pulvers*). *See also Harrison v. Metropolitan Life Ins. Co.*, 417 F. Supp.2d 424, 435-36 (S.D.N.Y. 2006) (arbitrary and capricious standard applies unless administrator was actually influenced by conflict). Courts have recognized that it is extremely difficult to prove that an inherent conflict of interest in fact influenced the determination. One court has noted that "[t]he requirement that a plaintiff show actual influence of conflict on the Administrator's decision makes it exceedingly hard, if not impossible, for plaintiffs to obtain *de novo* review on the basis of conflict." *Cook*, 2004 WL 203111, at *3. *See also Owen v. Wade Lupe Constr. Co., Inc.*, 325 F. Supp.2d 146, 152 (N.D.N.Y. 2004) ("demonstrating the in fact showing will almost always be an insurmountable hurdle for plaintiffs, short of irrefutable evidence that the Administrator has stated 'in view of [my] conflict, this interpretation is adopted.'" (borrowing language from *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61 (2d Cir. 1997))).

Further, a showing that a plan is unfunded and that the administrators were also employees of the plan sponsor is insufficient for plaintiff to show that there was an actual conflict, and that the *de novo* standard should apply. *See Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1255 (2d Cir. 1996); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995); *Thompson v. General Electric Co.*, 2002 WL 482862, at *3 (S.D.N.Y. Mar. 29, 2002); *Hogan v. Metromail*, 2002 WL 373245, at *17 (S.D.N.Y. Mar. 8, 2002); *Tischmann v. ITT/Sheraton Corp.*, 1997 WL 195477, at *10 (S.D.N.Y. April 22, 1997); *Edwards v. Akzo Nobel, Inc.*, 193 F. Supp.2d 680, 685-86 (W.D.N.Y. 2001). Again, in such cases the Plaintiff must show that the conflict actually influenced the decision-making. The fact that there is an inherent conflict does not warrant application of a *de novo* standard without evidence that the conflict influenced the decision.

To support his claim of conflict of interest, Plaintiff relies on the fact that the Claim and Plan Administrators are directors of WHX Corp. However, a mere showing that plan administrators were also employees of the plan sponsor is insufficient for Plaintiff to show that there was an actual conflict, and that the *de novo* standard should apply. *See Sullivan*, 82 F.3d at 1255; *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (the fact that members of administrative committee were employees of the plan sponsor was not enough to show actual conflict); *Thompson v. General Electric Co.*, 2002 WL 482862, at *3 (S.D.N.Y. Mar. 29, 2002); *Hogan v. Metromail*, 2002 WL 373245, at *17 (S.D.N.Y. Mar. 8, 2002); *Tischmann v. ITT/Sheraton Corp.*, 1997 WL 195477, at *10 (S.D.N.Y. April 22, 1997); *Owen v. Wade Lupe Constr. Co., Inc.*, 325 F. Supp.2d 146, 152 (N.D.N.Y. 2004)(no actual conflict where the administrator was the head of the company and the plan was unfunded. The court held that the financial stake in the determination of plaintiff's claim did not warrant *de novo* review.) Further, the dual role of plan administrator and insurer is not grounds for applying the stricter standard of review. *Simone v. Prudential Ins. Co. of America*, 2005 WL 475406 (S.D.N.Y. Feb. 28, 2005); *Lee v. Aetna Life and Cas. Ins. Co.*, 2006 WL 345854 (S.D.N.Y. Feb. 13, 2006). Moreover, the Second Circuit recognized in *Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 294-95 (2d Cir. 2004) that "claims reviewers and payors are almost always either the same entity or financially connected in some other way."

May 23, 2008
Page 11

Moreover, Handy & Harman and WHX have always properly disclosed the compensation of its executive officers and directors, and thus no discovery is necessary. Mr. Klein and Mr. Smith are and always were directors of WHX. Neither Mr. Klein nor Mr. Smith is listed as an executive officer in Form 10-Ks filed from 2002 through the present. The Form 10-Ks report that Messrs. Klein and Smith earned $30,800 and $25,500 respectively, in director compensation in 2006, and $72,083 and $71,667 respectively, in director compensation in 2007. These amounts do not support a contention of influence or bias. Neither Mr. Klein nor Mr. Smith improperly benefited from their decision on Mr. Kelly's claim for benefits. In addition, neither of them ever received any benefits pursuant to any Handy & Harman benefits plan.

As such, Plaintiff fails to meet his burden showing good cause required to engage in additional document discovery and depositions.

### F.    WHX, the H&H Life Insurance Program, the H&H/WHX Pension Plan, the Incentive Plan, the Medical Plan and the Bonus Plan Are Not Proper Defendants

**WHX**

Plaintiff contends that the WHX Plan of Reorganization states that WHX's indemnification obligations arising by reason of a person's service as an employee, officer or director is the type of claim Plaintiff asserts here. May 16 Letter at 6. Plaintiff misconstrues WHX's indemnification obligations. This provision would only provide indemnification for claims against Mr. Kelly that arose from his actions as an employee. Because there is no claim pending against Mr. Kelly, he cannot invoke this provision to seek to impose liability on WHX. Plaintiff's direct claim against WHX is precluded by WHX's general discharge in bankruptcy which bars Plaintiff's pre-petition claim.

**H&H Life Insurance Program**

In addition to the fact that the Plan Administrator's decision is correct and entitled to deference, Plaintiff has waived his claim under the H&H Life Insurance Program because he did not appeal the benefits awarded under that Program.

**H&H/WHX Pension Plan**

First, Defendants do not have a record of Mr. Kelly filing a Deferred Vested Pension Application. Second, his claim is premature because he is not 60 years old. The Pension Plan has not denied him benefits or decided that he is ineligible or not entitled to benefits. *Riley v. MEBA Pension Trust*, 452 F. Supp. 117 (S.D.N.Y. 1978) (finding that plaintiff has no vested right to pension benefits until he reaches retirement age).

**The Medical Plan**

Plaintiff's termination before retirement renders him ineligible for benefits under the Medical Plan. In addition, Plaintiff has not met the pre-conditions of the plan in that he is neither

May 23, 2008
Page 12

enrolled in the plan nor is he receiving pension benefits. *See Caidor v. Chase Manhattan Bank*, No. 98 Civ. 5018, 2001 WL 311227 (S.D.N.Y. March 27, 2001) (summary judgment granted when plaintiff's condition did not satisfy the requirements of the plan).

### The Bonus Plan

In Plaintiff's employment agreement, he agreed to look to H&H for any claim related to his annual bonus if his employment were terminated. Thus, he can have no claim against the Bonus Plan or WHX.

### The H&H Long-Term Incentive Plan

Plaintiff's employment agreement provided that in the event of a termination of his employment, with or without cause, he would have no entitlement to participate in the Incentive Plan benefits. In addition, regardless of the terms of the employment agreement, at the time Plaintiff was discharged, there was not Incentive Plan in place, because it expired in 2004.

Accordingly, each of these claims will be the subject of Defendants' proposed motion for partial summary judgment.

Respectfully submitted,

Robert W. Sadowski

cc:     Thomas Fleming, Esq.
        Leslie D. Corwin, Esq.

# EXHIBIT A

# O L S H A N

O L S H A N   G R U N D M A N   F R O M E   R O S E N Z W E I G   &   W O L O S K Y   L L P

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212-451-2213
EMAIL: TFLEMING@OLSHANLAW.COM

November 6, 2006

**VIA PDF AND BY HAND**

Leslie D. Corwin
Greenberg Traurig, LLP
Met Life Building
200 Park Avenue
New York, NY 10166

Re:   Paul E. Dixon and Dennis C. Kelly: Claims for Benefits

Dear Mr. Corwin:

I have received your request for various documents in connection with Messrs. Dixon and Kelly's benefits claims, and our responses to each request are set forth below.  Our production of documents is without prejudice to the position of Handy & Harman ("H&H") and that of the Plan Administrators for each Plan, that much of this material is not relevant, within the meaning of 29 C.F.R. § 2560.503-1(m)(8).  We are providing you under separate cover documents that have been number stamped 1-2889, HH 1-2897, and PA 1-5649 as well as a disc with emails from Mr. Dixon's computer.  Our responses below are subject to the general objections and conditions set forth at the end of this letter.

### Responses to Specific Requests

Request No. 1:      All documents cited in Exhibit B to the September 21, 2006 letters of Louis Klein, and all documents cited in or referred to in any other part of those letters.

NEW JERSEY OFFICE
2001 ROUTE 46 / SUITE 202
PARSIPPANY, NEW JERSEY 07054
TELEPHONE: 973.331.7200
FACSIMILE: 973.331.7222

November 6, 2006
Page 2

    <u>Response</u>:    By cover letter dated October 23, 2006, we provided a copy of the

documents cited in Exhibit B to the September 21, 2006 letters of Louis Klein (the "Initial

Decision Letters"), which is responsive to this Request in its entirety.

    <u>Request No. 2</u>:    All documents reviewed, relied upon or considered by H&H or Mr.
Klein with respect to the claims of Messrs. Dixon and Kelly.

    <u>Response</u>:    The review was conducted by Mr. Klein as Claim Administrator. The

responsive documents are those provided with his Initial Decision Letters, and those referenced

in Exhibit B to the Initial Decision Letters.

    <u>Request No. 3</u>:    The curriculum vitae of Louis Klein.

    Response:    I enclose a c.v. for Mr. Klein (document no. PA 4893).

    <u>Request No. 4</u>:    All documents or communications reflecting or relating to the
decision made by H&H or WHX to retain Mr. Klein as Claim Administrator for the H&H benefit
plans.

    <u>Response</u>:    I have enclosed a copy of the Unanimous Written Consent appointing Mr.

Klein to the H&H Board and to its Compensation Committee (documents nos. PA 5060-5062).

    <u>Request No. 5</u>:    All versions of SERP plans of H&H or WHX that have been in
effect at any time between 1998 to the present, and drafts thereof.

    <u>Response</u>:    We believe that the H&H SERP dated January 1, 1998 is the only such

Plan that has been in effect for H&H since 1998. We are providing you with all versions of the

alleged plan dated August 1, 1998, including materials obtained from Jacobs Persinger & Parker.

We are producing the WHX SERP Plan, event though it is not relevant. Neither Dixon, Kelly,

nor any other H&H executive was a beneficiary under the WHX SERP Plan and the Claim

Administrator did not review or consider the WHX SERP Plan.

519194-1

November 6, 2006
Page 3

    Request No. 6:       All documents reflecting or referring to the June 2006 rules adopted by the H&H SERP Plan and the H&H Life Insurance Program as set forth in the September 27, 2006 Letters of Mr. Klein.

    Response:       I have enclosed a copy of the Unanimous Written Consent adopting the rules (document nos. PA 5063-5072).

    Request No. 7:       All documents showing or relating to the corporate structure of H&H and WHX.

    Response:       This request is vague and seeks material that is not relevant. WHX owns 100% of the shares of H&H, as set forth in WHX's last Form-10K on file with the SEC and available at www.SEC.gov. WHX is a publicly traded company; Steel Partners' Schedule 13D's are on file with the SEC and available at www.sec.org and they disclose its ownership of WHX.

    Request No. 8:       All documents reflecting or referring to the corporate governance of H&H and WHX, including any certificates of incorporation, bylaws, or other corporate governance documents.

    Response:      We are providing you with bylaws and certificates of incorporation for H&H (documents nos. 2703 – 2739) and, your request for "other corporate governance documents" is vague and we do not know what you are seeking.

    Request No. 9:       All minutes of any meeting of the Board of Directors or any Committee of H&H, including drafts thereof, between 1998 to the present.

    Response:      The request seeks material that is not relevant to the extent it seeks information in 2005 and 2006 or information unrelated to the benefit claims at issue. We refer you to documents nos. 2175 – 2453 and to other copies of H&H Board minutes contained in the accompanying production, which include all minutes addressing whether to amend the H&H SERP dated January 1, 1998.

519194-1

November 6, 2006
Page 4

Request No. 10:    Any financial data supplied to the Board of Directors or any Committee of H&H, including any notes thereof, relating to the H&H SERP.

Response:    We do not believe that any financial data relating to the H&H SERP was

supplied to the H&H Board after March 1, 1998 in connection with any decision to amend,

modify or restate this Plan. We refer you to the Board minutes produced above.

Request No. 11:    All minutes, notes, or records, including handwritten notes, of any meeting of the Board of Directors or any Committee of H&H, which took place in July 2005.

Response:    There are no documents responsive to this request.

Request No. 12:    All minutes of any meeting of the Board of Directors or any Committee of WHX, relating or referring to Messrs. Dixon or Kelly, or any benefit plan of H&H, including the H&H SERP, and the financial data supplied to the WHX Board of Directors or any Committee thereof regarding the H&H SERP, including any notes thereof.

Response:    The request for all WHX Board minutes that (i) relate or refer to Mr.

Dixon or Mr. Kelly or (ii) relate or refer to medical, bonus and other benefit plans, seeks material

that is not relevant. We are providing you with all WHX Board and Committee minutes that

discuss H&H benefit plans or the H&H SERP in 1998 and 1999. There are no Board Minutes

after 1999 discussing possible changes to the H&H SERP.

Request No. 13:    All minutes of any meeting of the Board of Directors or any Committee of WHX, regarding the WHX SERP and the financial data supplied to the WHX Compensation Committee regarding the WHX SERP, including any notes thereof.

Response:    As stated above, the WHX SERP Plan is not relevant to the claims of Mr.

Dixon or Mr. Kelly and we therefore decline to provide you with this material.

Request No. 14:    All drafts of the WHX SERP Plan.

Response:    As stated above, the WHX SERP Plan is not relevant to the claims of Mr.

Dixon or Mr. Kelly and we therefore decline to provide you with this material.

519194-1

November 6, 2006
Page 5

Request No. 15: All merger and/or acquisition documents relating to H&H, from 1998 to the present, including any merger and/or acquisition documents relating to the H&H transaction with WHX in 1998, and the transaction with Steel Partners in 2005.

Response: We are providing you with the Merger Agreement and tender offer for the WHX's acquisition of H&H in 1998 (documents nos. PA 4939-5041). We are also providing you with the Plan of Reorganization and disclosure statement for the WHX bankruptcy which reflects what you refer to as "the transaction with Steel Partners." (document nos. PA 4894-4938).

Request No. 16: All documents relating to negotiations between H&H and WHX and Steel Partners, including but not limited to any documents reflecting H&H or WHX Plans.

Response: This requests seeks material that is not relevant, as it was neither reviewed nor considered by the Claim Administrator.

Request No. 17: Any agreements between H&H and any of Messrs. Lieberman, Tabin, Hynes and LeBlanc.

Response: We are providing you with Mr. Lieberman's retainer agreement and Mr. LeBlanc's Employment Agreement, as well as materials regarding his separation, and the employment agreements for Mr. Tabin and Mr. Hynes (documents nos. 192-229, 2613-2702 2794-2803, PA 4858-4859).

Request No. 18: Any agreements between H&H or WHX and Mr. LeBlanc entered into subsequently to Mr. LeBlanc's departure from H&H in February 2003.

Response: There are no such agreements, excluding the documents provided in response to Request No.17.

Request No. 19: The curriculum vitae of Mr. Lieberman.

519194-1

November 6, 2006
Page 6

  <u>Response</u>:  I have enclosed a copy of Mr. Lieberman's curriculum vitae (document

nos. PA 4855-4857).

  <u>Request No. 20</u>:  All documents showing Mr. Lieberman's qualification as an
"expert" to render an "Ethics Opinion."

  <u>Response</u>:  We refer you to Mr. Lieberman's curriculum vitae for his qualifications.

  <u>Request No. 21</u>:  All communications between Olshan Grundman Frome
Rosenzweig & Wolosky LLP or H&H (including Mr. Klein) and Mr. Lieberman regarding
Messrs. Dixon or Kelly, or any H&H benefits retirement Plans.

  <u>Response</u>:  This request does not seek relevant materials.  This request also seeks

information that is protected by the attorney client privilege and as attorney work product.

  <u>Request No. 22</u>:  All documents in the possession, custody, or control of Mr.
Lieberman relating to Messrs. Dixon or Kelly, or any H&H benefits retirement Plans.

  <u>Response</u>:  There are no responsive documents to this request because Mr. Lieberman

rendered his opinion based on the assumed facts presented in his report.

  <u>Request No. 23</u>:  All documents which Mr. Lieberman reviewed, considered, or
relied upon in rendering his "Ethics Opinion" dated September 21, 2006.

  <u>Response</u>:  There are no responsive documents that pertain to the H&H plans to this

request because Mr. Lieberman rendered his opinion based on the assumed facts presented in his

report.

  <u>Request No. 24</u>:  All documents forming the basis of the "Assumed Facts" in Mr.
Lieberman's "Ethics Opinion." (9/21/06 Lieberman Letter at pages 1-5).

  <u>Response</u>:  The documents responsive to this request are identified in Exhibit B to the

Initial Decision Letters which have already been produced and are in your possession.  The

documents also include other materials provided to you herewith.

519194-1

November 6, 2006
Page 7

    Request No. 25:     All documents showing MWE's qualification to render its opinion.

    Response:     We are providing you with C.V.'s for Howard Fielstein and John Bonora

of MWE as well as a summary of MWE's qualifications as a forensic examiner (documents nos.

4843-4854).

    Request No. 26:     All communications between you or H&H (including Mr. Klein)
and MWE regarding Messrs. Dixon or Kelly.

    Response:     H&H's written communications, if any, were by its general counsel. This

request therefore seeks information that is protected by the attorney client privilege and as

attorney work product.

    Request No. 27:     All documents in the possession, custody or control of MWE
relating to Messrs. Dixon or Kelly.

    Response:     We are providing you with the work papers by MWE (documents nos.

4832-4842) and have previously provided you with the MWE report and its attachments.

    Request No. 28:     All documents which MWE reviewed, considered or relied upon in
rendering its opinion dated September 25, 2006.

    Response:     We are providing this material to you as document nos. PA 1-4842, PA

5165-5649 and a disc containing Mr. Dixon's emails.

    Request No. 29:     All documents forming the basis of the schedules attached as
exhibits to the September 25, 2006 letter of MWE.

    Response:     We are providing this material to you as documents PA 1-4842, PA 5165-

5649 and a disc containing Mr. Dixon's emails.

    Request No. 30:     All documents or communications, including emails and other
documents kept in electronic format, created by, referring to, sent to, in the file of, or
communicated to any person in the Human Resources departments of H&H, WHX, and Steel

November 6, 2006
Page 8

Partners, including but not limited to communications with Messrs. Dixon or Kelly, referring or relating to Messrs. Dixon or Kelly, any of the Plans at issue, the SERP Plan or the MIP Plan.

Response:      This request is objectionable to the extent that is seeks material that is not

relevant, such as all communications regarding the SERP Plan, the MIP Plan or the Plans at

issue, regardless whether reviewed or considered by the Claim Administrator or bear on Dixon

or Kelly's claim. We are producing all relevant materials responsive to this request within the

overall document production; we are also providing you with the personnel files for each of Mr.

Dixon and Mr. Kelly.

Request No. 31:      Any documents or communications, including emails and other documents kept in electronic format, created by, referring to, sent to, in the file of, or communicated to Mr. Marciniak to or from any executive or director of H&H, WHX, and Steel Partners, regarding Messrs. Dixon or Kelly, relating to any of the Plans at issue including but not limited to the SERP Plan or the MIP Plan, or the termination of Messrs. Dixon or Kelly.

Response:      We refer you to our response to Request No. 30.

Request No. 32:      All documents and communications relating to the termination of Messrs. Dixon and Kelly.

Response:      The request seeks material that is not relevant because this material was

not considered or reviewed by the Claim Administrator. The documents produced herewith may

be responsive to this request in part.

Request No. 33:      Attorney invoices to H&H or WHX from 1998 to the present relating to the Plans at issue, including but not limited to the H&H or WHX SERP Plan and the H&H or WHX MIP Plan.

Response:      We are providing you with copies of bills from Jacobs Persinger and

Parker ("JPP") the 1998 to 2003, docs no. PA 4860-4892. JPP was the law firm with primary, if

not exclusive, responsibility for legal aspects of the H&H SERP and Executive Post-Retirement

Life Insurance Program from 1998 through 2003.

519194-1

November 6, 2006
Page 9

Request No. 34:    Invoices or reports of any actuary, including but not limited to
Watson Wyatt from 2004 to the present relating to the Plans at issue, including but not limited to
the SERP Plan and the MIP Plan.

Response:    Your request seeks material that is not relevant, as to the extent it was not

considered or reviewed by the Claim Administrator.  We are nonetheless providing you with (i)

the files that we received from Watson Wyatt in 2005 regarding its work on the SERP (document

nos. 1153 – 1974) and (ii) all Towers Perrin's material that is relevant to the claims of Mr. Dixon

and Mr. Kelly.  Your blanket request for all of Towers Perrin's invoices and reports concerning

the H&H SERP dated January 1, 1998 seek material that is not relevant.

Request No. 35:    Documents reflecting or relating to any payments made to any of
the Messrs. Tabin, Trangucci, Arnold, Murphy pursuant to any H&H, WHX or Steel Partners
benefits plan.

Response:    This request seeks material that is not relevant for several reasons.

Payments under WHX or Steel Partners benefit plans are not relevant to Mr. Dixon or Mr.

Kelly's claim under the two H&H Plans at issue.  The benefit payments for medical costs and

MIP bonuses to these individuals are also not relevant.  There have been no payments to any of

these individuals under H&H benefit plans at issue.

Request No. 36:    Agreements between H&H and any of its directors or executives
entered into between September 2005 to the present which relate in any way to Messrs. Dixon or
Kelly.

Response:    This request is unclear.  We are providing you with certain agreements,

(document nos. 5079-5101) that H&H entered into as a direct result of Dixon's misconduct.

These appear to be the documents sought in this request.

Request No. 37:    All documents relating to Mr. Dixon's underlying pension benefits,
payment of Mr. Dixon's pension benefits, or any decisions taken with respect to a decision to
pay or not pay Mr. Dixon's pension benefits.

519194-1

November 6, 2006
Page 10

Response:    Mr. Dixon has made a request for benefits under the WHX/H&H Pension

Plan, which is being processed in the ordinary course. The Claim Administrator is not charged

with this Pension Plan and has played no part in its deliberations. This request is therefore

improper and should be directed to the Pension Plan.

General Objection and Conditions

1.    We are producing attorney time records which may contain sensitive, confidential

information. We are doing so with the understanding that its production will not be deemed a

waiver of any applicable privilege and that for all matters unrelated to the H&H SERP or Life

Insurance Plan, we may later redact these time records.

2.    Our responses are subject to and without waiver of the attorney client privilege or

work product protections.

3.    We reserve the right to amend or supplement the above responses.

4.    To the extent the production includes compensation information that is not

publicly known, all such information must be held in confidence and may only be used in

connection with any appeal or ensuing litigation.

Sincerely,

Thomas J. Fleming

cc:    Louis Klein

519194-1

# EXHIBIT B

*Dennis C. Kelly v. Handy & Harman,* (S.D.N.Y.)

Index Number: 08-00163

Privilege Log for Handy & Harman

Key:
A/C = Attorney client
W/P = Work product
A/N = Attorney's notes,
drafts and legal memoranda

| | Document Type | Document Subject Matter | Date | Author | Addressee | Nature of Privilege |
|---|---|---|---|---|---|---|
| 1. | Letter | Letter accompanying the delivery of SERP investigation report | 5/04/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 2. | Faxed Letter | Confirmation of appointment to review documents and perform interview and fax cover pages | 5/12/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 3. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 4. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 5. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 6. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |

5783381-1

578381-1

| | Document Type | Document Subject Matter | Date | Author | Addressee | Nature of Privilege |
|---|---|---|---|---|---|---|
| 7. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 8. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 9. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 10. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 11. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 12. | Letter | Letter re: the retention of Olshan to investigate the SERP issue and request for pertinent documents. | 5/4/05 | K. Rubinstein | Handy & Harman | A/C, W/P |
| 13. | Emails | FedEx delivery confirmations (9) for 5/4/05 notification of Olshan retention and document requests | 5/5/005 | N/A | K. Rubinstein | W/P |
| 14. | Memorandum | List of addresses for individuals to interview | N/A | N/A | N/A | W/P, A/N |
| 15. | Memorandum | Internal Memo re: interview with P. Dixon | 5/5/05 5/18/05 | K. Rubinstein | N/A | W/P, A/N |
| 16. | Memorandum | Internal Memo re: interview with D. Kelly | 5/18/05 | K. Rubinstein | N/A | W/P, A/N |

| Document Type | Document Subject Matter | Date | Author | Addressee | Nature of Privilege |
|---|---|---|---|---|---|
| 17. Memorandum | Internal Memo re: interview with R. LeBlanc | 5/13/05 | Unknown | N/A | W/P, A/N |
| 18. Memorandum | Internal Memo re: interview with S. Tabin | 5/11/05 | H. Ross | N/A | W/P, A/N |
| 19. Memorandum | Internal Memo re: interview with N. Trangucci | 5/10/05 | H. Ross | N/A | W/P, A/N |
| 20. Memorandum | Internal Memo re: interview with N. Arnold | 5/10/05 | H. Ross | N/A | W/P, A/N |
| 21. Memorandum | Internal Memo re: interview with R. Hynes | 5/19/05 | K. Rubinstein | N/A | W/P, A/N |
| 22. Memorandum | Internal Memo re: interview with P. Marciniak | 5/18/05 | K. Rubinstein | N/A | W/P, A/N |
| 23. Memorandum | Internal Memo re: interview with D. Murphy | 5/20/05 | K. Rubinstein | N/A | W/P, A/N |
| 24. Memorandum | Internal Memo re: discussion with A. Buanato at Watson & Wyatt | 5/6/05 | H. Ross | A. Finerman K. Rubinstein | W/P, A/C, A/N |
| 25. Report | Report from Olshan detailing the findings of investigation into SERP issue | 5/05 | Olshan Grundman Frome Rosenzweig & Wolosky | Special Investigation Committee of the Board of Directors of Handy & Harman | W/P, A/C |

Olshan Grundman Frome Rosenzweig & Wolosky LLP

K. Rubinstein
H. Ross
A. Finerman

578381-1